# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| Favian Busby and Michael Edgington, *on their own behalf and on behalf of those similarly situated*; <br><br> Petitioners-Plaintiffs, <br><br> v. <br><br> Floyd Bonner, Jr., *in his official capacity*, Shelby County Sheriff, and the Shelby County Sheriff's Office, <br><br> Respondents-Defendants. | Case No. _____ |

## PETITIONERS-PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Petitioners-Plaintiffs, by and through undersigned counsel, hereby move this Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for the entry of an Order certifying this matter as a class action under Rule 23(b)(2) and designating undersigned counsel as class counsel. The grounds for this motion are set forth in the Memorandum in Support of Petitioners-Plaintiffs' Motion for Class Certification, filed herewith, and the accompanying Declaration in support.

WHEREFORE, Petitioners-Plaintiffs respectfully move this Court to:

1. Enter an Order certifying the Class and Subclass as defined in the accompanying Memorandum, pursuant to Rule 23(b)(2); and

2. Designate undersigned counsel as class counsel.

Dated: May 20, 2020

Respectfully submitted,

/s/ Brice M. Timmons

Brice M. Timmons (Bar No. 29582)
Black McLaren Jones Ryland & Griffee,
A Professional Corporation
530 Oak Court Dr. Suite 360
Memphis, TN 38117
Telephone: (901) 762-0535
Facsimile: (901) 762-0527
btimmons@blackmclaw.com

Josh Spickler (Bar No. 021019)
Wesley Dozier (Bar No. 037735)
Just City
P.O. Box 41852
Memphis, TN 38174
Telephone: (901) 206-2226
josh@justcity.org

Steven John Mulroy (Bar No. 28831)
Bredesen Professor of Law
Cecil C. Humphreys School of Law,
University of Memphis
1 N. Front St.
Memphis, TN 38103
Telephone: (901) 603-8779
smulroy@memphis.edu

Andrea Woods*
Amreeta S. Mathai*
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2500
awoods@aclu.org
amathai@aclu.org

Zoe Brennan-Krohn*
American Civil Liberties Union
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 343-0769
zbrennan-krohn@aclu.org

Maria Morris*
American Civil Liberties Union
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6607
mmorris@aclu.org

Thomas H. Castelli (Bar No. 24849)
Stella Yarbrough (Bar No. 33637)
ACLU Foundation of Tennessee
P.O. Box 120160
Nashville, TN 37212
Telephone: (615) 320-7142
tcastelli@aclu-tn.org
syarbrough@aclu-tn.org

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Joseph Bial*
2001 K Street NW
Washington, D.C. 20006-1047
Telephone: (202) 223-7300
Fascimile: (202) 223-7420
jbial@paulweiss.com

Darren Johnson*
Jonathan M. Silberstein-Loeb*
David Kimball-Stanley*
Adrienne Lee*
Avery Medjuck*
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Fascimile: (212) 757-3990
djohnson@paulweiss.com
jsilberstein-loeb@paulweiss.com
dkimball-stanley@paulweiss.com
alee@paulweiss.com
amedjuck@paulweiss.com


*Attorneys for Plaintiffs*
* Application for admission *pro hac vice*
forthcoming

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE

Favian Busby and Michael Edgington, *on their own behalf and on behalf of those similarly situated*;

Petitioners-Plaintiffs,

v.

Floyd Bonner, Jr., *in his official capacity*, Shelby County Sheriff, and the Shelby County Sheriff's Office,

Respondents-Defendants.

Case No. _____

# MEMORANDUM IN SUPPORT OF
# PETITIONERS-PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

CLASS DEFINITION ........................................................................................................ 2

SUMMARY OF ARGUMENT .......................................................................................... 2

ARGUMENT ..................................................................................................................... 5

I.  Plaintiffs Satisfy the Rule 23(a) Requirements............................................................ 5

    A.  Plaintiffs Satisfy Rule 23(a)(1) Because Joinder of All Class Members
        Would be Impracticable. ...................................................................................... 5

    B.  Plaintiffs Satisfy Rule 23(a)(2) Because There Are Numerous Questions
        of Law and Fact Common to Each Member of the Class. .................................... 8

    C.  Plaintiffs Satisfy Rule 23(a)(3) Because Their Claims Are Typical of the
        Class They Seek to Represent. ............................................................................ 13

    D.  The Named Plaintiffs Will Fairly and Adequately Protect the Interests of
        the Class and Subclass. ...................................................................................... 14

        1.  There is No Conflict Between Named Plaintiffs and the Class. .............. 15

        2.  Plaintiffs' Counsel Will Provide Adequate Representation..................... 16

II.  Plaintiffs Satisfy Fed. R. Civ. P. 23(b)(2): Plaintiffs Seek Writs of Habeas Corpus
    From Conditions That Place the Class at Risk of Serious Illness and Death. ................. 16

III.  The Class and Subclass Are Appropriately Defined...................................................... 19

CONCLUSION................................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abadia-Piexoto* v. *U.S. Dep't of Homeland Sec.*,
    277 F.R.D. 572 (N.D. Cal. 2011) ............................................................................9

*In re Am. Med. Sys., Inc.*,
    75 F.3d 1069 (6th Cir. 1996) ................................................................................15

*Bradley* v. *Harrelson*,
    151 F.R.D. 422 (M.D. Ala. 1993) ..........................................................................18

*Braggs* v. *Dunn*,
    317 F.R.D. 634 (M.D. Ala. 2016) ............................................................................7

*Bremiller* v. *Cleveland Psychiatric Inst.*,
    879 F. Supp. 782 (N.D. Ohio 1995) ......................................................................17

*Bridging Cmtys. Inc.* v. *Top Flight Fin. Inc.*,
    843 F.3d 1119 (6th Cir. 2016) ..............................................................................14

*Brown* v. *Plata*,
    563 U.S. 493 (2011) ..............................................................................................18

*Buffkin* v. *Hooks*,
    2019 WL 1282785 (M.D.N.C. Mar. 20, 2019) ......................................................18

*Butler* v. *Suffolk Cty.*,
    289 F.R.D. 80 (E.D.N.Y. 2013) ..............................................................................9

*Campbell* v. *Hope Cmty. Credit Union*,
    2012 WL 2395180 (W.D. Tenn. June 25, 2012) ......................................13, 14, 15

*Cole* v. *City of Memphis*,
    839 F.3d 530 (6th Cir 2016) ..................................................................................19

*Cox* v. *McCarthy*,
    829 F.2d 800 (9th Cir. 1987) ..................................................................................3

*Dearduff* v. *Washington*,
    330 F.R.D. 452 (E.D. Mich. 2019) ........................................................................17

*Dodson* v. *CoreCivic*,
    2018 WL 4776081 ......................................................................................7, 18, 20

*Fraihat* v. *U.S. Immigration & Customs Enf't*,
　2020 WL 1932570 (C.D. Cal. Apr. 20, 2020) .................................................................18, 19

*Gen. Tel. Co. of S.W.* v. *Falcon*,
　457 U.S. 147 (1982)................................................................................................................13

*Gooch* v. *Life Inv'rs Co. of Am.*,
　672 F.3d 402 (6th Cir. 2012) ................................................................................................17

*Graham* v. *Parker*,
　2017 WL 1737871 (M.D. Tenn. May 4, 2017)........................................................... passim

*Ham* v. *Swift Transp. Co., Inc.*,
　275 F.R.D. 475 (W.D. Tenn. 2011) ......................................................................................13

*Hamama* v. *Adducci*,
　912 F.3d 869 (6th Cir. 2018) ..................................................................................................3

*Hansberry* v. *Lee*,
　311 U.S. 32 (1940)..................................................................................................................15

*Hiatt* v. *County of Adams, Ohio*,
　155 F.R.D. 605 (S.D. Ohio 1994) ...........................................................................................7

*Hughes* v. *Judd*,
　2013 WL 1821077 (M.D. Fla. Mar. 27, 2013) ......................................................................9

*Johnson* v. *Gen. Motors Corp.*,
　598 F.2d 432 (5th Cir. 1979) ................................................................................................17

*Jones* v. *Diamond*,
　519 F.2d 1090 (5th Cir. 1975) ..............................................................................................18

*Jones* v. *Gusman*,
　296 F.R.D. 416 (E.D. La. 2013)..............................................................................................9

*Lewis* v. *Cain*,
　324 F.R.D. 159 (M.D. La. 2018) ...........................................................................................20

*Lippert* v. *Baldwin*,
　2017 WL 1545672 (N.D. Ill. Apr. 28, 2017) ........................................................................20

*Marcera* v. *Chinlund*,
　595 F.2d 1231 (2d Cir. 1979), *vacated on other grounds*, 442 U.S. 915 (1979)....................17

*McBride* v. *Mich. Dep't of Corr.*,
　2017 WL 3097806 (E.D. Mich. June 30, 2017), *report and recommendation
　adopted*, 2017 WL 3085785 (E.D. Mich. July 20, 2017) ...................................................18, 20

*McDonald* v. *Franklin County, Ohio*,
   306 F.R.D. 548 (S.D. Ohio 2015) ..........................................................................17

*Middendorf* v. *Henry*,
   425 U.S. 25 (1976) ................................................................................................3

*Olson* v. *Brown*,
   284 F.R.D. 398 (N.D. Ind. 2012) ..........................................................................9

*Parsons* v. *Ryan*,
   289 F.R.D. 5133 (D. Ariz. 2013) .......................................................................9, 18

*Robinson* v. *Purkey*,
   326 F.R.D. 105 (M.D. Tenn. 2018) ......................................................................17

*Rosas* v. *Baca*,
   2012 WL 2061694 (C.D. Cal. June 7, 2012) .........................................................9

*Ross* v. *Gossett*,
   2020 WL 1472072 (S.D. Ill. Mar. 26, 2020) .........................................................9

*Rufo* v. *Inmates of Suffolk Cty. Jail*,
   502 U.S. 367 (1992) .............................................................................................18

*Schall* v. *Martin*,
   467 U.S. 253 ........................................................................................................3

*Senter* v. *Gen. Motors Corp.*,
   532 F.2d 511 (6th Cir. 1976) ...............................................................................15

*United States ex rel. Sero* v. *Preiser*,
   506 F.2d 1115 (2d Cir. 1974) ................................................................................3

*Shady Grove Orthopedic Assocs., P.A.* v. *Allstate Ins. Co.*,
   559 U.S. 393 (2010) .............................................................................................5

*Smith* v. *Ohio Dep't of Rehab. & Corr.*,
   2012 WL 1440254 (S.D. Ohio Apr. 26, 2012) .....................................................14

*Spurlock* v. *Fox*,
   2012 WL 1461361 (M.D. Tenn. Apr. 27, 2012) ..................................................13

*Swigart* v. *Fifth Third Bank*,
   288 F.R.D. 177 (S.D. Ohio 2012) ........................................................................14

*Thrope* v. *Ohio*,
   173 F.R.D. 483 (S.D. Ohio 1997) ........................................................................17

*In re Wal-Mart ATM Fee Notice Litig.*,
 2015 WL 6690412 (W.D. Tenn. Nov. 3, 2015) ................................................................6

*Wal-Mart Stores, Inc.* v. *Dukes*,
 564 U.S. 338 (2011) ...............................................................................................8, 9, 10

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
 722 F.3d 838 (6th Cir. 2013) .........................................................................................8, 12

*Williams* v. *Richardson*,
 481 F.2d 358 (8th Cir. 1973) ...........................................................................................3

*Wilson* v. *Williams*,
 2020 WL 1940882 (N.D. Ohio Apr. 22, 2020)............................................................. passim

*Wilson* v. *Williams*,
 2020 WL 2120814 (6th Cir. Apr. 30, 2020) ...................................................................13

*Young* v. *Nationwide Mut. Ins. Co.*,
 693 F.3d 532 (6th Cir. 2012) ...........................................................................................19

*Youngblood* v. *Linebarger Googan Blair & Sampson, LLP*,
 2012 WL 4597990 (W.D. Tenn. Sep. 30, 2012) ...........................................................6

## RULES

Fed. R. Civ. P. 23(a) ..............................................................................................................5

Fed. R. Civ. P. 23(a)(1) .........................................................................................................5

Fed. R. Civ. P. 23(a)(2)....................................................................................................8, 10

Fed. R. Civ. P. 23(a)(3).......................................................................................................13

Fed. R. Civ. P. 23(a)(4).......................................................................................................14

Fed. R. Civ. P. 23(b) ...........................................................................................................5

Fed. R. Civ. P. 23(b)(2)................................................................................................ passim

## OTHER AUTHORITIES

Alba Conte & Herbert B. Newberg, 2 Newberg on Class Actions § 25.20 (4th ed.
 2002) ..............................................................................................................................17

Amateva Banerjee, Laura Pasea, Steve Harris et al., *Estimating Excess 1-Year Mortality Associated With The COVID-19 Pandemic According To Underlying Conditions*, THE LANCET (May 12, 2020), https://www.thelancet.com/action/showPdf?pii=S0140-6736%2820%2930854-0......................................................................................6, 11

C.J. Ciaramella, *8 of the Top 10 Biggest U.S. Coronavirus Hotspots are Prisons and Jails*, REASON (April 29, 2020) https://reason.com/2020/04/29/8-of-the-top-10-biggest-u-s-coronavirus-hotspots-are-prisons-and-jails/.............................................12

Ctrs. for Disease Control & Prevention, Preliminary Estimates of the Prevalence of Selected Underlying Health Conditions Among Patients with Coronavirus Disease 2019 — United States, February 12–March 28, 2020 (Apr. 3, 2020), *available at* https://www.cdc.gov/mmwr/volumes/69/wr/pdfs/mm6913e2-H.pdf ............................................................................................................................11

Ctrs. for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19), Groups at Higher Risk for Severe Illness, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited May 18, 2020) ...................................................7, 19

Ctrs. for Disease Control and Prevention, Percent of U.S. Adults 55 and Over with Chronic Conditions (Sep. 2009), *available at* https://www.cdc.gov/nchs/data/health_policy/adult_chronic_conditions.pdf ...........................7

Katie Park et al., *Tracking the Spread of Coronavirus in Prisons*, The Marshall Project (Apr. 24, 2020) https://www.themarshallproject.org/2020/04/24/tracking-the-spread-of-coronavirus-in-prisons ...........................................................................................12

Laura M. Maruschack et al., *Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-12*, U.S. Dept. of Justice, Office of Justice Programs, Bureau of Justice Statistics (Feb., 2015), *available at* https://www.bjs.gov/content/pub/pdf/mpsfpji1112.pdf .........................................................7

Samantha Max, *Investigation: How The Coronavirus Ran Rampant Through A Tennessee Prison*, WPLN NEWS (May 11, 2020) https://wpln.org/post/investigation-how-the-coronavirus-ran-rampant-through-a-tennessee-prison/..............................................................................................................12

Shelby Cty. Sheriff's Office, Inmate Lookup, *available at* https://imljail.shelbycountytn.gov/IML  (last visited May 19, 2020).................................4, 6

Shelby Cty. Sheriff's Office, Who's In Jail, *available at* http://www.shelbysheriff.org/injail.html (last visited May 18, 2020) ......................................7

Tenn. Dept. of Corrs., Tenn. Jail Summary Report (Mar. 2020), *available at* https://www.tn.gov/content/dam/tn/correction/documents/JailMarch2020.pdf ..................4, 6

William B. Rubenstein, et al., 1 Newberg on Class Actions § 3:12 (5th ed. 2011).....................6, 7

Yolanda Jones, *West Tennessee Prisons, Shelby County Jail Hit Hard By Coronavirus*, THE DAILY MEMPHIAN (May 18, 2020),
   https://dailymemphian.com/article/14121/tennessee-department-of-correction-
   shelby-county-jail-covid-19-testing-positive ........................................................................12

Petitioners-Plaintiffs Favian Busby and Michael Edgington ("Plaintiffs"), through undersigned counsel, submit this memorandum on behalf of themselves and the class they seek to represent, in support of their Motion for Class Certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. The Court should grant Plaintiffs' Motion for Class Certification because Plaintiffs satisfy the requirements of Rule 23 and this action can be most efficiently resolved as a class action.

## INTRODUCTION

The spread of COVID-19 throughout the world has created an extraordinary health crisis. The Centers for Disease Control and Prevention ("CDC"), public health officials and public health experts have implored the general public to practice social distancing, improved hygiene and to use protective equipment in an effort to curb the threat of the deadly virus. Medically vulnerable people and people with disabilities, like Plaintiffs, in custody at Shelby County Jail[1] (the "Jail") cannot distance themselves from others and cannot exercise the hygienic and protective measures necessary to prevent the spread of COVID-19. Scores of people held at the Jail have tested positive for COVID-19. Despite the fact that positive tests are on the rise in correctional facilities across Tennessee, Defendants have failed to take reasonable measures to stop the spread of COVID-19 or to mitigate the risk to those most vulnerable to serious illness or death if they are exposed. Class members currently held in Defendants' custody face a risk of death or serious harm as a result.

---

[1] For the purposes of this motion, "Shelby County Jail" or the "Jail" refers to the detention facility located at 201 Poplar Ave., Memphis, TN 38103.

## CLASS DEFINITION

Plaintiffs seek to represent a class (the "Class") of detainees pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure.  Within the Class, Mr. Busby seeks to represent a subclass (the "Subclass").

Plaintiffs seek to certify a class defined as:

1)   All persons currently or in the future held at the Jail in pretrial custody during the COVID-19 pandemic who are 55 and older, as well as all persons currently or in the future held at the Jail of any age who have: (a) lung disease, including asthma, chronic obstructive pulmonary disease (*e.g.*, bronchitis or emphysema), or other chronic conditions associated with impaired lung function; (b) heart disease, such as congenital heart disease, congestive heart failure and coronary artery disease; (c) chronic liver or kidney disease (including hepatitis and dialysis patients); (d) diabetes or other endocrine disorders; (e) hypertension; (f) compromised immune systems (such as from cancer, HIV, receipt of an organ or bone marrow transplant, as a side effect of medication, or other autoimmune disease); (g) blood disorders (including sickle cell disease); (h) inherited metabolic disorders; (i) history of stroke; (j) neurological or developmental disability; (k) cancer or cancer treatments; (l) a BMI of 40 or more; and/or (m) muscular dystrophy or spinal cord injury.

Within the Class, Plaintiffs seek to certify one subclass: the "Subclass."

The Subclass is defined as:

(a)   All persons currently or in the future held at the Jail in pretrial custody during the COVID-19 pandemic who are at increased risk of COVID-19 complications or death because of disabilities as defined in the Americans With Disabilities Act (ADA) and Section 504 of the Rehabilitation Act.  The Subclass includes everyone in the Class except those people who are vulnerable solely due to age or BMI.  People with all other conditions listed in paragraph (1) above are people with disabilities as defined under federal law.

Messrs. Busby and Edgington seek to represent the Class, with their counsel of record serving as class counsel.  Mr. Busby seeks to represent the Subclass, with his counsel serving as counsel to the Subclass.

## SUMMARY OF ARGUMENT

This action arises from Defendants' failure to protect Plaintiffs from the risk of death or serious physical harm as a result of COVID-19 while detained at Shelby County Jail.  Defendants'

actions and inactions put all Class and Subclass members at unacceptably, unconstitutionally, high risk of injury or death. This Court should certify the Class and Subclass.

The claims of the Class are ideally suited to proceed as a class habeas proceeding pursuant to Rule 23(b)(2). *See Hamama* v. *Adducci*, 912 F.3d 869, 879 (6th Cir. 2018) (observing that "there is nothing barring a class from seeking a traditional writ of habeas corpus."); *see also, e.g.*, *United States ex rel. Sero* v. *Preiser*, 506 F.2d 1115, 1127 (2d Cir. 1974) (allowing a § 2241 habeas action to proceed as a class action); *Cox* v. *McCarthy*, 829 F.2d 800, 804 (9th Cir. 1987) (noting that "[t]his court has held that a class action may lie in habeas corpus"); *Williams* v. *Richardson*, 481 F.2d 358, 360 (8th Cir. 1973) (finding that the district court erred in holding that a class action is inappropriate in a habeas corpus proceeding).[2] Indeed, one district court in the Sixth Circuit has already provisionally certified a class of prisoners whose pre-existing medical conditions placed them at particular risk of harm as a result of COVID-19. *See Wilson* v. *Williams*, 2020 WL 1940882, at *8 (N.D. Ohio Apr. 22, 2020).

Commonality is easily satisfied. *First*, each and every member of the Class has the same legal theory as to why his federal rights are being violated. *Second*, Defendants' inability to take reasonable measures to mitigate the risk to detainees at the Jail violates the rights of every Class member. *Third*, each and every Class member will use similar or overlapping evidence in support of his cause of action. *Finally*, each and every Class member seeks identical relief: a writ of habeas

---

[2]  Although the Supreme Court has not squarely decided whether Rule 23 of the Federal Rules of Civil Procedure "is applicable to petitions for habeas corpus relief," on several occasions the Court has decided class action habeas petitions. *See, e.g.*, *Schall* v. *Martin*, 467 U.S. 253, 261 n.10, 281(1984) (declining to address the issue and accepting district court's certification of the class; reversing lower courts' holding that preventive detention of juveniles was unconstitutional); *Middendorf* v. *Henry*, 425 U.S. 25, 30, 48 (1976) (declining to decide whether class action habeas petitions are cognizable; refusing to grant relief).

corpus requiring Defendants to take immediate action to protect him from the grave risk of death or harm from COVID-19 by releasing[3] him from the confines of the Jail.  In other words, each representative shares all legal claims with the Class and Subclass he seeks to represent, the Class's evidence will be identical in support of those claims and the class representatives seek the same relief as the Class they seek to represent.

In addition to commonality, the Class and Subclass easily satisfy the other requirements of Rule 23(a), as well as the requirements of Rule 23(b)(2).  Joinder is impracticable because the number of people detained at the Jail approaches 2,000 on any given day,[4] and the Class and Subclass each contain hundreds of people.  The claims of the named Plaintiffs are common to and typical of those of the Class and Subclass that they seek to represent.  That typicality stems from Plaintiffs' claim that Defendants have placed them, and all other Class members similarly confined at Shelby County Jail, at significant risk of harm by failing to take appropriate steps to protect against the risk of COVID-19 transmission throughout the Jail.

Named Plaintiffs have no conflicts with the unnamed members of the Class and have a unified interest in the relief sought.  Their lawyers are experienced in federal court civil rights class actions, including those involving prisons and jails.  Thus, Plaintiffs and their counsel will adequately represent the interests of the Class.

---

[3] For the purposes of this Motion, Plaintiffs adopt the same definition of "release" described in Plaintiffs Petition for Writ of Habeas Corpus, Dkt. No. 1.

[4] *See* Tenn. Dep't of Corrs., Tenn. Jail Summary Report, 3 (Mar. 2020), *available at* https://www.tn.gov/content/dam/tn/correction/documents/JailMarch2020.pdf.; Shelby Cty. Sheriff's Office., Inmate Lookup, *available at* https://imljail.shelbycountytn.gov/IML  (last visited May 19, 2020).

Finally, Defendants have refused to act in a manner that applies generally to the Class as a whole, rendering class-wide writs of habeas corpus appropriate under Federal Rule of Civil Procedure 23(b)(2).

## ARGUMENT

For a class to be certified and litigation to proceed as a class action, the party seeking certification must satisfy all four requirements of Rule 23(a) and at least one of the three requirements in Rule 23(b) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 23(b); *Shady Grove Orthopedic Assocs., P.A.* v. *Allstate Ins. Co.*, 559 U.S. 393, 398 (2010).  Plaintiffs satisfy these requirements and their motion to certify the Class and Subclass as defined should be granted.

## I.     Plaintiffs Satisfy the Rule 23(a) Requirements.

A proposed class meets the requirements in Fed. R. Civ. P. 23(a) if:

(1)      the class is so numerous that joinder of all members is impracticable,

(2)      there are questions of law or fact common to the class,

(3)      the claims of the class representative are typical of the claims of the class, and

(4)      the class representative will fairly and adequately protect the interests of the class.

*Shady Grove*, 559 U.S. at 398 (2010).  The Class and Subclass satisfy the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation.  *See* Fed. R. Civ. P. 23(a).

### A.     Plaintiffs Satisfy Rule 23(a)(1) Because Joinder of All Class Members Would be Impracticable.

The Class and Subclass satisfy Rule 23(a)(1) because joinder of all Class members is impracticable based on the large number of Class members and the practical inability of many Class members to bring individual suits.  To be certified as a class, Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).

There is no "strict numerical test" for determining whether joinder is impracticable; the impracticability of joinder is determined based on the circumstances of the case. *See In re Wal-Mart ATM Fee Notice Litig.*, 2015 WL 6690412, at *7 (W.D. Tenn. Nov. 3, 2015) (quoting *Golden* v. *City of Columbus*, 404 F.3d 950, 965 (6th Cir. 2005)). While any "substantial number" of class members will satisfy the numerosity requirement, "[c]ourts within the Sixth Circuit have recently stated that 'the numerosity requirement is fulfilled when the number of class members exceeds forty.'" *Id.* at *7 (quoting *Phillips* v. *Philip Morris Cos., Inc.*, 298 F.R.D. 355, 362 (N.D. Ohio 2014)); *see also* William B. Rubenstein, et al., 1 Newberg on Class Actions § 3:12 (5th ed. 2011) ("[A] class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone"). "When the exact size of the class is unknown, but 'general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.'" *Youngblood* v. *Linebarger Googan Blair & Sampson, LLP*, 2012 WL 4597990, at *5 (W.D. Tenn. Sep. 30, 2012) (quoting *Olden* v. *LaFarge Corp.*, 203 F.R.D. 254, 269 (E.D. Mich. 2001), *aff'd*, 383 F.3d 495 (6th Cir. 2004)).

Numerosity is easily satisfied here. At least 1,800 people are currently detained at Shelby County Jail.[5] Epidemiologists estimate that at least 20 percent of the general, non-incarcerated population has at least one underlying condition making them particularly vulnerable to dying of COVID-19.[6] People in jails have higher rates of chronic health conditions than people in the general population. According to the Bureau of Justice Statistics, it is estimated that 39.8 percent

---

[5]   *Supra* note 4.

[6]   Amateva Banerjee, Laura Pasea, Steve Harris et al., *Estimating Excess 1-Year Mortality Associated with the COVID-19 Pandemic According to Underlying Conditions: a Population-Based Cohort Study*, THE LANCET (May 12, 2020), https://www.thelancet.com/journals/lancet/article/PIIS0140-6736(20)30854-0/fulltext.

of people in jail have a chronic health condition.[7]  Virtually all of these people will be members of the Class and Subclass.  Additionally, the CDC states that older adults are at higher risk of severe illness from COVID-19.[8]  There are currently more than 200 people over 55 years old detained at the Jail,[9] all of whom are members of the Class, and many of whom can be expected to be members of the Subclass.[10]  As a result, a conservative estimate of the number of people in the Jail who are members of both the Class and Subclass exceeds 300.   Based on these numbers alone, numerosity is satisfied.

Joinder is also impracticable here because the Class and Subclass include people who will be booked into the Jail in the future.  Courts have repeatedly recognized that the fluid nature of the plaintiff class in prison litigation counsels in favor of certification.  *See Dodson* v. *CoreCivic*, 2018 WL 4776081, at *2 n.1 (M.D. Tenn. Oct. 3, 2018) (observing that the "fluid" nature of a proposed class of Tennessee prison inmates weighed towards certification); *Hiatt* v. *County of Adams, Ohio*, 155 F.R.D. 605, 608 (S.D. Ohio 1994) ("The transient and fluctuating nature of the jail population makes joinder impracticable."); *Braggs* v. *Dunn*, 317 F.R.D. 634 (M.D. Ala. 2016) (collecting cases); Rubenstein, et al., 1 Newberg on Class Actions § 3:15 (5th ed. 2011) (observing that the inclusion of future class members "may make class certification more, not less, likely").

---

[7]  *See* Laura M. Maruschack et al., *Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-12*, p. 21, U.S. Dept. of Justice, Office of Justice Programs, Bureau of Justice Statistics (Feb. 2015), *available at* https://www.bjs.gov/content/pub/pdf/mpsfpji1112.pdf.

[8]  Ctrs. for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19), Groups at Higher Risk for Severe Illness, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited May 18, 2020).

[9]  *See* Shelby Cty. Sheriff's Office, Who's In Jail, *available at* http://www.shelbysheriff.org/injail.html (last visited May 18, 2020).

[10]  CDC statistics show that 78 percent of people over the age of 55 have one or more chronic health conditions.  *See* Ctrs. for Disease Control and Prevention, Percent of U.S. Adults 55 and Over with Chronic Conditions (Sept. 2009), *available at* https://www.cdc.gov/nchs/data/health_policy/adult_chronic_conditions.pdf.

By any estimate, the Class and Subclass number in the hundreds.  As a result, the Class and Subclass are each too numerous for joinder to be practicable.

### B. Plaintiffs Satisfy Rule 23(a)(2) Because There Are Numerous Questions of Law and Fact Common to Each Member of the Class.

Rule 23(a)(2) requires that "there [be] questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  A proposed class satisfies the commonality requirement of Rule 23(a)(2) if the class members' claims "depend on a common contention" and that common contention is "of such a nature that it is capable of classwide resolution."  *Wal-Mart Stores, Inc.* v. *Dukes*, 564 U.S. 338, 350 (2011).  Stated another way, a proposed class satisfies the commonality requirement if class treatment will "generate common answers that are likely to drive resolution of the lawsuit." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 852 (6th Cir. 2013).  Although there may be many common issues of law or fact, Rule 23(a)(2) only requires that a single issue of law or fact be common to all members of the class.  *Wal-Mart*, 564 U.S. at 359 ("[E]ven a single common question will do.") (internal quotation marks and alterations omitted).  Factual discrepancies between class members are not fatal to a showing of commonality where common questions predominate over questions affecting only individual class members. *See In re Whirlpool Corp.* 722 F.3d at 858.

Plaintiffs must demonstrate that there is "some glue" holding the claims together.  *Wal-Mart*, 564 U.S. at 352.  The class claims "must depend upon a common contention" that is "of such a nature that it is capable of classwide resolution."  *Id.* at 350 ("What matters to class certification . . . is not the raising of common questions . . . but, rather the capacity of a classwide proceeding to generate common answers . . . .") (internal citations and quotation marks omitted; emphasis and first ellipsis in original).  Courts routinely certify classes alleging systemic constitutional and statutory violations in jails and prisons, finding that systemic conditions and

violations in these institutions provide the "glue" necessary to hold a class together.  *See, e.g.*, *Graham* v. *Parker*, 2017 WL 1737871, at *4 (M.D. Tenn. May 4, 2017) (policies regarding the spread of infection in jail);  *Olson* v. *Brown*, 284 F.R.D. 398, 410–11 (N.D. Ind. 2012) ((jail policies and practices regarding mail and grievance procedures); *Ross* v. *Gossett*, 2020 WL 1472072, at *3–4 (S.D. Ill. Mar. 26, 2020) (unconstitutional practices regarding shakedowns); *Rosas* v. *Baca*, 2012 WL 2061694, at *3 (C.D. Cal. June 7, 2012) (jail violence); *Jones* v. *Gusman*, 296 F.R.D. 416, 465–66 (E.D. La. 2013) (unconstitutional practices regarding staffing, contraband and supervision); *Hughes* v. *Judd*, 2013 WL 1821077, at *23 (M.D. Fla. Mar. 27, 2013) (unconstitutional conditions for juvenile detainees); *Parsons* v. *Ryan*, 289 F.R.D. 513, 516–23 (D. Ariz. 2013) (inadequate medical and mental health care in state prisons); *Butler* v. *Suffolk Cty.*, 289 F.R.D. 80, 98 (E.D.N.Y. 2013) (jail sanitation conditions); *Abadia-Piexoto* v. *U.S. Dep't of Homeland Sec.*, 277 F.R.D. 572, 577 (N.D. Cal. 2011) (shackling of detainees during judicial proceedings).

Here, Plaintiffs satisfy Rule 23(a)(2) because there are questions of both law and fact that pertain to all members of the Class and Subclass and are capable of class-wide resolution such that certification will advance the litigation.  As the Supreme Court explained in *Wal-Mart*, "for purposes of Rule 23(a)(2) [e]ven a single [common] question will do . . . ."  564 U.S. at 359 (citation and internal quotations omitted; alterations in original).  "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation."  *Wal-Mart*, 564 U.S. 338, at 350 (citation omitted; alterations in original).  Here, Plaintiffs allege that all members of the Class are at significant risk of contracting a fatal illness due to Defendants' systemic failure to implement a policy—namely, that Class members be

released from the Jail until the pandemic has abated—necessary to protect them.  The questions of

law and fact common to the Class and Subclass include the following:

> (1) Does COVID-19 present a risk of harm so severe to Class members detained at
> Shelby County Jail that the only constitutionally permissible way to protect
> them is to release them?

> (2) Have Defendants failed to provide Subclass members reasonable modifications
> to protect against COVID-19 in violation of disability rights laws?

> (3) Is release of Class and Subclass members from custody in light of the COVID-
> 19 pandemic the only way the Jail can adequately protect vulnerable people
> from injury or death?

Resolving these questions will yield exactly the kind of "common answer[s]" to Plaintiffs'

ADA, Rehabilitation Act and Fourteenth Amendment claims that the Supreme Court requires.  *See*

*Wal-Mart*, 564 U.S. at 351.  These questions are common to all Class and Subclass members

because all are incarcerated at the Jail, and, if they are not released, are subject to the same risk of

injury or death.  Each of these questions can, therefore, be determined "in one stroke," with respect

to all Class and Subclass members, at the same time.  *Id.* at 350.

Injunctive actions, by their very nature, often present common questions satisfying Rule

23(a)(2) because there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).

They also do not involve an individualized inquiry for the determination of damages.  Relevant

questions of fact also satisfy the commonality requirement.  The factual question of whether

Defendants have enacted policies and procedures in response to COVID-19 that are adequate to

mitigate the risk of death or serious injury to the Class members (and whether such policies are

possible within the confines of the Jail) is common to all individual members of the Class, and

indeed, relates primarily to the realities of the Jail itself (rather than the circumstances of each

Class Member).  With respect to the Subclass, there is a factual question of whether the Jail has

taken affirmative steps required under disability rights laws to prevent disability discrimination for people who are medically vulnerable as a result of a disability.

Here, the members of the Class and Subclass are all people who are at a heightened risk from COVID-19.  While the risk of mortality from COVID-19 for the U.S. population as a whole is estimated to be 1.3 percent, CDC statistics demonstrate that people with underlying health conditions such as diabetes, cardiovascular disease and lung disease are at substantially greater risk of serious injury or death.[11]  The members of the Class and Subclass are all, by definition, facing a higher risk from COVID-19 than the rest of the population of the Jail.  Further, the members of the Class and Subclass are all subject to the same failures by the Jail to ensure adequate measures are taken to protect against the risks posed by COVID-19.  In the Jail, they are unable to socially distance or maintain the levels of hygiene required to mitigate the risk of becoming infected.  The threat posed by COVID-19 is such that every class member imprisoned there currently faces a substantial risk of significant harm.  There is no available vaccine to protect against contracting COVID-19.  People in congregate environments such as jails—where people live, eat and sleep in close proximity—face increased danger of contracting COVID-19, as already

---

[11]  Ctrs. for Disease Control & Prevention, Preliminary Estimates of the Prevalence of Selected Underlying Health Conditions Among Patients with Coronavirus Disease 2019 — United States, February 12–March 28, 2020 (Apr. 3, 2020), *available at* https://www.cdc.gov/mmwr/volumes/69/wr/pdfs/mm6913e2-H.pdf; Amateva Banerjee, Laura Pasea, Steve Harris et al., *Estimating Excess 1-Year Mortality Associated with the COVID-19 Pandemic According to Underlying Conditions: a Population-based Cohort Study*, THE LANCET (May 12, 2020), https://www.thelancet.com/action/showPdf?pii=S0140-6736%2820%2930854-0.

evidenced by the rapid spread of the virus in cruise ships, nursing homes and, indeed, in jails and other detention facilities.[12]   More than 150 detainees at the Jail have already tested positive.[13]

Factual discrepancies among members of the Class and Subclass regarding the precise nature of their pre-existing medical conditions and/or disabilities, and, thus, the exact manner in which COVID-19 poses a threat do not defeat a showing of commonality.  *See In re Whirlpool Corp.*, 722 F.3d at 858.  Further, issues such as the seriousness of the crime with which members of the Class have been charged do not bear on the central constitutional and statutory questions: whether the inevitable risks posed by COVID-19 at the Jail (and Defendants' indifference to those risks) place members of the Class at an intolerable risk of death or serious injury.  Nor are such factual discrepancies central or essential to the remedy sought by Plaintiffs.  Indeed, a court within the Sixth Circuit has already held that a class of prisoners seeking habeas relief because pre-existing health conditions made them especially vulnerable to COVID-19 satisfied the commonality requirement of Rule 23(a)(2) (as well as all other requirements of Rule 23(a)).  *See Wilson*, 2020 WL 1940882, at *7 (rejecting the defendants' argument that the proposed class members' unique crimes, disciplinary histories, ages, medical histories, danger to the community, etc., defeated a showing of commonality).  In *Wilson*, the district court certified the class

---

[12]   *See, e.g.*, Samantha Max, *Investigation: How The Coronavirus Ran Rampant Through A Tennessee Prison*, WPLN NEWS (May 11, 2020), https://wpln.org/post/investigation-how-the-coronavirus-ran-rampant-through-a-tennessee-prison/; C.J. Ciaramella, *8 of the Top 10 Biggest U.S. Coronavirus Hotspots are Prisons and Jails*, REASON (April 29, 2020) https://reason.com/2020/04/29/8-of-the-top-10-biggest-u-s-coronavirus-hotspots-are-prisons-and-jails/; Katie Park et al., *Tracking the Spread of Coronavirus in Prisons*, The Marshall Project (Apr. 24, 2020), https://www.themarshallproject.org/2020/04/24/tracking-the-spread-of-coronavirus-in-prisons.

[13]   Yolanda Jones, *West Tennessee Prisons, Shelby County Jail Hit Hard By Coronavirus*, THE DAILY MEMPHIAN (May 18, 2020), https://dailymemphian.com/article/14121/tennessee-department-of-correction-shelby-county-jail-covid-19-testing-positive.

notwithstanding the fact that the plaintiffs sought "varied relief" allowing for individualized determinations as to what "release" ought to look like in individual cases, because "[t]he motivating question in the litigation is whether the []class members' rights are being violated by the deteriorating conditions at Elkton." *Id.* The Sixth Circuit has already declined to issue a stay of the expedited relief granted by this decision. *See Wilson* v. *Williams*, 2020 WL 2120814 (6th Cir. Apr. 30, 2020).

Plaintiffs satisfy the commonality requirement of Fed. R. Civ. P. 23(a)(2). Central issues of law and fact are common to all members of the Class and Subclass. These questions can be uniformly resolved on a class-wide basis such that judicial economy is achieved.

### C.     Plaintiffs Satisfy Rule 23(a)(3) Because Their Claims Are Typical of the Class They Seek to Represent.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality does not require the claims of the class representative to be identical to the claims of other class members. *See Gen. Tel. Co. of S.W.* v. *Falcon*, 457 U.S. 147, 155 (1982); *Campbell* v. *Hope Cmty. Credit Union*, 2012 WL 2395180, at *5 (W.D. Tenn. June 25, 2012). Rather, a claim is typical if it: (1) arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and (2) is based on the same legal theory as their claims. *Ham* v. *Swift Transp. Co., Inc.*, 275 F.R.D. 475, 484 (W.D. Tenn. 2011) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)).

The typicality requirement ensures that there exists a "sufficient relationship" between the injury to the named plaintiffs and the conduct affecting the class such that there is a "collective nature" to the challenged conduct. *Spurlock* v. *Fox*, 2012 WL 1461361, at *5 (M.D. Tenn. Apr. 27, 2012) (quoting *Stout* v. *J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000)). The typicality

requirement of Rule 23(a)(3) is satisfied if the plaintiff's claim arises from a common practice, conduct, or event that also gives rise to potential claims by other class members and plaintiff's claim is based on the same legal theory as the claims of the other class members.

Typicality does not require that a class representative's claim be identical in all respects with the class claims—rather, all that is required is "a common element of fact or law." *Campbell*, 2012 WL 2395180, at *5 (quoting *Beattie* v. *CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (citations omitted)); *see also Swigart* v. *Fifth Third Bank*, 288 F.R.D. 177, 185 (S.D. Ohio 2012) ("Typical does not mean identical, and the typicality requirement is liberally construed.") (quoting *Gaspar* v. *Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996)); *Smith* v. *Ohio Dep't of Rehab. & Corr.*, 2012 WL 1440254, at *4 (S.D. Ohio Apr. 26, 2012) (same).  Thus, the typicality requirement is satisfied when the representative's injuries arise from the same practice affecting the rest of the class, even if factual differences exist.  *See Bridging Cmtys. Inc.* v. *Top Flight Fin. Inc.*, 843 F.3d 1119, 1125 (6th Cir. 2016).

Here, named Plaintiffs' claims are typical of the Class.  Plaintiffs' claims involve identical legal theories as the Class and Subclass.  Every member of the Class is at imminent risk of death or severe harm as a result of COVID-19, due to the medical conditions that make them part of the Class, if they are not released.  Plaintiffs' claims are typical of the claims of those they seek to represent, and therefore satisfy Rule 23(a)(3).

### D.     The Named Plaintiffs Will Fairly and Adequately Protect the Interests of the Class and Subclass.

Finally, Plaintiffs satisfy Rule 23(a)(4) because their interests are synonymous with the interests of the Class and they have a life-or-death incentive to litigate this issue to the fullest extent possible.  Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  There are two criteria for determining whether

a class will be adequately represented: (1) the class representative must have common interests with unnamed members of the class, and (2) the class representative will vigorously prosecute the interests of the case through qualified counsel. *Campbell*, 2012 WL 2395180, at *6 (quoting *Senter* v. *Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)); *Am. Med. Sys., Inc.*, 75 F.3d at 1083.

A plaintiff's interests must be coextensive with, and not antagonistic to, the interests of the class on all issues which relate to the class; otherwise, the interests of unnamed class members may not be adequately protected. *Senter*, 532 F.2d at 525; *see also, e.g.*, *Hansberry* v. *Lee*, 311 U.S. 32, 85 (1940). The adequate representation requirement is interrelated with the typicality requirement because, without the class representative having a typical claim, she has no incentive to pursue the claims of other class members. *Am. Med. Sys., Inc.*, 75 F.3d at 1083.

### 1.    There is No Conflict Between Named Plaintiffs and the Class.

Plaintiffs satisfy the requirements of Rule 23(a)(4) because their interests are identical to those of the unnamed members of the Class.  They have an incentive to litigate their claims vigorously to the fullest extent possible—their lives depend on it.  Plaintiffs are currently detained at Shelby County Jail.  While detained, Plaintiffs are subjected to the protocols and policies with respect to COVID-19 prescribed by the Defendants, and are subject to the same risk of infection, injury and death inherent to remaining in the Jail as other members of the Class.  Plaintiffs' interest in the present litigation is to obtain relief that will inure to all other members of the Class.

The named Plaintiffs in this case are set forth below:

- Favian Busby is a pretrial detainee at Shelby County Jail.  He has diabetes and takes insulin. Additionally, he has developed hypertension as a result of his diabetes, rendering him highly susceptible to COVID-19.

- Michael Edgington is a pretrial detainee at Shelby County Jail.  He is 60 years old, and currently has no disabilities or chronic health problems.

Mr. Busby and Mr. Edgington have no known conflicts with other Class members and they are willing and able to serve as named Plaintiffs in this action.

### 2.    Plaintiffs' Counsel Will Provide Adequate Representation.

Plaintiffs' counsel are qualified, experienced in conducting federal class action litigation and have adequate resources to litigate the proposed action to its resolution.  Plaintiffs are represented by attorneys from the national American Civil Liberties Union; the American Civil Liberties Union of Tennessee; Paul, Weiss, Rifkind, Wharton & Garrison LLP; Just City; and Black McLaren Jones Ryland & Griffee, P.C., as well as Professor Steven Mulroy.  Counsel for the Class have the time and resources to litigate this case vigorously and they are familiar with the federal laws and procedures that will be relevant during the course of the litigation.  Counsel's qualifications are set forth more fully in the attached Declaration of Thomas H. Castelli.

Rule 23(a)(4) is therefore satisfied because Plaintiffs have the same interests as the unnamed class members and will litigate the case through experienced counsel to secure appropriate relief for all members of the Class.

### II.    Plaintiffs Satisfy Fed. R. Civ. P. 23(b)(2): Plaintiffs Seek Writs of Habeas Corpus From Conditions That Place the Class at Risk of Serious Illness and Death.

The final requirement for class certification is satisfaction of at least one of the subsections of Rule 23(b).  Subsection (b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Courts have repeatedly held that civil rights class actions are the paradigmatic Rule 23(b)(2) suits, "for

they seek classwide structural relief that would clearly redound equally to the benefit of each class member." *Marcera* v. *Chinlund*, 595 F.2d 1231, 1240 (2d Cir. 1979), *vacated on other grounds*, 442 U.S. 915 (1979); *see also Johnson* v. *Gen. Motors Corp*., 598 F.2d 432, 435 (5th Cir. 1979); *Graham*, 2017 WL 1737871, at *6 ("Rule 23(b)(2) has been liberally applied in the area of civil rights, including suits challenging conditions and practices at various detention facilities. . . . The requirements of Rule 23(b)(2) are almost automatically satisfied in actions primarily seeking injunctive relief."); *Dearduff* v. *Washington*, 330 F.R.D. 452, 472 (E.D. Mich. 2019) ("Historically, Rule 23(b)(2) class actions have been used as a vehicle to vindicate civil rights violations."). As stated in the leading treatise on class actions:

> Rule 23(b)(2) was drafted specifically to facilitate relief in civil rights suits. Most class actions in the constitutional and civil rights areas seek primarily declaratory and injunctive relief on behalf of the class and therefore readily satisfy Rule 23(b)(2) class action criteria.

Alba Conte & Herbert B. Newberg, 2 Newberg on Class Actions § 25.20 (4th ed. 2002).

Plaintiffs, in addition to satisfying the requirements of Rule 23(a), also satisfy the requirements of Rule 23(b)(2) in that habeas relief would be appropriate for the Class. Cases are particularly well-suited for Rule 23(b)(2) treatment if they contain common claims susceptible to common proof and a common remedy. *See Gooch* v. *Life Inv'rs Co. of Am.*, 672 F.3d 402, 428 (6th Cir. 2012). Rule 23(b)(2) is satisfied when final injunctive relief would be appropriate to the class, as a whole, based on the facts of the case. Indeed, certification under Rule 23(b)(2) is for injunctive classes. *See, e.g.*, *Wilson*, 2020 WL 1940882, at *8; *Robinson* v. *Purkey*, 326 F.R.D. 105, 168 (M.D. Tenn. 2018); *McDonald* v. *Franklin County, Ohio*, 306 F.R.D. 548, 558–59 (S.D. Ohio 2015); *Thrope* v. *Ohio*, 173 F.R.D. 483, 490–491 (S.D. Ohio 1997); *Bremiller* v. *Cleveland Psychiatric Inst.*, 879 F. Supp. 782, 797 (N.D. Ohio 1995).

Courts routinely certify Rule 23(b)(2) class actions in cases raising constitutional and statutory challenges to the policies, procedures and safety of prisons and jails.  *See, e.g.*, *Brown* v. *Plata*, 563 U.S. 493, 506 (2011); *Rufo* v. *Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 374 (1992); *Wilson*, 2020 WL 1940882, at *8 (holding that a class of inmates vulnerable to COVID-19 satisfied Rule 23(b)(2)); *Dodson,* 2018 WL 4776081, at *5 (granting certification of a class of inmates with diabetes challenging deprivation of care while in prison); *Graham*, 2017 WL 1737871, at *6–7; *Parsons* v. *Ryan,* 289 F.R.D. 513, 525 (D. Ariz. 2013), *aff'd,* 754 F.3d 657 (9th Cir. 2014); *Jones* v. *Diamond*, 519 F.2d 1090, 1097 (5th Cir. 1975) ("Realistically, class actions are the only practicable judicial mechanism for the cleansing reformation and purification of these penal institutions."); *Fraihat* v. *U.S. Immigration & Customs Enf't*, 2020 WL 1932570, at *17–20 (C.D. Cal. Apr. 20, 2020) ("It would be inconvenient and difficult, if not impossible, for detainees to obtain timely relief by filing [individual] suits . . . Given the many obstacles to accessing counsel during the COVID-19 pandemic, the Court is concerned that many putative class members would not be able to proceed on their own . . . ."); *Buffkin* v. *Hooks*, 2019 WL 1282785, at *12 (M.D.N.C. Mar. 20, 2019); *McBride* v. *Mich. Dep't of Corr.*, 2017 WL 3097806, at *1, *8 (E.D. Mich. June 30, 2017), *report and recommendation adopted*, 2017 WL 3085785 (E.D. Mich. July 20, 2017); *Bradley* v. *Harrelson*, 151 F.R.D. 422, 427 (M.D. Ala. 1993) (observing that subsection (b)(2) "is particularly applicable to suits" brought by prisoners in correctional facilities).  Here, Defendants' failure to take reasonable measures to abate the deadly threat posed by COVID-19, coupled with the qualities of the Jail itself, places all Class members at risk of serious illness or death. Accordingly, Rule 23(b)(2) is satisfied.

**III.    The Class and Subclass Are Appropriately Defined.**

The Sixth Circuit recently clarified that injunctive classes seeking certification under Rule 23(b)(2) <u>do not</u> need to demonstrate that the proposed class is "sufficiently definite" or that "the precise identity of each class member" can be ascertained in order for certification to be granted. *Compare Cole* v. *City of Memphis*, 839 F.3d 530, 542 (6th Cir 2016) ("The decisions of other federal courts and the purpose of Rule 23(b)(2) persuade us that ascertainability is not an additional requirement for certification of a (b)(2) class seeking only injunctive and declaratory relief."), *and Young* v. *Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537–38 (6th Cir. 2012) (citations omitted) (holding that Rule 23(b)(3) requires that a class definition be "sufficiently definite" so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class or not).  Even if such a requirement existed under Rule 23(b)(2), the Class and Subclass are definite and objectively measured such that the Court can easily determine whether a particular individual is a member.

The Class is limited to people held in detention at Shelby County Jail during the COVID-19 pandemic who have specific conditions that, according to the CDC, put them at particular risk of death or illness as a result of COVID-19.[14]  Similarly, the Subclass consists of individuals that have a disability as defined in the ADA and who are at increased risk of complications or death from COVID-19 due to their disability.  The Jail has an obligation to track and identify who in its custody has these conditions (almost all of which overlap with the medical conditions of the Class).  *See Fraihat,* 2020 WL 1932570, at *27 (noting that detention centers have an affirmative

---

[14]   Ctrs. for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19), Groups at Higher Risk for Severe Illness, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited May 18, 2020).

obligation to track the disabilities of detainees, including those that would make them highly susceptible to COVID-19).  Courts routinely certify classes that are defined based on criteria akin to those Plaintiffs propose here.  *See Wilson*, 2020 WL 1940882, at *8 (holding that a class of prisoners susceptible to COVID-19 meet the requirements of Rule 23(b)(2)); *Graham*, 2017 WL 1737871, at *2, *7 (certifying a class of incarcerated people with Hepatitis C); *Dodson*, 2018 WL 4776081, at *5 (certifying class of incarcerated people with diabetes); *Lewis* v. *Cain*, 324 F.R.D. 159, 176 (M.D. La. 2018) (certifying a subclass of all qualified individuals with a disability, as defined by the ADA); *McBride*, 2017 WL 3097806, at *1, *8 (certifying a class of deaf and hard of hearing prisoners); *Lippert* v. *Baldwin*, 2017 WL 1545672, at *10 (N.D. Ill. Apr. 28, 2017) (certifying a class of "all prisoners in the custody of the Illinois Department of Corrections with serious medical or dental needs.").

Detainees either have these pre-existing medical conditions or they do not—these class definitions create "no need to make individualized determinations." *Graham*, 2017 WL 1737871, at *2.  As such, the Class and Subclass should be certified as defined, consistent with the requirements of Fed. R. Civ. P. 23.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court certify the Class and Subclass as defined in this Motion.

Dated: May 20, 2020

Respectfully submitted,


/s/ Brice M. Timmons

Brice M. Timmons (Bar No. 29582)
Black McLaren Jones Ryland & Griffee,
A Professional Corporation
530 Oak Court Dr. Suite 360
Memphis, TN 38117
Telephone: (901) 762-0535
Facsimile: (901) 762-0527
btimmons@blackmclaw.com


Josh Spickler (Bar No. 021019)
Wesley Dozier (Bar No. 037735)
Just City
P.O. Box 41852
Memphis, TN 38174
Telephone: (901) 206-2226
josh@justcity.org


Steven John Mulroy (Bar No. 28831)
Bredesen Professor of Law
Cecil C. Humphreys School of Law,
University of Memphis
1 N. Front St.
Memphis, TN 38103
Telephone: (901) 603-8779
smulroy@memphis.edu

Andrea Woods*
Amreeta S. Mathai*
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2500
awoods@aclu.org
amathai@aclu.org


Zoe Brennan-Krohn*
American Civil Liberties Union
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 343-0769
zbrennan-krohn@aclu.org


Maria Morris*
American Civil Liberties Union
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6607
mmorris@aclu.org


Thomas H. Castelli (Bar No. 24849)
Stella Yarbrough (Bar No. 33637)
ACLU Foundation of Tennessee
P.O. Box 120160
Nashville, TN 37212
Telephone: (615) 320-7142
tcastelli@aclu-tn.org
syarbrough@aclu-tn.org

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Joseph Bial*
2001 K Street NW
Washington, D.C. 20006-1047
Telephone: (202) 223-7300
Fascimile: (202) 223-7420
jbial@paulweiss.com

Darren Johnson*
Jonathan M. Silberstein-Loeb*
David Kimball-Stanley*
Adrienne Lee*
Avery Medjuck*
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Fascimile: (212) 757-3990
djohnson@paulweiss.com
jsilberstein-loeb@paulweiss.com
dkimball-stanley@paulweiss.com
alee@paulweiss.com
amedjuck@paulweiss.com


*Attorneys for Plaintiffs*
* Application for admission *pro hac vice*
forthcoming

## **CERTIFICATE OF SERVICE**

I, Brice M. Timmons, certify that on May 20, 2020, I caused a true and correct copy of the foregoing document to be filed electronically via the ECF system.  I also caused a true and correct copy of the foregoing document to be served by hand on the Defendants.


Respectfully submitted,


/s/ Brice M. Timmons