# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| FAVIAN BUSBY and MICHAEL EDGINGTON, on their own behalf and on behalf of those similarly situated, <br><br>  Plaintiffs, <br><br> v. <br><br> FLOYD BONNER, JR., in his official capacity, and SHELBY COUNTY SHERIFF'S OFFICE, <br><br>  Defendants. | No. 20-cv-2359-SHL |

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Before the Court is Defendants' Motion to Dismiss, filed May 26, 2020. (ECF No. 25.) Plaintiffs responded on May 29, 2020 (ECF No. 35) and Defendants replied on June 4, 2020 (ECF No. 37.) For the following reasons, Defendants' Motion to Dismiss is **DENIED**.

Also before the Court is Plaintiffs' Motion for Class Certification, filed May 20, 2020. (ECF No. 3.) Defendants responded in opposition to Plaintiff's Motion for Class Certification on May 26, 2020. (ECF No. 26.) For the following reasons, Plaintiffs' Motion for Class Certification is **GRANTED IN PART** and **DENIED IN PART**. The Court will address Plaintiffs' Motion for a Temporary Restraining Order shortly.

## BACKGROUND

The world is currently in the midst of a pandemic as a result of the novel coronavirus known as COVID-19. It has changed our way of life, both globally and in our community,

including in our detained population. It is highly contagious[1] and potentially deadly.[2] There is no vaccine at this time, nor an effective treatment protocol, other than basic treatment of the symptoms. The Centers for Disease Control and Prevention ("CDC") currently concludes that certain individuals are at "higher risk for severe illness from COVID-19,"[3] including "people who are 65 years and older" as well as those with several "underlying medical conditions."

We face a world today that we have not previously experienced. COVID-19 is unlike any virus those living today have seen, causing us all to alter our lives, stay distanced from one another and wear protective gear to keep the virus at bay. Examining how we confine those accused of crimes in this environment, particularly those who face a higher risk for a severe illness, is as novel as the virus itself, challenging us to apply accepted concepts of law to extraordinarily unique questions. The importance of getting it right cannot be overstated.

Plaintiff Favian Busby is a pretrial detainee at the Jail who "has diabetes and takes insulin." (ECF No. 1, PageID 4.) Plaintiff Michael Edgington is also a pretrial detainee at the Jail who is 60 years old. (Id.) Named Plaintiffs seek to represent the proposed class, with their

---

[1] "The virus that causes COVID-19 is thought to spread mainly from person to person, mainly through respiratory droplets produced when an infected person coughs or sneezes. . . Spread is more likely when people are in close contact with one another (within about 6 feet)." Centers for Disease Control and Prevention, Frequently Asked Questions, https://www.cdc.gov/coronavirus/2019-ncov/faq.html#Coronavirus-Disease-2019-Basics (last visited June 6, 2020.).

[2] While the data changes daily, at the time of this Order, the CDC reports 1,973,797 confirmed cases of COVID-19 cases in the United States, resulting in 112,133 known deaths. Centers for Disease Control and Prevention, Cases in the U.S., https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited June 10, 2020.)

[3] Centers for Disease Control and Prevention, People Who Are at Higher Risk for Severe Illness, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited June 5, 2020.)

current counsel serving as class counsel. (ECF No. 3, PageID 214.) Plaintiff Busby seeks to represent the Subclass, with his current counsel serving as counsel to the Subclass. (Id.)

## PROCEDURAL BACKGROUND

On May 20, 2020, named Plaintiffs filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 and Class Action Complaint for Declaratory Injunctive Relief. (ECF No. 1.) Plaintiffs seek "urgent habeas and injunctive relief to protect medically vulnerable people and people with disabilities detained" at the Shelby County Jail ("Jail"), located at 201 Poplar Avenue in Memphis, Tennessee, in light of the COVID-19 pandemic. (Id.) Concurrently, Plaintiffs filed a Motion for a Temporary Restraining Order ("TRO") (ECF No. 2) and a Motion for Expedited Consideration (ECF No. 3) of the TRO.

The following day, the Court granted Plaintiffs' Motion for Expedited Consideration and ordered Defendants to respond. (ECF No. 12.) Defendants timely responded with a Motion to Dismiss (ECF No. 25) and Response in Opposition to Plaintiff's Motion for Class Certification (ECF No. 26) on May 26, 2020. The Court held a hearing via video teleconference on May 27, 2020. (See ECF Nos. 34, 36.)

Following the hearing, Plaintiffs responded to Defendants' Motion to Dismiss on May 29, 2020. (ECF No. 35.) Defendants replied on June 4, 2020. (ECF No. 37.)

## PROPOSED CLASS DEFINITION

Plaintiffs seek to certify a class defined as:

> All persons currently or in the future held at the Jail in pretrial custody during the COVID19 pandemic who are 55 and older, as well as all persons currently or in the future held at the Jail of any age who have: (a) lung disease, including asthma, chronic obstructive pulmonary disease (e.g., bronchitis or emphysema), or other chronic conditions associated with impaired lung function; (b) heart disease, such as congenital heart disease, congestive heart failure and coronary artery disease; (c) chronic liver or kidney disease (including hepatitis and dialysis patients); (d)

diabetes or other endocrine disorders; (e) hypertension; (f) compromised immune systems (such as from cancer, HIV, receipt of an organ or bone marrow transplant, as a side effect of medication, or other autoimmune disease); (g) blood disorders (including sickle cell disease); (h) inherited metabolic disorders; (i) history of stroke; (j) neurological or developmental disability; (k) cancer or cancer treatments; (l) a BMI of 40 or more; and/or (m) muscular dystrophy or spinal cord injury.

(ECF No. 3, PageID 214.)

Within the Class, Plaintiffs seek to certify one subclass ("Subclass.")

The proposed Subclass is defined as:

All persons currently or in the future held at the Jail in pretrial custody during the COVID19 pandemic who are at increased risk of COVID-19 complications or death because of disabilities as defined in the Americans With Disabilities Act (ADA) and Section 504 of the Rehabilitation Act. The Subclass includes everyone in the Class except those people who are vulnerable solely due to age or BMI. People with all other conditions listed in paragraph (1) above are people with disabilities as defined under federal law.

(Id.)

## ANALYSIS

I. Motion to Dismiss

Defendants contend that Plaintiffs' Petition must be dismissed for three reasons:[4] (1) the Petition is not cognizable under 28 U.S.C. § 2241 because it challenges the conditions of confinement rather than the fact or duration of confinement, (2) Plaintiffs have yet to exhaust state law remedies and (3) Plaintiffs' have failed to comply with the requirements of the Prison Litigation Report Act's ("PLRA"). In response, Plaintiffs argue that (1) their claims are properly brought under § 2241, (2) there is no available state remedy and (3) the PLRA does not apply to their habeas claims.

---

[4] In their Reply to Plaintiffs' Response to the Motion to Dismiss, Defendants argue that Plaintiffs' claims under the Americans with Disabilities Act and the Rehabilitation Act must fail. (ECF No. 37, PageID 668.) However, because Defendants raise this argument for the first time in their Reply, it is not well-taken, and not considered here.

A. <u>Cognizable as a Habeas Claim</u>

Generally, inmates in state custody seeking pretrial habeas relief must bring their claims under 28 U.S.C. § 2241. <u>Atkins v. People of State of Mich.</u>, 644 F.2d 543, 546 n.1 (6th Cir. 1981); <u>Winburn v. Nagy</u>, No. 19-2398, at *2 (6th Cir. Apr. 23, 2020). Section 2241 provides a federal district court with jurisdiction over petitions for habeas corpus where a petitioner is in "custody in violation of the Constitution or laws or treaties of the United States." § 2241(c)(3). Suits challenging the "fact or duration of confinement fall within the traditional scope of habeas corpus and accordingly are not cognizable under § 1983." <u>Thomas v. Eby</u>, 481 F.3d 434, 438 (6th Cir. 2007.)

These claims are cognizable under § 2241. Plaintiffs are challenging the execution or manner of their pretrial detention. See <u>Edwards v. Dewalt</u>, 681 F.3d 780, 784 (6th Cir. 2012) ("A prisoner can, for instance, use § 2241 to challenge the "execution or manner in which the sentence is served.") They do not challenge, or seek alteration of, jail conditions. At the hearing, when asked directly if they are seeking a change in jail conditions, Plaintiffs' counsel explained:

> We are certainly not asking you, Your Honor, to go in and make changes to the [jail] conditions. But the reason why we're not asking for that is because the challenge that we are presenting is to the validity of the confinement . . . . [T]here are no conditions at the jail under which Petitioners and the class members who are medically vulnerable or at otherwise at high risk of severe infections or death from COVID-19 can be safe.

(ECF No. 36, PageID 582.)

Plaintiffs argue that, regardless of whether conditions improve at the Jail, their challenge is to the fact that they are being confined in a community facility such as the Jail. (ECF No. 1, PageID 19–20.) So long as they are confined at the Jail during the pandemic, Plaintiffs contend that their confinement is unconstitutional. (ECF No. 2, PageID 53.) The nature of Plaintiffs'

5

challenge, along with their requested relief— release or enlargement of custody—means that their claims are properly brought under § 2241.[5]  See Wilson v. Williams, 2020 U.S. App. LEXIS 14291, *4 (6th Cir. 2020) ("Where a petitioner claims no set of conditions would be constitutionally sufficient, we construe the petitioner's claim as challenging the fact of the confinement"); see also Wilson, Case No. 20-3441, ECF No. 54 (6th Cir. June 9, 2020) (same).

Given the facts here, Plaintiffs could have theoretically pled a § 1983 claim, but under which law they plead is their prerogative.  See Ansfield v. Omnicare, Inc., 769 F.3d 455, 467 (6th Cir. 2014) (finding that a plaintiff is the "master of its complaint, which means that it can choose the forum in which to file and the law under which it wishes to seek relief").  Of course, this does not require the Court to ultimately grant the relief they seek.  But, at a minimum, the Court finds that Plaintiffs' pleading under § 2241 was proper.

B.      Availability of State Remedies

Generally, where state inmates seek relief under § 2241, they "must exhaust all available state court remedies before proceeding in federal court."  Phillips v. Court of Common Pleas, Hamilton Cty., Ohio, 668 F.3d 804, 810 (6th Cir. 2012).  However, "exhaustion is a problem only if the state still provides a remedy for the habeas petitioner to pursue, thus providing the state courts an opportunity to correct a constitutionally infirm state court conviction."  Rust v.

---

[5] That part of Plaintiffs' requested relief is not release from custody but simply "enlargement" of the custody, in a form such as home confinement, does not preclude Plaintiffs from filing under § 2241.  After all, unlike the other habeas statute, § 2255, there is "no similar requirement in § 2241 that a petitioner claim release from custody."  Wagner v. United States, 2020 WL 974894, at *6 (6th Cir. Feb. 28, 2020) (emphasis in original).  For this reason, under § 2241, an inmate can bring "challenges to the location where a sentence is served, prison transfers, or a prison's requirement that a prisoner make restitution payments while confined."  Id. (citations omitted).

6

Zent, 17 F.3d 155, 160 (6th Cir. 1994). "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists." Id.

No exhaustion problem exists here. Certainly, state courts have an obligation to uphold federal constitutional law, and they often have procedures in place for people seeking relief for constitutional violations. See Stone v. Powell, 428 U.S. 465, 494 (1976). But given ample opportunity, Defendants fail to show that courts in Shelby County have procedures in place for the type of substantive due process grievances Plaintiffs bring to this Court. That is understandable. Pretrial detention should not last long.

Yet, what we have here are potentially hundreds of medically vulnerable people who seek release from a county jail amid a pandemic. The absence in Tennessee law of both a normal and a proven procedure which provides relief based on these unique medical needs for release means pretrial inmates in Shelby County have no available state remedies. See O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) (noting that "state prisoners do not have to invoke extraordinary remedies when those remedies are alternatives to the standard review process and where the state courts have not provided relief through those remedies in the past").

Defendants cite to various Tennessee statutes, but none provide an avenue for inmates to seek the relief requested here. The Tennessee habeas statute is triggered in only two situations, neither of which arise here: where a conviction is void because the trial court was without jurisdiction or where a defendant remains confined despite the expiration of his sentence. See State v. Ritchie, 20 S.W.3d 624, 630 (Tenn. 2000); Benson v. State, 2019 WL 1388195, at *2 (Tenn. Crim. App. Mar. 26, 2019) (affirming denial of a pretrial inmate's habeas petition because it was "premature in that there were no convictions at the time of the . . . petition") .

Neither do the Tennessee's pretrial processing statutes cited by Defendants provide an available remedy. After an arrest, Tennessee courts first consider releasing a "bailable" inmate—all pretrial criminal defendants save those charged with capital offenses—on their own recognizance or on an unsecured bond. See Hill v. Hall, No. 3:19-CV-00452, 2019 WL 4928915, at *3 (M.D. Tenn. Oct. 7, 2019). In deciding whether to release an inmate on their own recognizance, courts look to the following factors, none of which require consideration of an inmate's health risks during confinement:

1. The defendant's length of residence in the community;
2. The defendant's employment status and history, and financial condition;
3. The defendant's family ties and relationships;
4. The defendant's reputation, character and mental condition;
5. The defendant's prior criminal record, including prior releases on recognizance or bail;
6. The identity of responsible members of the community who will vouch for defendant's reliability;
7. The nature of the offense and the apparent probability of conviction and the likely sentence, insofar as these factors are relevant to the risk of nonappearance; and
8. Any other factors indicating the defendant's ties to the community or bearing on the risk of willful failure to appear.

Tenn. Code Ann. § 40-11-115.

If release upon recognizance or on an unsecured bond is not appropriate, the court may impose conditions, such as bail, to help ensure the defendant's appearance in court. See id. And even after those conditions are imposed, courts may alter those conditions, an option heavily relied on by Defendants. Yet, the same agnosticism to an inmate's medical condition in the initial bail decision process pervades these pretrial processing statutes. See Tenn. Code Ann. §§ 40-11-116, -118. At none of these pretrial junctures do state courts have to consider an inmate's request for release due to health risks. And because pretrial inmates in Shelby County seek exactly that, the various appellate procedures Defendants cite are equally unavailable to inmates. See Cameron, 2020 WL 2569868, at *14 (E.D. Mich. May 21, 2020).

Defendants also point to recent Tennessee Supreme Court orders relating to the COVID-19 pandemic, but unfortunately none address this particular issue. While the Tennessee Supreme Court has ordered various measures to ensure that critical proceedings continue, none of the measures in its orders outline a way in which a medically vulnerable pretrial detainee, in any state jail, may seek release based on that status. See In Re: Covid-19 Pandemic, No. ADM2020-00428 (Tenn. March 25, 2020).

Defendants attempt to rely on several state court decisions to argue that Tennessee courts regularly entertain similar constitutional grievances, but those cases are not on-point. In none of the cases did the Tennessee courts consider a pretrial inmate's allegation that her substantive right to medical treatment under the Eighth Amendment was violated. Rather, in the cases cited, the state courts considered inmates' procedural grievances, unrelated to health concerns, that arose amid pretrial detention. See, e.g., State v. Burgins, 464 S.W. 3d 298, 307–08 (considering whether pretrial detention without bond was a procedural due process violation); State v. Leavy, 1999 Tenn. Crim. App. LEXIS 1296, *7 (finding detention of a pretrial juvenile inmate without bond was not a procedural due process violation).

Defendants' reliance on the declarations of Shelby County Criminal Court judges is also inapposite. The declarations, (ECF Nos. 27-3, 27-4), while addressing several important issues, do not point to any instance where a pretrial inmate's request for release due to medical reasons was heard, and ruled on, based on a state statute or rule of criminal procedure. Of course, certain judges may be discretionarily (and sua sponte) considering pretrial inmates' health risks. But evidence of even that happening in a particular instance in Shelby County has not been presented to this Court. Moreover, even if that was the case sometimes, it would be among those

"extraordinary" state law remedies that are "technically available to the litigant but not required to be exhausted." Smith v. Morgan, 371 F. App'x 575, 579 (6th Cir. 2010).

In sum, there is no normal and proven available state remedy by which a medically-vulnerable pretrial detainee may challenge his custody or bond based on his medically-vulnerable status. Therefore, exhaustion is not required.

    C.    <u>Applicability of the PLRA</u>

Given that Plaintiffs' claims are cognizable under § 2241, the PLRA's requirements do not apply here. See 18 U.S.C. 3626(g)(2)(noting that the PLRA's requirements do not apply to "habeas corpus proceedings challenging the fact or duration of confinement in prison"); Wilson, 2020 U.S. App. LEXIS 14291, *4 ("Petitioners' proper invocation of § 2241 also forecloses any argument that the PLRA applies given its express exclusion of habeas corpus proceedings challenging the fact or duration of confinement in prison from its ambit") (quotations omitted). Even if this was a § 1983 action, it is unclear whether the PLRA would preclude the Court's consideration of this matter. See Cameron, 2020 WL 2569868, at *14 (holding that the PLRA's requirement that a three-judge panel enter a prison release order due to a constitutional violation does not apply where overcrowding is not the primary cause of the violation).

For these reasons, Defendants' Motion to Dismiss is **DENIED**.

    II.    <u>Motion for Class Certification</u>

The Court next turns to Plaintiffs' Motion for Class Certification.

    A.    <u>Class Definition</u>

Plaintiffs seek to certify a class of detainees who are at a higher risk for severe illness from COVID-19. However, the definition offered by Plaintiffs for that proposed Class is much

broader than the CDC's list of persons who are at higher risk for adverse reaction should they contract COVID-19.[6]

First, the CDC concludes that those age 65 and older, and those with certain underlying medical conditions face a higher risk of severe consequences should they contract COVID-19. According to the CDC, the underlying medical conditions include:

- People with chronic lung disease or moderate to severe asthma
    - Including chronic obstructive pulmonary disease (COPD) (including emphysema and chronic bronchitis), idiopathic pulmonary fibrosis and cystic fibrosis
- People who have serious heart conditions
    - Including heart failure, coronary artery disease, congenital heart disease, cardiomyopathies and pulmonary hypertension
- People who are immunocompromised
    - Many conditions can cause a person to be immunocompromised, including cancer treatment, smoking, bone marrow or organ transplantation, immune deficiencies, poorly controlled HIV or AIDS, and prolonged use of corticosteroids and other immune weakening medications
- People with severe obesity (body mass index [BMI] of 40 or higher)
- People with diabetes
- People with chronic kidney disease undergoing dialysis
- People with chronic liver disease, including cirrhosis
- People with hemoglobin disorders, including sickle cell disease and thalassemia[7]

Despite the CDC's position on the age of the vulnerable population, Plaintiffs' proposed Class includes all persons who are <u>55</u> years of age or older. Plaintiffs justify this expanded class definition because "incarcerated patients tend to age faster than non-incarcerated persons." (ECF

---

[6] Centers for Disease Control and Prevention, People Who Are at Higher Risk for Severe Illness, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited June 5, 2020.)

[7] Id.; Centers for Disease Control and Prevention, Groups Who Are at Higher Risk for Severe Illness, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html. The Court notes that medical information regarding COVID-19 is constantly evolving. Defendants do not contest the legitimacy of any of the medical conditions Plaintiffs propose to be used to consider membership in the Class.

No. 2, PageID 46.) However, the Court is not persuaded by this argument and declines to depart from the CDC's guidelines in this sole area.

As to the "medically vulnerable," Plaintiffs specifically list hepatitis, endocrine disorders, metabolic disorders, people with a history of stroke and people with muscular dystrophy or a spinal cord injury in their list of medically vulnerable class members. These conditions are not listed on the CDC website, which is the cited source of information in Plaintiffs' filings. (See ECF No. 2, PageID 45 n.4.) Further, while Plaintiffs list asthma as a condition, the CDC concludes that only "moderate to severe asthma" is a condition which may exacerbate COVID-19.[8]

The Court has "broad discretion to modify class definitions." Wilson v. Williams, 2020 U.S. Dist. LEXIS 70674, at *15 n.49 (N.D. Ohio April 22, 2020.) Because both Parties rely on the CDC for guidance regarding health information related to COVID-19, the Court narrows the proposed Class to be in conformity with the CDC guidelines. The Court will consider the following to be the definition of the Class:

1. People 65 years and older;
2. People with chronic lung disease or moderate to severe asthma (including chronic obstructive pulmonary disease (COPD) (including emphysema and chronic bronchitis), idiopathic pulmonary fibrosis and cystic fibrosis);
3. People who have serious heart conditions (including heart failure, coronary artery disease, congenital heart disease, cardiomyopathies and pulmonary hypertension);
4. People who are immunocompromised (including cancer treatment, smoking, bone marrow or organ transplantation, immune deficiencies, poorly controlled HIV or AIDS, and prolonged use of corticosteroids and other immune weakening medications);
5. People with severe obesity (body mass index [BMI] of 40 or higher);
6. People with diabetes;
7. People with chronic kidney disease undergoing dialysis;
8. People with chronic liver disease, including cirrhosis; and
9. People with hemoglobin disorders, including sickle cell disease and thalassemia.

---

[8] Id.

B.     Criteria for Class Certification

Rule 23 of the Federal Rules of Civil Procedure ("FRCP") governs class certification. Four requirements must be met for the Court to certify a class: numerosity ("the class is so numerous that joinder of all members is impracticable"); commonality ("there are questions of law or fact common to the class"); typicality ("the claims and defense of the representative parties are typical of the claims or defenses of the class"); and adequacy of representation ("the representative parties will fairly and adequately protect the interests of the class."). Fed. R. Civ. P. 23(a). In addition to these requirements, the class must fall into at least one of the categories listed in FRCP 23(b). Coleman v. GMAC, 296 F.3d 443, 446 (6th Cir. 2002.) Plaintiffs carry the burden of proof by a preponderance of the evidence that the class is proper. Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011.)

1.     Numerosity

Joinder of all parties must be impractical to meet the first factor of FRCP 23(a). While there is no strict minimum number of plaintiffs defined by law, "Courts within the Sixth Circuit have recently stated that the numerosity requirement is fulfilled when the number of class members exceeds forty." In re Wal-Mart ATM Fee Notice Litigation, 2015 WL 6690412, at *7 (W.D. Tenn. Nov. 3, 2015) (quotation and citation omitted.) Here, Plaintiffs, largely using the open-source research that is available to them at this stage of the litigation, estimate that membership of the proposed Class and Subclass "exceeds 300."[9] (ECF No. 3, PageID 218–19.)

---

[9] Plaintiffs calculate this estimate based on the number of people in the Jail, epidemiologists' estimates on the number of people who have a chronic health condition and publicly available data regarding the age of currently detained individuals at the Jail. (ECF No. 3, PageID 218–19.) The Court finds, that, despite its narrowing of the proposed class, it is highly likely that there are more than 40 detainees who fit the modified Class definition.

Defendants argue that Plaintiffs "have presented no actual evidence about the proposed class." (ECF No. 26, PageID 339.) Notably, while Defendants criticize the strength of Plaintiffs' proof on numerosity, they do not actually contradict any of the data Plaintiffs rely on in their estimate, nor do they aver that it is incorrect. In fact, part of Plaintiffs' request for data in the TRO is that which would likely be used to satisfy this requirement. However, Defendants oppose producing that data. Defendants' demanding that Plaintiffs meet their burden while also keeping the information from them smacks of the proverbial "having one's cake and eating it, too." They cannot have it both ways.

The Court finds that, based on the record at this stage and by a preponderance of the evidence, joinder is impractical and numerosity is met.

2.      Commonality

FRCP 23(a)(2) requires that "there [be] questions of law or fact common to the class." "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather, the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011) (citation omitted.)

Plaintiffs aver that there are questions of both law and fact which pertain to all members of the Class and Subclass and propose three that meet this criteria. (ECF No. 3, PageID 221.) First, "[d]oes COVID-19 present a risk of harm so severe to Class members detained at Shelby County Jail that the only constitutionally permissible way to protect them is to release them?" (Id. at PageID 222.) Second, "[h]ave Defendants failed to provide Subclass members reasonable modifications to protect against COVID-19 in violation of disability rights laws?" (Id.) Lastly,

"[i]s release of Class and Subclass members from custody in light of the COVID-19 pandemic the only way the Jail can adequately protect vulnerable people from injury or death?" (Id.)

Defendants contest the commonality of the purported Class and Subclass based on the "individualized assessment" which would be required prior to the release of any detainee. (ECF No. 26, PageID 342.) They contend that an individual assessment must be done to determine whether the Jail can provide proper medical treatment, whether the detainee is a threat to the safety of the community, whether the detainee has a safe place to go should he or she be released and whether the detainee might put the public at risk of infection. (Id.) Defendants also raise issues related to the rights of crime victims, who, under the Tennessee Constitution, have enumerated rights which could be impacted by class certification. See Tenn. Const. art. I § 35. Notably, these rights include the right to be informed of proceedings and release of an accused, as well as to be present at all proceedings at which a defendant has the right to be present. Id.

Here, all members of the purported Class and Subclass are allegedly suffering the same injury due to Defendants' alleged response to COVID-19. Despite the individual assessments that must occur if Plaintiffs are ultimately successful on the merits of their claims, there are common questions of fact and law that can be answered for the entire proposed Class to expedite a resolution. While Defendants are correct that individual assessments will have to be conducted, the commonality requirement does not require that <u>all</u> questions must be the same for all class members. "Even if individualized determinations . . . are necessary, the 'mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." Cameron, 2020 WL 2569868, at *18 (quoting Sterling v. Veliscol Chem. Corp., 855 F.2d 1188, 1197 (6th Cir. 1998.))

Because there are questions of law and fact that are common among the proposed members of the Class and Subclass, the Court finds by a preponderance of the evidence that commonality has been met.

        3.      <u>Typicality</u>

"A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if [the named plaintiff's] claims are based on the same legal theory." <u>Beattie v. CenturyTel, Inc.</u>, 511 F.3d 554, 561 (6th Cir. 2007) (quotation omitted.) Here, the purported Class and Subclass have the same claim, that, given their age and/or medical status, their current detention is unconstitutional in light of COVID-19. The legal theories are the same despite the potential for different results after individualized assessments later in litigation.

The Court finds by a preponderance of the evidence that typicality has been met.

        4.      <u>Adequacy of Representation</u>

There are two criteria for determining whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The representative and the unnamed members must have common interests, and it must appear that the representative will vigorously prosecute the interests of the class. <u>In re Am. Med. Sys., Inc.</u>, 75 F.3d 1069, 1083 (6th Cir. 1996.)

Here, Defendants did not contest the adequacy of representation. Named Plaintiffs and the remainder of the purported class have incentive to prosecute the case vigorously because their interests are identical. Due to the potential fatal result of contracting COVID-19, their incentive is high. Further, Plaintiffs are represented by several competent counsel and organizations that have experience in this area of litigation.

C.  FRCP 23(b)(2)

In addition to meeting all of the factors under FRCP 23(a), plaintiffs must meet one of the criteria under FRCP 23(b).  Certification under FRCP 23(b)(2) is appropriate where the party seeking it shows that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  Courts have found that the requirements of Rule 23(b)(2) are "almost automatically satisfied in actions primarily seeking injunctive relief." Williams v. City of Philadelphia, 270 F.R.D. 208, 222 (E.D. Pa. 2010) (citing Baby Neal v. Casey, 43 F.3d 48, 58 (3d Cir. 1995)) (additional citation omitted).  "Numerous courts have held that Rule 23(b)(2) is an appropriate vehicle in actions challenging prison conditions." Id. at 222 (citing cases).

Here, Plaintiffs seek injunctive relief that requires Defendants to take specific action to address alleged ongoing constitutional violations of pretrial detainees at the Jail.  This action falls under FRCP 23(b)(2).

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **DENIED**, and Plaintiffs' Motion for Class Certification is **GRANTED IN PART and DENIED IN PART**.  The Court concludes that the modified Class and Subclass meet the requirements for class certification.

The Class consists of all:

1. People 65 years and older;
2. People with chronic lung disease or moderate to severe asthma (including chronic obstructive pulmonary disease (COPD) (including emphysema and chronic bronchitis), idiopathic pulmonary fibrosis and cystic fibrosis);
3. People who have serious heart conditions (including heart failure, coronary artery disease, congenital heart disease, cardiomyopathies and pulmonary hypertension);
4. People who are immunocompromised (including cancer treatment, smoking, bone marrow or organ transplantation, immune deficiencies, poorly controlled HIV or

17

AIDS, and prolonged use of corticosteroids and other immune weakening medications);
5. People with severe obesity (body mass index [BMI] of 40 or higher);
6. People with diabetes;
7. People with chronic kidney disease undergoing dialysis;
8. People with chronic liver disease, including cirrhosis; and
9. People with hemoglobin disorders, including sickle cell disease and thalassemia.

The subclass consists of:

All persons currently or in the future held at the Jail in pretrial custody during the COVID19 pandemic who are at increased risk of COVID-19 complications or death because of disabilities as defined in the Americans With Disabilities Act (ADA) and Section 504 of the Rehabilitation Act. The Subclass includes everyone in the Class except those people who are vulnerable solely due to age or BMI. People with all other conditions listed in paragraph (1) above are people with disabilities as defined under federal law.

The Court **ORDERS** Defendants to file a list of Class and Subclass members on the docket, no later than noon on Friday, June 12, 2020. This list shall include: the detainee's full name, the pod and cell number where the detainee is currently housed at the time of this Order and whether the detainee is occupying the cell alone, or the number of cellmates who live with the detainee. The Court will address the Motion for Temporary Restraining Order shortly and will include a schedule for the next steps in this litigation at that time.

**IT IS SO ORDERED,** this 10th day of June, 2020.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
UNITED STATES DISTRICT JUDGE