## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| Favian Busby, Terric Edwards, Russell Leaks, Saul Molina Martinez, Joseph Nelson, and Mark Phillips, *on their own behalf and on behalf of those similarly situated*; <br><br>                           Petitioners-Plaintiffs, <br><br>          v. <br><br> Floyd Bonner, Jr., *in his official capacity*, Shelby County Sheriff, and the Shelby County Sheriff's Office; <br><br>                           Respondents-Defendants. | Case No. 2:20-cv-2359-SHL |

## MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND PERMISSION TO POST CLASS NOTICE

Pursuant to Fed. R. Civ. P. 23(e), Plaintiffs Favian Busby, Terric Edwards, Russell Leaks, Saul Molina Martinez, Joseph Nelson, and Mark Phillips (collectively "Named Plaintiffs"), through counsel and on behalf of similarly situated individuals ("Plaintiffs"), and Defendants Floyd Bonner, Jr. and the Shelby County Sheriff's Office (collectively "Defendants"), through counsel, move for preliminary approval of a class action settlement.

The Parties respectfully move for entry of the Preliminary Approval Order (attached to the Memorandum of Law as Exhibit A): (a) granting preliminary approval of the settlement embodied in the proposed Consent Decree attached as Exhibit B and the proposed Settlement Agreement attached as Exhibit C; (b) approving the forms of notice attached as Exhibits D and E; (c) establishing a procedure for providing notice of the settlement and Consent Decree to members of the Class and Subclass and affording them an opportunity to object; and (d) setting a date and time for a fairness hearing approximately 5 weeks from the date the Court grants this Motion.

The grounds for this motion are set forth in the accompanying Memorandum of Law and the Exhibits thereto.

Respectfully submitted,

PENTECOST, GLENN & MAULDIN, PLLC
By: /s/ Nathan D. Tilly
James I. Pentecost (#11640)
Nathan D. Tilly (#31318)
J. Austin Stokes (#31308)
162 Murray Guard Drive, Suite B
Jackson, Tennessee 38305
(731) 668-5995

AND

Marlinee C. Iverson (#18591)
Bridgett L. Stigger (#29415)
Shelby County Attorney's Office
160 North Main Street, Suite 950
Memphis, TN 38103
(901) 222-2100

*Attorneys for Respondents-Defendants*

AMERICAN CIVIL LIBERTIES UNION
By: /s/ Andrea Woods
Andrea Woods
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2500
awoods@aclu.org

Brice M. Timmons (Bar No. 29582)
Black McLaren Jones Ryland & Griffee,
A Professional Corporation
530 Oak Court Dr. Suite 360
Memphis, TN 38117
Telephone: (901) 762-0535
Facsimile: (901) 762-0527
btimmons@blackmclaw.com

Josh Spickler (Bar No. 021019)
Wesley Dozier (Bar No. 037735)
Just City P.O. Box 41852
Memphis, TN 38174
Telephone: (901) 206-2226
josh@justcity.org

Steven John Mulroy (Bar No. 28831)
Bredesen Professor of Law
Cecil C. Humphreys School of Law,
University of Memphis
1 N. Front St.
Memphis, TN 38103
Telephone: (901) 603-877
smulroy@memphis.edu

Amreeta S. Mathai
Jeffery P. Robinson
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2500
amathai@aclu.org
jrobinson@aclu.org

Zoe Brennan-Krohn
American Civil Liberties Union
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 343-0769
zbrennan-krohn@aclu.org

Maria Morris
American Civil Liberties Union
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6607
mmorris@aclu.org

Thomas H. Castelli (Bar No. 24849)
Stella Yarbrough (Bar No. 33637)
ACLU Foundation of Tennessee
P.O. Box 120160
Nashville, TN 37212
Telephone: (615) 320-7142
tcastelli@aclu-tn.org
syarbrough@aclu-tn.org

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Joseph Bial*
2001 K Street NW
Washington, D.C. 20006-1047
Telephone: (202) 223-7300
Fascimile: (202) 223-7420
jbial@paulweiss.com

Darren Johnson*
Meredith L. Borner
Jonathan M. Silberstein-Loeb
Edward C. Robinson, Jr.
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Fascimile: (212) 757-3990
djohnson@paulweiss.com
mborner@paulweiss.com
jsilberstein-loeb@paulweiss.com
erobinson@paulweiss.com

* = *pro hac vice* application forthcoming

*Attorneys for Petitioners-Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE**

| | |
|---|---|
| Favian Busby, Terric Edwards, Russell Leaks, Saul Molina Martinez, Joseph Nelson, and Mark Phillips, *on their own behalf and on behalf of those similarly situated*; <br><br> Petitioners-Plaintiffs, <br><br> v. <br><br> Floyd Bonner, Jr., *in his official capacity*, Shelby County Sheriff, and the Shelby County Sheriff's Office; <br><br> Respondents-Defendants. | Case No. 2:20-cv-2359-SHL |

**MEMORANDUM OF LAW IN SUPPORT OF THE PARTIES' JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND PERMISSION TO POST CLASS NOTICE**

## TABLE OF CONTENTS

ARGUMENT.................................................................................................................2

I.     Preliminary Approval of the Parties' Settlement....................................................2

     A.     There is No Risk of Fraud or Collusion........................................................3

     B.     The Complexity, Expense, and Likely Duration of the Litigation
          Favor Settlement...........................................................................................4

     C.     The Parties Have Engaged in Sufficient Discovery for Plaintiffs
          to Gauge the Adequacy of Settlement ...........................................................5

     D.     Likelihood of Success on the Merits .............................................................7

     E.     Class Counsel and Class Representatives Agree that the
          Settlement Is Favorable .................................................................................8

     F.     Reaction of Absent Class and Subclass Members .........................................9

     G.     The Settlement Serves the Public Interest .....................................................9

II.    Reasonable Notice to the Class Requires Posting Notices In the Jail ....................9

CONCLUSION..........................................................................................................12

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Does 1-2 v. Déjà Vu Services, Inc.,*
    925 F.3d 886 (6th Cir. 2019) ....................................................................2

*Fidel v. Farley,*
    534 F.3d 508 (6th Cir. 2008) ..................................................................10

*In re Gen. Tire & Rubber Co. Sec. Litig.,*
    726 F.2d 1075 (6th Cir. 1984) ................................................................10

*Int'l Union, UAW, et al. v. General Motors Corp.,*
    497 F.3d 615 (6th Cir. 2007) ...............................................................7, 10

*N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.,*
    315 F.R.D. 226 (E.D. Mich. 2016) ............................................................5

*In re S. Ohio Corr. Facility,*
    173 F.R.D. 205 (S.D. Ohio April 22, 1997) ............................................10

**Statutes**

42 U.S.C. § 1983.............................................................................................2

48 U.S.C. § 2241.........................................................................................1, 2

Americans with Disabilities Act Title II...............................................1, 7, 8

Rehabilitation Act Section 504...............................................................1, 8

**Other Authorities**

Fed. R. Civ. P. 23(e) ......................................................................................2

Fed. R. Civ. P. 23(e)(1)...............................................................................10

Fed. R. Civ. P. 23(e)(2)..................................................................................3

## INTRODUCTION

Plaintiffs brought this case as a class action, alleging that in continuing to detain medically vulnerable and disabled persons during the COVID-19 pandemic, Defendants violated Plaintiffs' constitutional and statutory rights. Plaintiffs brought claims for declaratory and injunctive relief and/or a writ of habeas corpus under 48 U.S.C. § 2241 as well as discrimination on the basis of disability in violation of Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Rehab Act"). Plaintiffs sought, among other things, release from the Jail via a temporary restraining order and/or preliminary injunction. In response, Defendants denied they violated Plaintiffs' constitutional or statutory rights. Defendants disputed Plaintiffs' allegations concerning Plaintiffs' safety in the Shelby County Jail (the "Jail") and asserted that they implemented numerous practices and procedures that appropriately combated and prevented the spread of COVID-19 in the Jail.

By Order dated June 10, 2020, the Court denied Defendants' motion to dismiss and certified a Class and Subclass of medically vulnerable and disabled individuals detained pretrial at the Jail who are at high risk of serious injury or death from COVID-19. *See* ECF No. 38. Subsequently, the Court heard proof from the parties as well as an Independent Inspector concerning the Jail's response to COVID-19. After hearing proof, the Court, in its August 7, 2020 Order, denied the Plaintiffs' motion for preliminary injunction. *See* ECF No. 124. While the Court found that the proof showed "failures with how the Jail detains medically vulnerable detainees amid this pandemic," the Court concluded that "these failures can likely be remedied quickly." ECF No. 124, Pg.ID 2814–16. As a result, on September 15, 2020, Plaintiffs sought leave to file an amended complaint seeking relief

under 42 U.S.C. § 1983 in addition to habeas relief under 28 U.S.C. § 2241.  *See* ECF No. 137.  That motion is *sub judice*.

At different times during these proceedings the parties have endeavored to settle their dispute.  The Court's August 7 Order added additional impetus to these efforts.  On December 16, 18, and 22, 2020, the parties engaged in mediation, which proved successful. The parties now bring this motion seeking preliminary approval of their class action settlement, which if approved would result in the entry of a Consent Decree, in the form attached hereto as Exhibit B (the "Decree"), as well as a Release and Settlement Agreement, in the form attached hereto as Exhibit C (the "Agreement" and together with the Decree, the "Settlement").

The Decree and Agreement meet the requirements the Court must evaluate in considering whether to grant the motion seeking preliminary approval because there is no risk of fraud or collusion; the complexity, expense, and likely duration of the litigation favor settlement; the parties have engaged in sufficient discovery for Plaintiffs to gauge the adequacy of settlement; the parties are using settlement to resolve a legitimate legal and factual disagreement; the Class counsel and Class representatives agree that the settlement is favorable; Plaintiffs' counsel is not aware of any objections from absent Class and Subclass members; and the settlement serves the public interest.

## ARGUMENT

### I.   Preliminary Approval of the Parties' Settlement

Fed. R. Civ. P. 23(e) requires the "court's approval" for any settlement of claims of a certified class.  The Court may only approve a class settlement after holding a hearing to determine whether the settlement is "fair, reasonable, and adequate."  *Does 1-2 v. Déjà Vu Services, Inc.*, 925 F.3d 886, 894 (6th Cir. 2019).  The Court makes this determination

after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate; and (D) the proposal treats class members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2). The key factors for the Court to consider when undertaking this inquiry include: (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *See Does 1-2*, 925 F.3d 886 at 894–95 (citing *Int'l Union, UAW, et al. v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (hereinafter "*UAW*")). The settlement proposed by the parties satisfies these criteria.

### A. There is No Risk of Fraud or Collusion

There has been no suggestion of any conflicts of interest with respect to the negotiation of the Settlement, and there were none. The proposed Decree and the Agreement before this Court were negotiated at arms-length by attorneys with no conflicts of interest who vigorously advocated for their respective clients. At different times in these proceedings, the parties unsuccessfully attempted to settle their dispute. Those negotiations gained added impetus following the Court's August 7 Order and were facilitated by mediation held between the parties on December 16, 18, and 22, 2020. Counsel for the parties also continued to meet and confer while mediation was ongoing. The parties exchanged multiple drafts of the proposed Decree and the Agreement and both sides made compromises to reach consensus. The arms-length negotiation was ultimately successful because the parties were able to arrive at a resolution that promotes safety in the

Jail and protects Class and Subclass members from COVID-19, while also allowing Defendants flexibility to operate the Jail as required by law.

**B. The Complexity, Expense, and Likely Duration of the Litigation Favor Settlement**

Combating the novel coronavirus and the worst pandemic in over a century in a congregate setting, such as the Jail, has raised complex factual and legal issues that require an urgent resolution that favors settlement. The Settlement resolves these pressing issues quickly and avoids extensive additional discovery which is already underway.

The Settlement resolves concerns regarding the safety of the Plaintiffs and the members of the Class and Subclass and ensures that they will continue to be safe for the duration of the pandemic by providing mechanisms for continued reporting and inspections by the Court-appointed Independent Inspector. Absent a determination by the Court, the Decree will remain in place for the duration of the pandemic and does not terminate until the pandemic is declared over or a vaccine is offered to all detainees housed at the Jail. *See* Ex. B at ¶¶ 28–29.

The Settlement also avoids extensive discovery, including a forthcoming production from Defendants of electronically stored information (ESI) that will include a large quantity of emails and related documents, and eight depositions, which Plaintiffs have already noticed. In addition, absent approval of the Settlement, the parties will need to continue to conduct ongoing expert discovery regarding scientific questions related to the spread of COVID-19, including via airborne particles through the ventilation and air filtration systems in the Jail.

In addition, the Settlement obviates the need to resolve the appropriate legal standard applicable to Plaintiffs' claims, which the Court previously declined to reach. *See*

ECF No. 124, Pg.ID 2821.  If, instead of settling, the parties were obligated to litigate this issue, it would impose further on the Court's time at considerable expense to the parties. For these reasons, both sides agree that the complexity, expense, and likely duration of this litigation favor settlement.

### C.  The Parties Have Engaged in Sufficient Discovery for Plaintiffs to Gauge the Adequacy of Settlement

Whether the parties have engaged in sufficient discovery for Plaintiffs to gauge the adequacy of the Settlement turns on whether Plaintiffs have "obtained a sufficient understanding of the case to gauge the strengths and weaknesses of the claims and the adequacy of the settlement." *N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 236 (E.D. Mich. 2016).  Plaintiffs have taken three depositions and served three sets of Requests for Production, totaling twenty-four Requests, as well as nine interrogatories. *See* ECF No. 57-1– ECF No. 57-5.  Defendants have produced nearly 3,000 pages of documents.  In addition, the factual record was developed in numerous hearings before the Court, including a hearing involving testimony from the Independent Inspector and another two-day evidentiary hearing which entailed live testimony from six witnesses.  *See* ECF No. 108; ECF No. 111.

Discovery is ongoing, but Plaintiffs have had a meaningful opportunity to gauge the strengths and weaknesses of their claims, and they have concluded that a settlement is adequate.  The Decree addresses Plaintiffs' concerns because it imposes numerous fail-safes intended to protect the members of the Class and Subclass from COVID-19.  First, it requires the Jail to provide regular reporting regarding the population of the Jail and the impact of COVID-19 on the Jail's population.  *See* Ex. B at ¶¶ 4–5.  Second, the Decree calls for unannounced inspections at regular intervals by the Court-appointed Independent

Inspector.  The Independent Inspector is empowered to conduct inspections commensurate and in accordance with the Court's June 18, 2020 Order, ECF No. 56.  In addition, the Independent Inspector will monitor the continuing work of the Jail's Expeditor to evaluate Class and Subclass members for consideration of release on less restrictive conditions other than detention.  *See id.* at ¶ 8.  Pursuant to the terms of the Decree, Defendants are obligated to use their best efforts to implement the recommendations of the Independent Inspector or to provide a written explanation for why, despite using their best efforts, Defendants are unable to do so.  The Independent Inspector will opine in subsequent visits whether Defendants have undertaken their best efforts.

In addition, the Decree provides machinery to ensure that the ventilation and air flow in the Jail is safe, *see id.* at ¶ 13, provisions to ensure that there is adequate testing for COVID-19 in the Jail, reporting of the results of that testing, and appropriate quarantining procedures, *see id.* at ¶¶ 14–18, and it ensures that Class and Subclass members will continue to receive adequate hygiene and personal protective equipment.  *See id.* at ¶ 19. Further, the Decree ensures that the Independent Inspector will pay particular attention to the Jail's efforts to maximize social distancing.  *See id.* at ¶ 20.

The parties have also agreed that they will endeavor to resolve any dispute regarding the Decree promptly and will only have recourse to the Court in the event of an emergency or if they cannot reach a resolution themselves.  Independently, the underlying case will be stayed upon entry of the Decree unless and until Plaintiffs seek enforcement of the Decree.  This mechanism provides further comfort to Plaintiffs that Defendants will endeavor in good faith to uphold their obligations as set forth in the Decree and that, in the

event of a dispute, Plaintiffs can quickly have recourse to the Court, which is particularly important in light of the urgency required to confront the pandemic.

### D. Likelihood of Success on the Merits

When inquiring into the likelihood of success on the merits for purposes of approving the Settlement, the Court "[weighs] the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *UAW*, 497 F.3d 615, 631 (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 (1981)). The question is ultimately "whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *Id* at 632.

The parties are settling to resolve legitimate factual and legal disagreements. There have been significant factual disagreements between the parties about the conditions in the Jail. Indeed, "[b]ecause of the dramatically different descriptions of the way in which detainees were being confined at the Jail when this matter was filed, the Court allowed the factual record related to [Plaintiffs' Motion for a Temporary Restraining Order] to be further developed," ECF No. 124, Pg.ID 2804, and the Court ordered an independent inspection of the Jail. ECF No. 45, Pg.ID 734. Based on the Independent Inspector's findings, the testimony offered at the Court's evidentiary hearing, and the documents offered into evidence, the Court made findings regarding the way in which people are being detained at the Jail. *See* ECF No. 124, Pg.ID 2804. Still, the parties have continued to dispute the extent to which Class and Subclass members are safe in the Jail.

The Settlement also resolves difficult and novel legal questions about which the parties disagree. The parties provided the Court with extensive briefing and oral argument regarding the legal standard applicable in this case. Plaintiffs allege that their constitutional rights under the Fourteenth Amendment and their statutory rights under Title II of the ADA

and Section 504 of the Rehab Act are being violated because of their detention in the Jail during the COVID-19 pandemic.  Specifically, Plaintiffs brought four independent claims for release: (i) unconstitutional punishment in violation of the Fourteenth Amendment; (ii) unconstitutional confinement in violation of the Fourteenth Amendment; (iii) discrimination on the basis of disability in violation of the ADA; and (iv) discrimination on the basis of disability in violation of the Rehab Act.  Among other things, the parties disagreed about the standard applicable to pre-trial detainees under the Fourteenth Amendment as well as the availability of the ADA and Rehab Act for habeas relief.

The parties are also relying on the Settlement to ensure a quick and effective resolution to their dispute in light of the uncertainty and threat from the ongoing pandemic. Tennessee was recently "ground zero" in the nation's virus surge.[1]  In light of the thorny factual and legal difficulties that this case presents, absent the Settlement months could pass before a judgment on the merits might be reached.  The Settlement is the most efficient and effective way in which to ensure that Plaintiffs and the Class and Subclass members are safe now and for the duration of the pandemic.

### E. Class Counsel and Class Representatives Agree that the Settlement Is Favorable

In their reasoned, professional judgment, counsel for both parties agree that the benefits of the Settlement outweigh the risks of continued litigation.  Plaintiffs' counsel

---

[1]    Dan Levin and Juliana Kim, "Tennessee Is 'Ground Zero' in the Nation's Virus Surge, and Christmas Could Make it Worse, The Governor Warns," The New York Times (Dec. 22, 2020), *available at* https://www.nytimes.com/live/2020/12/22/world/covid-19-coronavirus/tennessee-is-ground-zero-in-the-nations-virus-surge-and-christmas-could-make-it-worse-the-governor-warns.

have also consulted with the Class representatives, who all agree that the Settlement is more beneficial than the risks of further litigation.

### F.  Reaction of Absent Class and Subclass Members

After consulting with the Class representatives, Plaintiffs' counsel have no knowledge of any objections by absent Class and Subclass members.  Any objecting absent Class and Subclass members will have the opportunity to do so throughout the notice-and-objection process explained below.

### G.  The Settlement Serves the Public Interest

The Settlement resolves the parties' disputes and provides immediate relief to medically vulnerable people in the Jail who are in danger of severe consequences should they become infected with the novel coronavirus.  The Decree contains detailed, concrete steps that Defendants will undertake to protect against the virus' spread in the Jail.  There is always a risk that jail outbreaks may spill into the community outside the jail as staff, visitors, and incarcerated people cycle in and out of the facility.  The Decree will therefore also help to minimize the spread of COVID-19 in Shelby County and Tennessee more broadly.  This factor weighs strongly in favor of approving the Settlement, particularly in light of the especially difficult public health crisis that the State of Tennessee is currently confronting.

### II.  <u>Reasonable Notice to the Class Requires Posting Notices In the Jail</u>

"The court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  Two forms of notice are attached hereto as Exhibits D and E.  The first version, Exhibit D, is written in plain text and is intended to be understood by individuals with a fifth grade or lower literacy level (the "Plain Text Notice").  The second version, Exhibit E, is slightly more complex, and is

intended to be understood by individuals who read at a higher literacy level (the "Detailed Notice" and together with the Plain Text Notice, the "Notices").

The manner of providing notice is reasonable when it "apprise[s] the . . . members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interests."  *UAW*, 497 F.3d at 630 (internal quotation marks omitted); *see also In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984) (upholding notice that "described the terms of the settlement, the reasons for [class representatives' decision to settle], the legal effect of the settlement and the rights of the [class members] to voice their objections").  "Due process does not, however, require *actual* notice to each party intended to be bound by the adjudication of a representative action." *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008) (emphasis in original); *see also In re S. Ohio Corr. Facility*, 173 F.R.D. 205, 211–12 (S.D. Ohio April 22, 1997) (finding manner of notice reasonable where "[d]efendants posted a copy of the notice in a conspicuous place in the cellblocks of all the Ohio adult male prisons").

In *UAW*, the Sixth Circuit concluded notice was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" because "[t]he notice . . . clearly explained its purpose, discussed the nature of the pending suit and proposed class and accurately summarized the 76-page settlement agreement and incorporated exhibits in a little over four pages." *UAW*, 497 F.3d at 629–30.  Additionally, "enclosed with the notice was a copy of the settlement agreement, ensuring that [class members] would have full access to the very document the district court would examine at the fairness hearing." *Id.* at 630.

Here, the substance of the two forms of the notice is adequate.  Like in *UAW*, the Detailed Notice discusses the suit and summarizes the Decree in less than four pages.  The Plain Text Notice discusses the suit and summarizes the Decree in ten pages that are accessible and easy to understand.  Also like in *UAW*, the Class members will have the opportunity to review the full Decree should they choose to do so.

The manner of notice is also reasonably calculated to apprise interested parties of the Decree and give Class and Subclass members an opportunity to object.  The Parties have prepared two versions of the notice to ensure all Class and Subclass members can understand the terms of the settlement, irrespective of literacy level, education level, and language.  The Plain Text Notice is intended to be understood by individuals with a fifth grade or lower literacy level, while the Detailed Notice is slightly more complex, and is intended to be understood by individuals who read at a higher literacy level.  The Plain Text Notice will be posted in both English and Spanish to ensure all Class and Subclass members can understand the contents.  The Plain Text Notice will be posted in each of the housing units of the Jail.

Next to each posting, there will be a message indicating that the pod counselor has copies of the Detailed Notice, the Consent Decree, and the Court Order defining the Class and Subclass for detainees to review.  Each pod counselor will retain copies of the English and Spanish versions of the Notices, the Consent Decree, and the Court Order defining the Class and Subclass.  Each pod counselor will maintain these copies and will provide detainees with access to review these copies upon request.  In this way, Class and Subclass members will be able to access the Notices and the Consent Decree, much like the proposed

*UAW* class members could access the notice and the 76-page settlement agreement that the notice summarized.

The Notices explain in simple terms that Class and Subclass members can object to the terms of the Consent Decree by writing out their objections and mailing them to the Court. The Notices also provide a toll-free phone number that Class and Subclass members can call from the Jail to discuss the Settlement with Plaintiffs' counsel.

In the event the Court enters the Consent Decree, the Jail will modify these procedures. The Jail will post a message in the communal areas that indicates the Consent Decree is available for review upon request from a pod counselor. The Jail will maintain a copy of the Consent Decree with each pod counselor until the Consent Decree is no longer in place. Providing notice in this manner is reasonably calculated to apprise all current and future members of the Class and Subclass of the terms of the settlement.

## **CONCLUSION**

For the foregoing reasons, the parties respectfully request that the Court grant their joint Motion.

Dated and jointly and respectfully submitted this 22nd day of January, 2021.

12

PENTECOST, GLENN & MAULDIN, PLLC

By:    /s/ Nathan D. Tilly
James I. Pentecost (#11640)
Nathan D. Tilly (#31318)
J. Austin Stokes (#31308)
162 Murray Guard Drive, Suite B
Jackson, Tennessee 38305
(731) 668-5995

AND

Marlinee C. Iverson (#18591)
Bridgett L. Stigger (#29415)
Shelby County Attorney's Office
160 North Main Street, Suite 950
Memphis, TN 38103
(901) 222-2100

*Attorneys for Respondents-Defendants*

AMERICAN CIVIL LIBERTIES UNION

By:  /s/ Andrea Woods
Andrea Woods
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2500
awoods@aclu.org

Brice M. Timmons (Bar No. 29582)
Black McLaren Jones Ryland & Griffee,
A Professional Corporation
530 Oak Court Dr. Suite 360
Memphis, TN 38117
Telephone: (901) 762-0535
Facsimile: (901) 762-0527
btimmons@blackmclaw.com

Josh Spickler (Bar No. 021019)
Wesley Dozier (Bar No. 037735)
Just City
P.O. Box 41852
Memphis, TN 38174
Telephone: (901) 206-2226
josh@justcity.org

Steven John Mulroy (Bar No. 28831)
Bredesen Professor of Law
Cecil C. Humphreys School of Law,
University of Memphis
1 N. Front St.
Memphis, TN 38103
Telephone: (901) 603-8779
smulroy@memphis.edu

Amreeta S. Mathai
Jeffery P. Robinson
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2500
amathai@aclu.org
jrobinson@aclu.org

Zoe Brennan-Krohn
American Civil Liberties Union
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 343-0769
zbrennan-krohn@aclu.org

Maria Morris
American Civil Liberties Union
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6607
mmorris@aclu.org

Thomas H. Castelli (Bar No. 24849)
Stella Yarbrough (Bar No. 33637)
ACLU Foundation of Tennessee
P.O. Box 120160
Nashville, TN 37212
Telephone: (615) 320-7142
tcastelli@aclu-tn.org
syarbrough@aclu-tn.org

14

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Joseph Bial*
2001 K Street NW
Washington, D.C. 20006-1047
Telephone: (202) 223-7300
Fascimile: (202) 223-7420
jbial@paulweiss.com

Darren Johnson*
Meredith L. Borner
Jonathan M. Silberstein-Loeb
Edward C. Robinson, Jr.
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Fascimile: (212) 757-3990
djohnson@paulweiss.com
mborner@paulweiss.com
jsilberstein-loeb@paulweiss.com
erobinson@paulweiss.com

* = *pro hac vice* application forthcoming

*Attorneys for Petitioners-Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served on Defendants via the

Court's ECF system on this the 22nd day of January, 2021.

/s/ Andrea Woods