**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| FAVIAN BUSBY and MICHAEL EDGINGTON, on their own behalf and on behalf of those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> FLOYD BONNER, JR., in his official capacity, and SHELBY COUNTY SHERIFF'S OFFICE, <br><br> Defendants. | No. 2:20-cv-2359-SHL-atc |

**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND PERMISSION TO POST CLASS NOTICE AS MODIFIED, AND SCHEDULING A FINAL APPROVAL HEARING**

Before the Court is the Parties' Joint Motion for Preliminary Approval of Class Action Settlement, (ECF No. 161), filed January 26, 2021. Plaintiffs seek entry of an order (a) granting preliminary approval of the settlement embodied in the Proposed Consent Decree and the Settlement Agreement; (b) approving the forms of notice; (c) establishing a procedure for providing notice of the Settlement and Proposed Consent Decree to members of the Class and Subclass and affording them an opportunity to object; and (d) setting a date and time for a fairness hearing approximately 5 weeks from the date the Court grants this Motion.

For the following reasons, the Motion is **GRANTED**. However, the Parties are instructed to note the Court's addition to the documents to be made available to Class members, if requested.

**I.    Procedural History**

Plaintiffs brought this case as a class action, seeking declarative and injunctive relief

and/or a writ of habeas corpus under 48 U.S.C. § 2241 as well Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Rehab Act"). The case arises from concerns about Plaintiffs' safety while detained in the Shelby County Jail ("the Jail") during the current pandemic caused by COVID-19. (ECF Nos. 1, 50.) Defendants filed a motion to dismiss the Complaint in its entirety. (ECF No. 25.) On June 10, 2020, the Court denied Defendants' motion and certified a Class and Subclass of medically vulnerable and disabled individuals detained pretrial at the Jail. (ECF No. 38.) The Court defined the Class and Subclass as follows:

> The Class consists of all:
>
> 1. People 65 years and older;
> 2. People with chronic lung disease or moderate to severe asthma (including chronic obstructive pulmonary disease (COPD) (including emphysema and chronic bronchitis), idiopathic pulmonary fibrosis and cystic fibrosis);
> 3. People who have serious heart conditions (including heart failure, coronary artery disease, congenital heart disease, cardiomyopathies and pulmonary hypertension);
> 4. People who are immunocompromised (including cancer treatment, smoking, bone marrow or organ transplantation, immune deficiencies, poorly controlled HIV or AIDS, and prolonged use of corticosteroids and other immune weakening medications);
> 5. People with severe obesity (body mass index [BMI] of 40 or higher);
> 6. People with diabetes;
> 7. People with chronic kidney disease undergoing dialysis;
> 8. People with chronic liver disease, including cirrhosis; and
> 9. People with hemoglobin disorders, including sickle cell disease and thalassemia.
>
> The subclass consists of:
>
> All persons currently or in the future held at the Jail in pretrial custody during the COVID19 pandemic who are at increased risk of COVID-19 complications or death because of disabilities as defined in the Americans With Disabilities Act (ADA) and Section 504 of the Rehabilitation Act. The Subclass includes everyone in the Class except those people who are vulnerable solely due to age or BMI. People with all other conditions listed in paragraph (1) above are people with disabilities as defined under federal law.

(Id. at PageID 690-91.)

Plaintiffs filed a Motion for Preliminary Injunction,[1] in which they sought urgent habeas and injunctive relief. Owing to a pronounced gap in the Parties' descriptions of confinement conditions at the Jail, the Court appointed expert Mike Brady as an Independent Inspector. After Mr. Brady submitted a report to the Court, about which he testified at a hearing on July 1, 2020, and the Parties engaged in expedited discovery, the Court held an evidentiary hearing on July 10 and 13, where both Parties presented proof. (ECF No. 124 at PageID 2804.) The Court found that, while Plaintiffs demonstrated many failures related to the way in which they were being confined, these failures were capable of being remedied (indeed, some already had been) and the likelihood of success on the merits was not strong. Therefore, the Motion was denied. (See id.)

The Court then conducted a Scheduling Conference to discuss the next stages of the litigation. The Parties began their pursuit of more discovery, and Plaintiffs filed a Motion to Amend the Amended Complaint, (ECF No. 135), and Motion to Modify Class Certification Order, (ECF No. 136).[2]

On December 28, 2020, Plaintiffs filed a Joint Notice of Settlement. (ECF No. 160.) Following execution of the Release and Settlement Agreement ("the Agreement"), the Parties filed the instant Motion for Preliminary Approval of Class Settlement and Permission to Post Class Notice. (ECF No. 161.) The Agreement integrates the Proposed Consent Decree ("the Decree"), which details the Parties' agreements on specific policies and protocols concerning the following: (1) independent inspections and reporting; (2) ventilation; (3) testing, isolation, and quarantine for COVID-19; (4) hygiene and personal protective equipment; (5) social distancing;

---

[1] As explained in its August 7, 2020, Order Denying Plaintiffs' Motion for Preliminary Injunction, the Court construed Plaintiffs' emergency motion as one for preliminary injunction, rather than for temporary restraining order. (ECF No. 124 at PageID 2801.)

[2] Both Motions are **DENIED WITHOUT PREJUDICE**, given this proposed resolution.

and (6) enforcement and modification.  (See ECF No. 161-2.)

    **II.**       **Analysis**

        **A. Preliminary Settlement Approval**

The Parties seek preliminary approval of the Agreement under Federal Rule of Civil Procedure 23.  Rule 23(e)(1)(B)(i) directs a court to determine, at the preliminary approval stage, whether it "will likely be able to ... approve the proposal under Rule 23(e)(2)."  Under Rule 23(e)(2), a court must review whether the proposed settlement is "fair, reasonable, and adequate after considering" the following four factors:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)-(D); Fitzgerald v. P.L. Mktg., Inc., No. 217CV02251SHMCGC, 2020 WL 7764969, at *11 (W.D. Tenn. Feb. 13, 2020) (explaining that, effective December 1, 2018, Rule 23(e) sets out "a new rubric" of four factors to consider when determining whether to grant preliminary approval of a class action settlement) (quoting Day v. AMC Corp., No. 5:17-cv-183, 2019 WL 3977253, at *3 (E.D. Ky. July 26, 2019); Fitzgerald v. P.L. Mktg., Inc., No. 217CV02251SHMCGC, 2020 WL 3621250, at *4 n.1 (W.D. Tenn. July 2, 2020).  The Court considers each factor below.

4

### 1. Adequate Representation and Arm's Length Negotiation

The first two factors under Rule 23(e)(2)—adequate representation and whether the proposal was negotiated at arm's length—"identify matters that might be described as 'procedural' concerns." Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes. Addressing those factors, the Advisory Committee offered the following guidance:

> [T]he focus at this point is on the actual performance of counsel acting on behalf of the class.
>
> The information submitted under Rule 23(e)(1) may provide a useful starting point in assessing these topics. For example, the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, may indicate whether counsel negotiating on behalf of the class had an adequate information base. The pendency of other litigation about the same general subject on behalf of class members may also be pertinent. The conduct of the negotiations may be important as well. For example, the involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests. Particular attention might focus on the treatment of any award of attorney's fees, with respect to both the manner of negotiating the fee award and its terms.

Id.

Here, Class Counsel has adequately represented the Classes. The Parties engaged in expedited initial discovery, and the Court held numerous hearings involving testimony from the Independent Inspector and six witnesses following that initial discovery. (ECF No. 161 at PageID 3189.) Following the Court's ruling on the preliminary injunction, Plaintiffs sought to add another claim, and the Parties were prepared to continue their discovery efforts if settlement discussions were not fruitful. (See ECF Nos. 147-155.)

In addition, the Proposed Decree imposes multiple protective measures for Plaintiffs moving forward, which were the focus of this litigation from the beginning. Specifically:

> First, it requires the Jail to provide regular reporting regarding the population of the Jail and the impact of COVID-19 on the Jail's population. See Ex. B at ¶¶ 4– 5. Second, the Decree calls for unannounced inspections at regular intervals by

5

> the Court-appointed Independent Inspector. The Independent Inspector is empowered to conduct inspections commensurate and in accordance with the Court's June 18, 2020 Order, ECF No. 56. In addition, the Independent Inspector will monitor the continuing work of the Jail's Expeditor to evaluate Class and Subclass members for consideration of release on less restrictive conditions other than detention. See id. at ¶ 8. Pursuant to the terms of the Decree, Defendants are obligated to use their best efforts to implement the recommendations of the Independent Inspector or to provide a written explanation for why, despite using their best efforts, Defendants are unable to do so. The Independent Inspector will opine in subsequent visits whether Defendants have undertaken their best efforts.
>
> In addition, the Decree provides machinery to ensure that the ventilation and air flow in the Jail is safe, see id. at ¶ 13, provisions to ensure that there is adequate testing for COVID-19 in the Jail, reporting of the results of that testing, and appropriate quarantining procedures, see id. at ¶¶ 14–18, and it ensures that Class and Subclass members will continue to receive adequate hygiene and personal protective equipment. See id. at ¶ 19. Further, the Decree ensures that the Independent Inspector will pay particular attention to the Jail's efforts to maximize social distancing. See id. at ¶ 20.
>
> The parties have also agreed that they will endeavor to resolve any dispute regarding the Decree promptly and will only have recourse to the Court in the event of an emergency or if they cannot reach a resolution themselves. Independently, the underlying case will be stayed upon entry of the Decree unless and until Plaintiffs seek enforcement of the Decree. This mechanism provides further comfort to Plaintiffs that Defendants will endeavor in good faith to uphold their obligations as set forth in the Decree and that, in the event of a dispute, Plaintiffs can quickly have recourse to the Court, which is particularly important in light of the urgency required to confront the pandemic.

(Id. at PageID 3189-91.)  This relief addresses most, if not all, of Plaintiffs' alleged deficiencies in their confinement in the Jail, given the pandemic, and the Court is not aware of any greater successes in similar litigation.

The Court additionally finds that the Agreement was negotiated at arm's length.  It was reached after adversarial negotiations that lasted approximately eight (8) months.  (Id. at PageID 3187.)  It is the product of three mediation sessions with a third-party mediator.  (Id.)  In sum, the Parties' Agreement is the product of a procedurally fair process.  See Fitzgerald v. P.L. Mktg., Inc., No. 217CV02251SHMCGC, 2020 WL 7764969, at *11 (W.D. Tenn. Feb. 13, 2020)

6

(granting preliminary approval of class action settlement where adversarial negotiations lasted more than a year and was the product of two mediation sessions with a third-party mediator).

### 2. Adequate Relief and Equitable Treatment

Under Rule 23(e)(2)(C), a court must consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."

Here, the COVID-19 pandemic has created an unprecedented crisis in need of urgent resolution—specifically, Plaintiffs' safety while in pre-trial detention. The Settlement resolves pressing concerns regarding the adequacy of safety measures at the Jail, and also provides mechanisms to inspect those measures on an ongoing basis and report any issues. The Settlement avoids the costs of continued discovery, which would involve complex scientific questions regarding the spread of COVID-19, not to mention the incalculable costs and risks to Plaintiffs of continuing litigation without provisional relief.

Moreover, Defendants' agreement to pay Plaintiffs' counsel for their costs incurred with this case is reasonable and does not impact the Class' relief, while each side has agreed to cover its own attorney fees, again without impact on the Class itself. Lastly, the Settlement treats all relevant Class members equally. Thus, Rule 23(e) is satisfied.

### B. Approval of Notice and Direction to Effectuate Notice as Modified

Rule 23(e) mandates that the court must "direct notice in a reasonable manner to all class members who would be bound" by a proposed class settlement. Fed. R. Civ. P. 23(e)(1)(B).

"The notice should be 'reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Meyers v. Dtna Trucks N. Am., LLC, No. 14-2361, 2014 WL 12531121, at *9 (W.D. Tenn. Oct. 8, 2014) (quoting UAW v. General Motors Corp., 497 F.3d 615, 629-30 (6th Cir. 2007)).

Here, the Parties propose two forms of Notice, a simpler version (the "Plain Text Notice") and a more complex version (the "Detailed Notice"), attached as Exhibits D and E to the Unopposed Motion for Preliminary Approval. The Plain Text Notice is written to be understood by individuals with a fifth grade or lower literacy level. The Detailed Notice is more complex and is intended to be understood by individuals who read at a higher literacy level.

Regarding the posting and availability of the Plain Text Notice, the Parties describe the following program:

> The Plain Text Notice will be posted in both English and Spanish to ensure the Class members can understand the contents. The Plain Text Notice will be posted in each of the housing units of the Jail.
>
> Next to each posting, there will be a message indicating that the pod counselor has copies of the Detailed Notice, the Consent Decree, and the Court Order defining the Class and Subclass for detainees to review. Each pod counselor will retain copies of the English and Spanish versions of the Notices, the Consent Decree, and the Court Order defining the Class and Subclass. Each pod counselor will maintain these copies and will provide detainees with access to review these copies upon request. . . .
>
> The Notices explain in simple terms that Class and Subclass members can object to the terms of the Consent Decree by writing out their objections and mailing them to the Court. The Notices also provide a toll-free phone number that Class and Subclass members can call from the Jail to discuss the Settlement with Plaintiffs' counsel.
>
> In the event the Court enters the Consent Decree, the Jail will modify these procedures. The Jail will post a message in the communal areas that indicates the Consent Decree is available for review upon request from a pod counselor. The Jail will maintain a copy of the Consent Decree with each pod counselor until the Consent Decree is no longer in place.

(ECF No. 161 at PageID 3195-96.)

The Plain Text Notice, which will be posted in each housing unit in both English and Spanish, provides detailed information about the class definitions, what the Agreement says and requires, how agreement was reached and likely next steps, and how to ask questions and/or object. The Parties have also agreed that the other pertinent documents, the Detailed Notice, the Proposed Consent Decree, and the Court Order defining the Classes, will be available for detainees to review. The Court further **DIRECTS** that a copy of this Order be made available to detainees. In sum, the Notices adequately apprise Class members of the Settlement Agreement and afford them an opportunity to object. Posting the Notices in each housing unit is an adequate means of providing notice.

### C. Final Approval Hearing

The Court will hold the Final Approval Hearing on **March 5, 2021, at 9:30 AM**, via Microsoft Teams (unless the Parties request an in-person hearing), to assist the Court in determining whether to grant Final Approval of the Settlement and consider any objections from the Classes. At the Hearing, the Court will discuss potential additional information on housing to be provided to the Independent Inspector, such as total capacity by pod, to allow proper evaluation of the population statistics, and any agreement between the Parties as to the breadth of future inspections, as well as any other issues raised regarding the Proposed Consent Decree.

## CONCLUSION

For the foregoing reasons, the Motion is **GRANTED**. The Court **ORDERS** that:

1. The Settlement is conditionally **APPROVED** as fair, reasonable, and adequate to the Class members, subject to further consideration at the Final Approval Hearing.

2. The Parties are **DIRECTED** to provide notice of the proposed Settlement

as provided in this Order and the Settlement Agreement.

3. Any person in the Class or Subclass may object to the Settlement. Any such objections to the Settlement must be received by the Clerk of the Court by no later than **March 2, 2021**, at the address printed in the Notices.

4. The Parties are **DIRECTED** to modify the Notices to reflect the appropriate dates and times of the Final Approval Hearing and the deadline for objections.

5. The Parties are **DIRECTED** to make a copy of this Order available to detainees.

**IT IS SO ORDERED,** this 28th day of January, 2021.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
UNITED STATES DISTRICT JUDGE