IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| FAVIAN BUSBY, ET AL., | ) |
| Plaintiff, | ) |
| vs. | ) No.: 2:20-CV-02359-SHL |
| FLOYD BONNER, JR., ET AL., | ) |
| Defendants. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
TERMINATE THE CONSENT DECREE**

Defendants, Floyd Bonner, Jr., Shelby County Sheriff and the Shelby County Sheriff's Office ("SCSO") (collectively referred to as "Defendants"), by and through their undersigned counsel, file this memorandum of law in support of their Motion to Terminate the Consent Decree.

I.  **PROCEDURAL HISTORY**

Plaintiffs originally initiated this case against Defendants as a class action, "challenging the constitutionality and legality of Plaintiffs' continued detention [in the Shelby County Jail ("the Jail")] in light of the COVID-19 pandemic." ("Consent Decree," ECF No. 161-2, PageID 3204.) In response to Plaintiffs' allegations, Defendants denied they violated Plaintiffs' constitutional or statutory rights. To the contrary, Defendants asserted that they implemented numerous practices and procedures to appropriately combat and prevent the spread of COVID-19 in the Jail and that Plaintiffs' detention was therefore, lawful. (ECF No 27; ECF No. 161, PageID 3185.)

From the outset of the case, the parties engaged in extensive written and oral discovery. Nonetheless, at the time the parties entered into mediation in mid-December, 2020, much discovery remained to be undertaken. In an effort to avoid the "burden, expense, and disruption"

of such "protracted litigation," the parties reached a resolution of the case after participating in three days of mediation. (ECF No. 161-2, PageID 3204.) Specifically, the parties agreed to the entry of a Consent Decree ("the Decree"). (*Id.*)

The Court preliminarily approved the Decree on January 28, 2021. (ECF No. 162.) On March 5, 2021, the Court held a hearing on the parties' motion to approve the class settlement. During the hearing, the Court voiced concerns over whether notice had been sufficiently provided the class members. (ECF No. 181.) In light of those concerns, the Court ordered a one-page notice be distributed to each individual detainee in the Jail. (ECF No. 177.) The parties subsequently submitted a revised one-page notice which the Court approved on March 15, 2021. (ECF No. 181.) The Jail then distributed the one-page notice to all detainees in the Jail in accordance with the Court's March 15, 2021, Order.

On April 9, 2021, the Court held a final approval hearing, found notice had been properly afforded the class and sub-class members, and approved the settlement. (ECF No. 209.) The Court noted that it had received "approximately 70 letters from detainees following distribution of the One-Page Notice," but that none of the objections demonstrated that the settlement was "unfair, unreasonable, or inadequate." (*Id.*)

## II. CONSENT DECREE

To ensure the Decree's compliance with federal law, the parties specifically noted within the Decree itself that it complied with 18 U.C.S. § 3626(a)(1)(A), which provides:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

(ECF No. 161-2, ¶ 31, PageID 3211; 18 U.C.S. § 3626(a)(1)(A).) Accordingly, the provisions in the Decree were "narrowly drawn" to protect the alleged federal rights violations raised by Plaintiffs in the lawsuit. Indeed, any reading of the Decree that would extend the protections granted beyond those necessary to correct the alleged violations of Plaintiffs' federal rights would effectively violate 18 U.S.C. § 3626(a)(1)(A).

When addressing alleged constitutional deprivations wherein plaintiff-inmates have refused to accept medical care, courts have explained that "the consequences of voluntary conduct" negates a constitutional claim. *Musterd v. R.I. Dep't of Health*, 2017 U.S. Dist. LEXIS 198422, *12 (D.R.I. Aug. 29, 2017) (citing *Legate v. Livingston*, 822 F.3d 207, 210 (5th Cir. 2016) ("[C]ircuits that have addressed the issue have held that a prisoner cannot establish a violation where he willingly participates in the conduct giving rise to his injury."). Indeed, it is well-settled that there can be no constitutional deprivation wherein plaintiff-inmates have refused to accept medical care. *See Palmer v. Wagner*, 3 F. App'x 329, 331 (6th Cir. 2001); *see also Meeks v. Skipper*, 2020 U.S. Dist. LEXIS 158963, at *24 (W.D. Mich. July 30, 2020).

Accordingly, in entering into the Consent Decree, the parties understood that by being offered a COVID-19 vaccine, a detainee could no longer assert that his constitutional or other statutory rights were being violated due to being incarcerated during the COVID-19 pandemic. In such an event, any danger posed to him by COVID-19 could be eliminated by his own, personal choice to accept a vaccine. Since the parties entered into the Consent Decree, numerous district courts have confirmed that an inmate-plaintiff cannot sustain a claim seeking release due to dangers created by COVID-19 if jail officials have offered him a vaccine. *See e.g.*, *United States v. Cesario*, 2021 U.S. Dist. LEXIS 102122, *4 (D. Minn. June 1, 2021) (noting, "Courts have found that a risk of serious complications from COVID-19 is not extraordinary and compelling

when experienced by a vaccinated inmate."); *Harp v. Nagy*, 2021 U.S. Dist. LEXIS 93710, at *22 (E.D. Mich. May 18, 2021) (denying a petition for habeas corpus because the prison had begun offering COVID-19 vaccines, thus negating the suggestion that the plaintiff was at risk of harm.); *United States v. Jackson*, 2021 U.S. Dist. LEXIS 39807, at *4 (D. Minn. Mar. 3, 2021) ("While [an inmate] is within his rights to refuse any treatment he wishes to forego, he cannot simultaneously claim that he must be released because of the risk of complications while refusing a vaccine that could virtually eliminate that risk.").

Importantly, the question concerning whether a detainee's constitutional rights are being violated does not turn on whether *other* detainees accept a COVID-19 vaccination. Though Plaintiffs brought this case as a class action, whether a detainee's constitutional rights are being violated is an individualized inquiry. *See e.g.*, *Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014). In light of such understanding and in an effort to ensure compliance with 18 U.S.C. § 3626(a)(1)(A), the parties agreed that the Decree should terminate once detainees were provided access to a COVID-19 vaccine, whether or not they accepted one. Specifically, Paragraph 28 of the Decree states:

> This Decree will terminate upon the earliest of either (a) a declaration by the CDC Tennessee Department of Health that the COVID-19 pandemic is over and/or has ended, or (b) an FDA-approved COVID-19 vaccine is offered to and administered according to FDA guidelines to all detainees housed at the Jail for a period of more than fourteen (14) days and who accept a vaccination, along with educational materials about the vaccine and non-punitive incentives to take the vaccine. Upon termination of this Decree pursuant to this Paragraph, the parties shall inform the Court and the Court shall enter a final judgment of dismissal.

(ECF No. 161-2, PageID 3210, ¶ 28.) Notably, the Decree does not specify a particular kind of educational materials or non-punitive incentives that must be offered to detainees, nor does it require a specific number of detainees accept a vaccine to trigger termination. Such prerequisites would extend protections to Plaintiffs beyond those necessary to correct the alleged violations of

their federal rights and would, therefore, violate 18 U.S.C. § 3626(a)(1)(A). As set forth above, once a vaccine is offered to detainee, he can no longer assert his rights are being violated due to his own choice to refuse vaccination.

As set forth by Paragraph 28 of the Decree, in the event that the Decree terminates, the parties "shall inform the Court and the Court shall enter a final judgment of dismissal." (*Id.*)[1]

### III.  GROUNDS FOR TERMINATION

Because Defendants have satisfied the provisions of Paragraph 28(b) of the Decree, the Decree should be terminated.

### A.  *The Jail has offered and administered and will continue to offer and administer a COVID-19 vaccine to detainees.*

To date, every detainee who has been housed at the Jail for longer than fourteen days that has requested a COVID-19 vaccine has been provided a COVID-19 vaccine[2] in compliance with

---

[1] Counsel for Defendants previously provided Plaintiffs' counsel information concerning the vaccine program implemented at the Jail and informed Plaintiffs' counsel of Defendants' position that the Decree has terminated. Counsel for Defendants have continued to provide Plaintiffs' counsel with additional information concerning the evolution of the Jail's vaccine program in an effort to reach an agreement concerning termination. Instead of agreeing to inform the Court of the Decree's termination as contemplated by the Decree, Plaintiffs moved to modify the termination provision of the Decree. (ECF No. 216-1.)

[2] Within a footnote of their recently-filed Memorandum of Law in Support of Plaintiffs' Motion to Enforce and Modify the Consent Decree (ECF No. 216-2, n. 7.), Plaintiffs appear to attempt to avoid termination based upon the COVID-19 vaccines provided by the Jail "[s]trickly speaking," not being "FDA-approved." As a threshold matter, Plaintiffs' counsel has never mentioned, raised, or even referenced any such issue during any of the numerous communications between the parties at any time. Moreover, when discussing the reason(s) that Plaintiffs' counsel did not agree with termination during the meet and confer on April 16, 2021, Plaintiffs' counsel only expressed concern with the administration of the vaccine (Pfizer-BioNTech Covid-19 vaccine) being provided, as said vaccine required two (2) doses and as the detainees had only received their first dose as of that date. Additionally, when discussing the reason(s) that Plaintiffs' counsel did not agree with termination during a subsequent meet and confer on May 6, 2021, Plaintiffs' counsel only expressed concern with the educational materials about the vaccine and the non-punitive incentives to take the vaccine being provided to detainees within the Jail. Furthermore, courts have recognized that the Pfizer-BioNTech Covid-19 vaccine, the vaccine that was administered initially within the Jail, and the Johnson & Johnson/Jansen COVID-19 vaccine, the vaccine that is currently being administered within the Jail, have both been approved for use by the FDA. *See Williams v. Rodriguez*, 2021 U.S. Dist. LEXIS 96443, *21 (D. Conn May 21, 2021) ("At the time of this decision, much more is known about the virus, PPE and testing is both widely available and used, and highly effective COVID-19 vaccines have been FDA approved for approximately six months."); *see also Wyckoff v. Warden, Belmont Corr. Inst.*, 2021 U.S. Dist. LEXIS 45410, *1 (S.D. Ohio March 11, 2021) ("[I]t is well-settled that federal courts may take judicial notice of proceedings in other courts of record.") (citing *United States v. Mont*, 723 Fed. Appx. 325, 327 n.3 (6th Cir. 2018)). Any attempt to now "strictly" interpret the Decree's termination provision to require that the Jail provide a COVID-19 vaccine that has fully undergone the FDA's formal approval

Food and Drug Administration ("FDA") guidelines.[3] (Dec. of Fields, ¶ 30.)

Specifically, in mid-April of 2021, the SCSO, in coordination with Wellpath, implemented a COVID-19 vaccine program whereby all detainees who desire a COVID-19 vaccine are provided a COVID-19 vaccine in accordance with FDA guidelines, all detainees are provided educational materials concerning the COVID-19 vaccine, and all detainees are informed of and provided non-punitive incentives after receiving a COVID-19 vaccine. (Dec. of Fields, ¶ 5.) The Jail's vaccine program has continuously evolved since its inception. (Dec. of Fields, ¶ 5.)

In order to offer the vaccine to each and every detainee in the Jail, during the weeks of April 3, 2021, and April 10, 2021, Jail personnel personally asked each detainee housed in the Jail about whether he desired to receive a COVID-19 vaccine. (Dec. of Fields, ¶ 6.) Specifically, the Jail provided every detainee a "Shelby County Sheriff's Office Inmate COVID 19 Testing Acknowledgement Form," whereby each detainee could indicate whether he did or did not want to receive a COVID-19 vaccine along with a vaccine announcement. (Dec. of Fields, ¶ 6.) Additionally, during the weeks of April 3, 2021, and April 10, 2021, the Jail provided all detainees access to educational materials concerning the benefits of receiving a COVID-19 vaccine. (Dec.

---

process is nonsensical and such a reading would result in the Decree violating 18 U.S.C. § 3626(a)(1)(A) as outlined above.

[3] All currently authorized and recommended COVID-19 vaccines are safe and effective. *See e.g.*, CDC, Understanding How COVID-19 Vaccines Work (updated May 27, 2021) https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/how-they-work.html. Further, everyone 12 years of age and older is eligible to get a COVID-19 vaccination. *See e.g.*, CDC, Your COVID-19 Vaccination, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/your-vaccination.html. Per the CDC, once an individual is fully vaccinated, he can "resume activities" that he "did prior to the pandemic." *Id*. The first COVID-19 vaccine approved by the FDA for emergency use authorization was the Pfizer-BioNTech COVID-19 Vaccine, which was approved December 11, 2020. *See* Pfizer BioNTech COVIDF-19 Vaccine, FDA.Gov, available at: https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/pfizer-biontech-covid-19-vaccine (last visited May 12, 2021). One week later to Moderna COVID-19 vaccine was approved; Modern COVID-19 Vaccine, FDA.Gov, available at: https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/moderna-covid-19-vaccine (last visited May 12, 2021); and then the Janssen COVID-19 Vaccine, commonly referred to as the Johnson & Johnson Vaccine, became available February 27, 2021. Janssen COVID-19 Vaccine, FDA.Gov, available at: https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/janssen-covid-19-vaccine (last visited May 12, 2021).

of Fields, ¶ 6.)  The Jail and WellPath then scheduled those detainees who wished to receive a COVID-19 vaccine, to receive a vaccine on April 15, 2021. (Dec. of Fields, ¶ 6.)

Since the week of April 10, 2021, all new detainees have been, and moving forward, all new detainees will continue to be, asked at booking if they have been fully vaccinated. (Dec. of Fields, ¶ 7.) If a new detainee has not been fully vaccinated, he is asked whether he wishes to be vaccinated. (Dec. of Fields, ¶ 7.) Medical staff schedule any new detainee who expresses a desire to be vaccinated for vaccination. (Dec. of Fields, ¶ 7.) Said vaccination is scheduled and provided as soon as possible and never beyond fourteen (14) days of the detainee's entry into the Jail. (Dec. of Fields, ¶ 7.)

Any detainee who initially declines the vaccine, but subsequently desires to become vaccinated, is permitted to request the vaccine via a sick call request. (Dec. of Fields, ¶ 8.) Upon such a request, Wellpath will schedule the detainee to receive a COVID-19 vaccine. (Dec. of Fields, ¶ 8.)  If the vaccine administered to a specific detainee requires two doses, the second dose will be scheduled for the detainee immediately upon him receiving the first dose. (Dec. of Fields, ¶ 8.) If a detainee is released from the Jail prior to receiving the second dose, vaccine cards and second dose information are placed in the detainee's property, which will be provided to them upon their release and will allow them to receive the second dose from an outside medical provider. (Dec. of Fields, ¶ 8.)

Detainees are not charged for receiving the COVID-19 vaccine. (Dec. of Fields, ¶ 9.) Likewise, detainees are not charged for any necessary follow-up medical care related to receiving the COVID-19 vaccine. (Dec. of Fields, ¶ 9.)

Originally, the Jail intended to offer the Johnson & Johnson/Jansen COVID-19 vaccine to detainees who accepted a vaccine. (Dec. of Fields, ¶ 20.) However, on April 13, 2021, two (2)

days prior to the first scheduled administration of COVID-19 vaccines with the Jail, the FDA and the Centers for Disease Control and Prevention ("CDC") issued an immediate pause on administering said vaccine. (Dec. of Fields, ¶ 20.) Accordingly, prior to the first administration of COVID-19 vaccines, the Jail transitioned to utilizing the Pfizer-BioNTech Covid-19 vaccine, which requires an individual to receive two separate shots at least twenty-one (21) days apart. (Dec. of Fields, ¶ 20.)

In accordance with the above vaccine program, on April 15, 2021, Wellpath administered the first dose of the Pfizer-BioNTech Covid-19 vaccine to all detainees that indicated they desired a COVID-19 vaccine. (Dec. of Fields, ¶ 21.) On that date, a total of 190 detainees received their first dose of the Pfizer-BioNTech Covid-19 vaccine. (Dec. of Fields, ¶ 21.)

Since that time, the Jail has continued to offer COVID-19 vaccines to all detainees housed in the Jail, and the Jail has continued to coordinate the administration of COVID-19 vaccines to all detainees who desire to be vaccinated. (Dec. of Fields, ¶ 22.) On April 22, 2021, eighteen (18) detainees who wished to receive a COVID-19 vaccine were provided their first dose of the Pfizer-BioNTech Covid-19 vaccine. (Dec. of Fields, ¶ 23.) All of said detainees were provided fresh fruit after accepting the vaccine. (Dec. of Fields, ¶ 23.) On April 29, 2021, twenty-one (21) detainees who wished to receive a COVID-19 vaccine were provided their first dose of the Pfizer-BioNTech Covid-19 vaccine. (Dec. of Fields, ¶ 24.) All of said detainees were provided fresh fruit after accepting the vaccine. (Dec. of Fields, ¶ 24.)

On May 10, 2021, all detainees who received the first dose of the Pfizer-BioNTech Covid-19 vaccine on April 15, 2021, and who remained incarcerated in the Jail, received their second dose of the Pfizer-BioNTech Covid-19 vaccine. (Dec. of Fields, ¶ 25.) Additionally, on May 10, 2021, eleven (11) detainees who wished to receive a COVID-19 vaccine were provided the

Johnson & Johnson/Jansen COVID-19 vaccine.[4] (Dec. of Fields, ¶ 27.) All of said detainees were provided fresh fruit after accepting the vaccine. (Dec. of Fields, ¶¶ 25, 27.)

On May 20, 2021, all detainees who received the first dose of the Pfizer-BioNTech Covid-19 vaccine on April 22, 2021, or on April 29, 2021, and who remained incarcerated in the Jail received their second dose of the Pfizer-BioNTech Covid-19 vaccine. (Dec. of Fields, ¶ 28.) Additionally, on May 20, 2021, eleven (11) detainees who wished to receive a COVID-19 vaccine were provided the Johnson & Johnson/Jansen COVID-19 vaccine. (Dec. of Fields, ¶ 28.) All of said detainees were provided fresh fruit after accepting the vaccine. (Dec. of Fields, ¶ 28.)

The Jail will continue to offer and coordinate the administration of COVID-19 vaccines in compliance with FDA guidelines. (Dec. of Fields, ¶ 29.) To date, every detainee who has been housed at the Jail for longer than fourteen days that has requested a COVID-19 vaccine has been provided a COVID-19 vaccine in compliance with FDA guidelines. (Dec. of Fields, ¶ 30.)

### B. The Jail has provided and will continue to provide educational materials concerning the COVID-19 vaccine to detainees.

In its endeavors to administer as many vaccines to detainees as possible, the Jail has provided and will continue to provide all detainees access to a variety of educational materials which supply detainees with information about the COVID-19 vaccine, including its benefits. (Dec. of Fields, ¶ 10.) For example, on April 26, 2021, and on April 27, 2021, the Jail provided each and every detainee educational materials explaining the benefits of COVID-19 that were originally provided to the SCSO by the Independent Inspector, Mike Brady. (Dec. of Fields, ¶ 10.) Specifically, the Jail provided all detainees a copy of materials concerning the COVID-19 vaccine produced by Amend, a public health-focused program from the University of California,

---

[4] On April 23, 2021, the FDA and CDC approved resuming the use of the Johnson & Johnson/Jansen COVID-19 vaccine. (Dec. of Fields, ¶ 26.)

San Francisco. (Dec. of Fields, ¶ 10.) The Jail has also posted the Amend educational materials in all housing units, and additional copies of the Amend educational materials are available to detainees at guard stations at each of the housing units upon request. (Dec. of Fields, ¶ 10.) No detainee has been or will be prohibited from viewing any posted educational materials. (Dec. of Fields, ¶ 10.) Additionally, since April 27, 2021, all new detainees have been provided a copy of the Amend educational materials upon their entry into the Jail. (Dec. of Fields, ¶ 10.)

To further educate the detainees about the benefits of accepting a COVID-19 vaccine, the Jail began displaying a video informing detainees generally about COVID-19 within each of the housing units. (Dec. of Fields, ¶ 11.) The Jail will continue to display said video within each of the housing units at least twice a day. (Dec. of Fields, ¶ 11.) Additionally, on May 12, 2021, the Jail began to display within each of the housing units, at least twice a day, a video featuring President Barack Obama, Shaquille O'Neal, and Charles Barkley encouraging individuals to accept a COVID-19 Vaccine. (Dec. of Fields, ¶ 12.) The Jail will continue to display said video within each of the housing units at least twice a day. (Dec. of Fields, ¶ 12.)

On May 17, 2021, the Jail began utilizing regular "town hall" meetings held within the Jail's housing units as means to further educate detainees about receiving a COVID-19 vaccine and to encourage detainees to accept a COVID-19 vaccine. (Dec. of Fields, ¶ 13.) During these meetings, medical personnel inform detainees about the COVID-19 vaccine as well as the importance of receiving the COVID-19 vaccine. (Dec. of Fields, ¶ 13.) The attending medical personnel also remain available to answer any questions posed by the detainees concerning the COVID-19 vaccine, its effects, and its benefits. (Dec. of Fields, ¶ 13.) The Jail will continue to utilize these "town hall" meetings on weekly basis moving forward to continue to educate detainees on the COVID-19 vaccine. (Dec. of Fields, ¶ 13.)

Anytime a detainee wishes to file a sick call request, commissary request, other inmate request, and/or a grievance, he must do so through an electronic kiosk. (Dec. of Fields, ¶ 14.) Kiosks are available in each of the housing units. (Dec. of Fields, ¶ 14.) On May 21, 2021, the Jail uploaded a prompt to the kiosks throughout the Jail that provides detainees further educational information concerning COVID-19 vaccines and encourages detainees to accept a COVID-19 vaccine. (Dec. of Fields, ¶ 14.) In order to proceed with making any type of request/filing on a kiosk, detainees now must first sign an acknowledgment that they viewed the information contained within the prompt on the kiosk. (Dec. of Fields, ¶ 14.)

In addition to pre-vaccine educational materials, the Jail is also providing detainees who receive the vaccination, post-vaccination educational materials. (Dec. of Fields, ¶ 15.)All detainees that have accepted a COVID-19 vaccine have been provided a copy of said post-vaccination educational materials. (Dec. of Fields, ¶ 15.)

  **C.** ***The Jail has offered and will continue to offer non-punitive incentives to detainees who accept the COVID-19 vaccine.***

To encourage detainees to accept a COVID-19 vaccine, the Jail is offering and will continue to offer detainees non-punitive incentives to take the vaccine. (Dec. of Fields, ¶ 16.) On April 26, 2021, and on April 27, 2021, the Jail provided each and every detainee a Vaccine Announcement. (Dec. of Fields, ¶ 16.) As noted within the Vaccine Announcement, no punitive action has been or will be taken based upon a detainee's request to receive a vaccine, a detainee's housing unit will not be changed based upon vaccination, all detainees who accept a COVID-19 vaccine will receive fresh fruit on the day of or on the day following their vaccination, and all detainees will be provided free access to follow-up medical care if they suffer discomfort resulting from their COVID-19 vaccination. (Dec. of Fields, ¶ 16.) The Jail has also posted the Vaccine Announcement in all housing units and further copies of the Vaccine Announcement

are available to detainees at guard stations at each of the housing units upon request. (Dec. of Fields, ¶ 16.) No detainee has been or will be prohibited from viewing the posted Vaccine Announcement. (Dec. of Fields, ¶ 16.) Additionally, since May 21, 2021, all new detainees have been provided a copy of the Vaccine Announcement upon their entry into the Jail. (Dec. of Fields, ¶ 16.)

In May of 2021, the City of Memphis initiated "Shot for Shot" sweepstakes whereby Shelby County residents who receive a COVID-19 vaccine prior to May 31, 2021, become eligible to enter the sweepstakes. (Dec. of Fields, ¶ 17.) The grand prize is a new Chevrolet Camaro, Chevrolet Colorado, Nissan Rogue, Nissan Altima, or any other vehicle of equal value. (Dec. of Fields, ¶ 17.) On May 21, 2021, in effort to provide further incentive to detainees at the Jail to accept a COVID-19 vaccine, the Jail informed all detainees of the sweepstakes via announcements as well as postings throughout the Jail. (Dec. of Fields, ¶ 17.) To date, all eligible detainees are entered into the sweepstakes, and the Jail will allow any future detainees who are eligible to enter the sweepstakes as well. (Dec. of Fields, ¶ 17.)

The Jail is also providing monetary incentive to detainees to accept a COVID-19 vaccine. (Dec. of Fields, ¶ 18.) From June 1, 2021, through June 30, 2021, the Jail is offering each detainee who accepts a COVID-19 vaccine twenty dollars ($20.00). (Dec. of Fields, ¶ 18.) The funds will be placed in each detainee's commissary account shortly after he receives a COVID-19 vaccine. (Dec. of Fields, ¶ 18.) On May 26, 2021, the Jail informed all detainees that they would receive $20.00 in their commissary account upon accepting a COVID-19 vaccine via an announcement uploaded to the kiosks and posted in each of the housing units. (Dec. of Fields, ¶ 18.) The Jail will also retroactively provide each detainee who received a COVID-19 vaccine prior to June 1, 2021, and who is still housed in the Jail, twenty dollars ($20.00) in his commissary account. (Dec. of

Fields, ¶ 18.) The Jail will visibly award the $20.00 credit via paper certificates during a pod's recreation time to incentivize other detainees to accept a COVID-19 vaccine. (Dec. of Fields, ¶ 18.)

Furthermore, detainees who suffer post-vaccine discomfort can gain access to any needed medical care via sick call requests and/or by directly engaging with nurses, who enter each housing unit at least one (1) to two (2) times per day. (Dec. of Fields, ¶ 19.) Additionally, for a period of forty-eight (48) hours after detainees receive a vaccine, during their daily housing unit visits, nurses follow-up with each detainee who received a vaccine in-person and inquire whether the detainee is suffering any discomfort. (Dec. of Fields, ¶ 19.) If a detainee is suffering any post-vaccine discomfort, the nurse assists him by providing him with an appropriate amount of oral pain relief medication or by affording him any other medically necessary treatment/care free of charge. (Dec. of Fields, ¶ 19.)

### IV.　CONCLUSION

The Court should declare that the Decree has terminated. As set forth above, the Jail has offered and administered an FDA-approved COVID-19 vaccine according to FDA guidelines to all detainees housed at the Jail for a period of more than fourteen (14) days and who accept a vaccination, along with educational materials about the vaccine and non-punitive incentives to take the vaccine. Thus, the provisions of Paragraph 28 have been satisfied. Additionally, by being offered a COVID-19 vaccine, Plaintiffs no longer possess any reasonable basis to assert that their constitutional or statutory rights are being violated. Based upon the overwhelming understanding that COVID-19 vaccines are safe and that they effectively eliminate the risks posed by COVID-19, once a detainee accepts a COVID-19 vaccine, the risk posed to him is eliminated. Whether a detainee accepts a vaccine remains his own choice. However, Defendants should no longer be

bound by the terms of the Consent Decree that was designed to protect alleged constitutional and statutory rights violations Plaintiffs can no longer assert.

Based upon the above and upon the record as a whole, Defendants respectfully request that this Court find that they have satisfied the provisions of Paragraph 28(b) of the Decree and declare that the Consent Decree (ECF No. 161-2) has terminated.

Respectfully submitted,

PENTECOST, GLENN & MAULDIN, PLLC

By: s/Nathan D. Tilly
James I. Pentecost (#11640)
Nathan D. Tilly (#31318)
J. Austin Stokes (#31308)
162 Murray Guard Drive, Suite B
Jackson, Tennessee 38305
(731) 668-5995

AND

Marlinee C. Iverson (#18591)
Bridgett L. Stigger (#29415)
Shelby County Attorney's Office
160 North Main Street, Suite 950
Memphis, TN 38103
(901) 222-2100

*Attorneys for Respondents-Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served via electronic mail, upon the following:

Amreeta Mathai
Andrea Woods
Nancy Rosenbloom
ACLU
125 Broad Street
New York, NY 10004

Brice Moffatt Timmons
Donati Law, PLLC
1545 Union Ave.
Memphis, TN 38104

Stella Marie Yarbrough
ACLU
210 25th Avenue N.
P.O. Box 120160
Nashville, TN 37212

Maria Morris
ACLU
National Prison Project
915 15th St. NW
Ste 7th Floor
Washington, DC 20005

Joseph J. Bial
Paul, Weiss, Rifkind, Wharton & Garrison, LLP
2001 K. Street, NW
Washington, DC 20006

Meredith Borner
David C. Kimball-Stanley
Paul, Weiss, Rifkind, Wharton & Garrison, LLP
1285 Avenue of the Americas
New York, NY 10019

Zoe Brennan-Krohn
ACLU
39 Drumm Street
San Francisco, CA 94111

Joshua B. Spickler
JUST CITY
902 South Cooper
Memphis, TN 38104

Steven John Mulroy
Cecil C. Humphreys School of Law,
University of Memphis
1 N. Front St.
Memphis, TN 38103

on or before the date above.

DATE: This the 2nd day of June, 2021.

By:   s/Nathan D. Tilly
        Nathan D. Tilly