IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| FAVIAN BUSBY, ET AL., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )   No.: 2:20-CV-02359-SHL |
| | ) |
| FLOYD BONNER, JR., ET AL., | ) |
| | ) |
|     Defendants. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR REASONABLE ATTORNEYS' FEES PURSUANT TO PARAGRAPH 23 OF THE CONSENT DECREE**

Defendants Floyd Bonner, Jr., Shelby County Sheriff, and the Shelby County Sheriff's Office (collectively referred to as "Defendants"), by and through undersigned counsel, file this Memorandum in support of Defendants' Motion for Reasonable Attorney's Fees Pursuant to Paragraph 23 of the Consent Decree.[1]

## BACKGROUND

### I.  PROCEDURAL HISTORY.

Plaintiffs originally initiated this case against Defendants as a class action, "challenging the constitutionality and legality of Plaintiffs' continued detention [in the Shelby County Jail ("the

---

[1] As explained in Defendants' response in opposition to Plaintiffs' Motion for Extension of Time (ECF No. 370), Defendants believe that any request for attorneys' fees is untimely. Plaintiffs disagree with Defendants' position and have indicated that they will file a motion seeking their fees and will argue to the Court that a request for attorneys' fees is timely. Out of an abundance of caution and to preserve any rights, Defendants file this motion in the event that the Court finds that an attorneys' fee request is timely. If the Court agrees with Plaintiffs that such a request would be timely, Defendants are entitled to fees in accordance with the Consent Decree. If the Court determines that a request for fees is untimely, Defendants would withdraw this motion.

Jail")] in light of the COVID-19 pandemic." ("Consent Decree," ECF No. 161-2, PageID 3204.) In response to Plaintiffs' allegations, Defendants denied they violated Plaintiffs' constitutional or statutory rights. To the contrary, Defendants asserted that they implemented numerous practices and procedures to appropriately combat and prevent the spread of COVID-19 in the Jail and that Plaintiffs' detention was therefore, lawful. (ECF No. 27; ECF No. 161, PageID 3185.)

From the outset of the case, the parties engaged in extensive written and oral discovery. Nonetheless, at the time the parties entered into mediation in mid-December 2020, much discovery remained to be undertaken. In an effort to avoid the "burden, expense, and disruption" of such "protracted litigation," the parties reached a resolution of the case after participating in three days of mediation. (ECF No. 161-2, PageID 3204.) Specifically, the parties agreed to the entry of a Consent Decree ("the Decree"). (*Id.*)

On April 9, 2021, the Court held a final approval hearing, found notice had been properly afforded the class and sub-class members, and approved the settlement. (ECF No. 209.) Notably, the Decree provided that no party would be deemed a "prevailing" or "successful party" and stated that each party would bear its own costs, attorneys' fees, and expenses incurred up to the date of the entry of the Decree except as outlined within the Release and Settlement Agreement agreed upon by the parties. (ECF No. 161-2, ¶ 30.)

On the other hand, the Decree did provide a means by which the parties could seek attorneys' fees in limited situations for certain, specific efforts taken related to enforcing the Decree after the entry of the Decree. (ECF No. 161-2, ¶ 23.) But importantly, before Plaintiffs were permitted to seek any enforcement that could result in an attorneys' fee award, the Decree required Plaintiffs to attempt to resolve the issue(s) with Defendants *prior to* bringing a motion before the Court. Per Paragraph 22, prior to bringing a dispute "relating to the performance or

interpretation of the Decree" before the Court, a party must have "notif[ied] opposing counsel in writing, describing the dispute and clearly identifying that they are invoking the dispute resolution practice." (ECF No. 161-2, PageID 3209, ¶ 22.) The other party was then granted seven business days to provide a response, and the parties were then obligated to meet and confer in an attempt to resolve the issue. (*Id*.) Only then, if the issue remained unresolved, could a party bring a dispute concerning the "performance or interpretation" of the Decree before the Court. (*Id*.)

The Decree provided that subsequent to completing the dispute resolution process, Plaintiffs were entitled to seek enforcement of the Decree. (ECF No. 161-2, ¶ 23.) And if they obtained relief from the Court as a result of seeking such enforcement, they could seek an award of reasonable attorneys' fees and costs incurred in seeking such enforcement. (*Id*.) However, the Decree also provided that "[s]hould Plaintiffs elect under such circumstances to seek enforcement of this Decree and the Court deny the relief sought on grounds that Plaintiffs' action is frivolous, unreasonable, or without foundation, Defendants may seek an award of the reasonable attorneys' fees and costs incurred in responding to Plaintiffs' attempt to seek such enforcement." (*Id*.)

On May 19, 2021 – just over one month after the Court approved the Decree – Plaintiffs initiated their first attempt at enforcing the Decree with this Court. They did so by filing their Motion to Enforce and Modify the Consent Decree. (ECF No. 216-1.) But prior to doing so, ***they failed to follow the Decree's requirement that they engage in the dispute resolution practice***. (ECF No. 220, PageID 3794-96.) Moreover, in the motion, Plaintiffs sought enforcement of the Decree for many issues that *were not* mandated or even considered by the Decree. (*Id*.) For example, Plaintiffs sought this Court order Defendants to (1) "offer adequate educational materials and non-punitive incentives"; (2) provide and document Defendants' "provision of 'minimum out of cell time'" for detainees; and (3) reimplement the "toll-free number previously" instituted to

provide Class Members the opportunity to discuss the settlement pursuant to Rule 23 of the Federal Rules of Civil Procedure. (ECF No. 216-1, PageID 3518-19.) Defendants responded to this motion by arguing, among other things, that the issues were not properly before the Court because Plaintiffs had not initiated or completed the dispute resolution practice and that the many of the raised concerns were not even mandated or considered by the Decree. (ECF No. 219.)

On June 2, 2021, Defendants moved to terminate the Decree. (ECF No. 218.) In light of the Motion to Terminate, this Court held Plaintiffs' Motion to Enforce in abeyance at that time. (ECF No. 233.)

Later, this Court denied Defendants' Motion to Terminate (ECF No. 258), and Defendants appealed. (ECF No. 259.) Importantly, as part of this Court' Order on Defendants' Motion to Terminate, the Court directed the Parties to "confer and file a Notice on the docket as to how they would like to proceed" on Plaintiffs' Motion to Enforce. (ECF No. 258, PageID 5060-61.) The Parties filed their Joint Notice per the Court's instructions on September 7, 2021. (ECF No. 260.) In the notice, Plaintiffs proposed expedited discovery on their Motion to Enforce. (*Id.*)

While the Motion to Terminate was on appeal, on September 14, 2021, Plaintiffs filed a Motion for Reconsideration of Order, asking the Court to retain jurisdiction over the provisions of the Decree not concerning termination. (ECF No. 264.) Defendants filed a response, wherein they again reiterated that some of the issues Plaintiffs raised in their Motion to Enforce were not even contemplated by the Decree. (ECF No. 266.)

Later, on November 2, 2021, Plaintiffs filed their Motion to Bifurcate Motion to Enforce and to Modify the Consent Decree. (ECF No 274.) In the supporting memorandum, Plaintiffs went well-beyond requesting the enforcement of the Decree be bifurcated—which Defendants did not procedurally oppose—and instead rehashed their allegations that Defendants failed to comply with

the Decree, necessitating Court intervention. (ECF No. 274-1.) In so doing, Plaintiffs repeated their requests that the Court order that Defendants offer adequate education materials and non-punitive incentives and order that Defendants reinstate the temporary toll-free number. (*Id*. at PageID 5196-97). But additionally, Plaintiffs raised *new* issues that were never part of the original Motion to Enforce. For example, they criticized the Shelby County Jail's staffing levels and Defendants' alleged refusal to hire an onsite clinical psychologist—topics wholly unaddressed by the Decree and topics of which they have never raised via the dispute resolution practice. (ECF No. 274-1, PageID 5191-92, 98.)

The Court granted Plaintiffs' request for bifurcation and provided Defendants until November 15, 2021, to further "respond to Plaintiff's contention that it remains noncompliant with the Consent Decree and Plaintiffs' request for a hearing." (*Id*.) Per this Court's Order, Defendants responded, explaining that they were in compliance with the Decree and further explaining, among other things, that Plaintiffs' request for enforcement of a toll-free number and adequate education materials lacked foundation in the Decree. (ECF No. 281.). *Once again*, Defendants noted that Plaintiffs had failed to comply with the dispute resolution practice prior to seeking enforcement. (*Id*.)

After Defendants' response, this Court held a status conference on November 23, 2021. (ECF No. 285.) At the status conference, the Court directed the parties "to confer and submit an agreed upon list of issues that plaintiff believes are not being enforced in the decree" by December 3, 2021. (*Id*.). Additionally, the Court set a separate status conference for December 13, 2021, to discuss whether a hearing was needed on the Motion to Enforce and what the "focus" of such a hearing should be. (ECF Nos. 285, 286.)

Per the Court's instructions, on December 3, 2021, the parties filed a Joint Notice of

Outstanding Issues for Enforcement. (ECF No. 291.) In the Joint Notice, Plaintiffs informed the Court that they intended to seek enforcement through the Decree of, among other items, (1) vaccine incentives and education; (2) mandatory overtime to ensure sufficient detainee recreation time; (3) increased out-of-cell time; (4) reinstatement of the toll-free hotline; and (5) hiring of a clinical psychologist. (*Id.*) On December 10, 2021, Plaintiffs also reasserted their request for expedited discovery, claiming expedited discovery was needed to determine whether Defendants were in compliance with the Decree on the issues Plaintiffs outlined in the Joint Notice. (ECF No. 292.)

The Court held another status conference on December 14, 2021. (ECF No. 294.) At the status conference, the Court denied Plaintiff's Motion for Expedited Discovery without prejudice but set deadlines for any subsequent Motion for Expedited Discovery and Defendants' response to such a motion. (*Id.*)

Meanwhile, on January 3, 2022, the Court denied in part Plaintiff's Motion to Enforce. (ECF No. 297.) Specifically, the Court denied that the Decree contemplated the implementation of a toll-free hotline beyond the initial settlement notice period because ***"the Settlement Agreement and the Consent Decree represent the full extent of Defendants' obligations," and "neither discuss the hotline[.]"*** (ECF No. 297, PageID 5274-75) (emphasis added.)

On January 10, 2022, Plaintiffs resubmitted their Motion for Discovery on an Expedited Basis seeking the same relief in the earlier motion. (ECF No. 299.) Defendants responded in opposition to Plaintiffs' motion two days later, arguing that expedited discovery was unnecessary and that the specific requests were overly broad and unduly burdensome. (ECF No. 300.) On January 14, 2022, the Court held a status conference to discuss the status of the case. (ECF No. 302.) The Court ordered Defense counsel "to produce a contin[uous] stream of documents to the plaintiffs [previously provided to the independent inspector] and have all documents produced by

[] January 28, 2022." (*Id*.; ECF No. 305, PageID 5307.) Furthermore, the Court directed the parties to meet and confer the week of January 31, 2022, "to discuss any remaining issues." (*Id*.) After the meet and confer, the parties were instructed to submit a report containing the remaining issues. (*Id*.).

Pursuant to this Court's directives, Defendants produced to Plaintiffs a voluminous number of documents and media that Defendants provided to the independent inspector over the two weeks following the Court's January 14, 2022, status conference. (ECF No. 305.) Additionally, on February 7, 2022, Defendants submitted their Report on Remaining Issues Related to Plaintiffs' Pending Motion to Enforce the Consent Decree. (*Id*.) In the report, Defendants outlined the remaining issues between the parties related to the Motion to Enforce and noted that many of the issues were not properly before the Court because they fell beyond the bounds of the Decree. (*Id*. at PageID 5308-15.) Plaintiffs also filed a status report reiterating their demands. (ECF No. 306.)

On February 11, 2022, the Court granted in part and denied in part Plaintiffs' January 10, 2022, Motion for Discovery on an Expedited Basis. (ECF No. 309.) The Court granted Plaintiffs' request for expedited discovery on production of documents related to vaccine education generated after November 1, 2022. (*Id*. at PageID 5407-08.) However, the Court denied Plaintiffs' motion concerning alleged staffing issues, detainee's out-of-cell time, detainee recreation time, and the hiring of a clinical psychologist. (*Id*. at PageID 5411-14.) The Court reasoned that the there was ***no evidence that the parties had engaged in the Decree's dispute resolution process on any of the above topics*** as required prior to Plaintiffs seeking enforcement. (*Id*. at 5411) (emphasis added.) As such, the Court found that the alleged staffing issues, detainee's out-of-cell time, and detainee recreation time ***were not "properly before the Court as [] enforcement issue[s]."*** (*Id*. at PageID 5413) (emphasis added.) After doing so, the Court ordered the parties to "file a joint position paper

as to any remaining contested issues" by February 25, 2022, once Defendants produced additional documentation per the Court's order.

One week later, Defendants provided to Plaintiffs the ordered documentation. And on February 25, 2022, the parties submitted their Joint Position Paper on Remaining Issues. (ECF No. 313.) Despite the fact that the Court previously noted that Plaintiffs' sought enforcement concerning education materials, nonpunitive incentives, out-of-cell time, staffing issues, recreation time, and the hiring of a clinical psychologist were likely not ripe for judicial review because the dispute resolution process had not been followed, Plaintiffs continued to seek enforcement of each issue and requested a hearing to argue the enforcement of each issue. (*Id*.)

Just over one month later, on March 30, 2022, this Court almost wholly denied Plaintiffs' Motion to Enforce. (ECF No. 316.) While the Court ordered Defendants to provide the documentation requested in Inspector Wells' Report related to the Jail's small group meetings and plans for the development of its peer education program, the Court denied every other request from Plaintiffs.[2] (*Id*.) Concerning vaccination incentives, the Court denied enforcement, as the Court declined to "assume future noncompliance" when the Inspector provided "no reason to raise immediate concerns" on monetary incentives. (*Id*. at PageID 5833-34.) Concerning the remaining issues, the Court noted that the Decree did not contemplate their enforcement. (*Id*. at PageID 5837.) Consequently, enforcement was outside the Court's jurisdiction under the Decree. (*Id*.) Regardless, the Court held that enforcement was not necessary even if somehow allowed under the Decree, as the record revealed that Defendants had taken actions to address staffing levels, detainee recreation time, and out-of-cell time. (*Id*. at PageID 5839-40.) As a result, the Court ultimately held that ***"the Court's jurisdiction is restricted to these matters and declines to expand the scope of the Consent***

---

[2] Notably, Defendants were already providing Wells the documentation the Court ordered Defendants to provide. Thus, the Court's Order granted relief that Plaintiffs would have obtained despite the Court's Order.

***Decree. Even if the Court ultimately agrees that certain conditions should be improved . . . , this action is not the appropriate avenue to advocate for that improvement.*** *"* (*Id*. at PageID 5840) (emphasis added.) Concerning the clinical psychologist, the Court likewise found that enforcement of the issue ***"exceed[ed] the bounds of the Parties' agreement."*** (*Id*. at PageID 5842) (emphasis added.)

Not satisfied with the relief granted, Plaintiffs filed a Motion for Revision of Order on Enforcement, seeking the Court reconsider its rulings on the provision of vaccine incentives and out-of-cell time. (ECF No. 319-1.) Defendants responded in opposition to Plaintiffs' motion. (ECF No. 321.)

On August 4, 2022, the Court denied Plaintiff's Motion for Revision of Order on Enforcement. (ECF No. 328.) Once again, the Court found that the dispute resolution process had not been followed per the Decree before Plaintiffs sought relief. (*Id*. at PageID 6032.) Additionally, the Court noted that Plaintiffs arguments on out-of-cell time mirrored their previous arguments and, thus, could not be relitigated again in the Motion for Revision. Ultimately, the Court held that "Plaintiffs' ha[d] not met their burden to provide new evidence for this Court to find that this issue falls within its jurisdictional reach." (*Id*. at PageID 6030.)

## II.   DEFENDANTS' ATTORNEYS' FEES.

Pursuant to Paragraph 23, Defendants seek their reasonable attorneys' fees related to responding to and litigating the following filings: (1) Plaintiffs' Motion to Enforce and to Modify Consent Decree (ECF No. 216); (2) Joint Notice (ECF No. 260); (3) Plaintiffs' Motion for Reconsideration (ECF No. 264); (4) Plaintiffs' Motion to Bifurcate the Motion to Enforce and to Modify the Consent Decree (ECF No. 274); (5) Joint Notice of Outstanding Issues for Enforcement (ECF No. 291); (6) Plaintiffs' Motions for Discovery on an Expedited Basis (ECF Nos. 292, 299);

(7) Defendants' Report on Remaining Issues Related to Plaintiff's Pending Motion to Enforce the Consent Decree (ECF No. 305); (8) Plaintiffs' Notice of Outstanding Issues for Enforcement (ECF No. 306); (9) Joint Position Paper on Remaining Issues (ECF No. 313), and (10) Plaintiffs' Motion for Revision of Order on Enforcement (ECF No. 319) as well as Defendants' efforts in responding to Plaintiffs' ongoing demands and discovery while litigating the above filings. Defendants assert that Plaintiffs' filings were unreasonable and without foundation in light of the plain terms of the Decree and this Court's interpretation of the same. Specifically, Defendants seek compensation for 314.2 hours of work and total fee of $77,134.00. (Tilly Dec. ¶¶ 12-13.)

In support, Defendants rely on the Affidavit of Robert L. Hutton. Mr. Hutton is a practicing attorney with the law firm of Glankler Brown, PLLC in Memphis, Tennessee. (Hutton Dec. ¶ 2.) He has been licensed to practice law since 1992, and has continuously practiced law in Shelby County, Tennessee for over 31 years. (Hutton Dec. ¶ 3.) As part of his practice, he has extensive experience representing plaintiffs and/or prisoners in federal habeas corpus proceedings and federal civil rights proceedings. (Hutton Dec. ¶ 3.) As a result of his education, knowledge, and experience, Mr. Hutton is qualified to opine on the reasonableness of an attorneys' fee request and is familiar with the prevailing rates charged by attorneys in this local market for habeas litigation and federal civil rights litigation. (Hutton Dec. ¶ 4.)

Based on his review of Defense counsels' submitted invoices, Mr. Hutton opined that the requested hourly rate is a reasonable rate for lawyers practicing in this market, especially in light of Defense counsels' reputation and the results obtained in this case. (Hutton Dec. ¶¶ 19, 21.) Moreover, Mr. Hutton determined that the hours of total work conducted over a ten-month period is reasonable given the scope of the issues detailed above. (Hutton Dec. ¶ 20.)

## **ARGUMENT**

I. **THE CONSENT DECREE'S INTERPRETATION IS GOVERNED BY TENNESSEE LAW.**

"A consent decree has attributes of both a contract and of a judicial act." *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983). It is a judicial act because it "places the power and prestige of the court behind the compromise struck by the parties." *Id*. at 920. But it is also a contract because it is "entered into by parties to a case after careful negotiation has produced agreement on their precise terms." *Evoqua Water Techs., LLC v. M.W. Watermark, LLC*, 940 F.3d 222, 229 (6th Cir. 2019) (quoting *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971)). "Because the defendant has, by the decree, waived his right to litigate the issues raised, a right guaranteed to him by the Due Process Clause, the conditions upon which he has given that waiver must be respected, and the instrument must be construed as it is written, and not as it might have been written had the plaintiff established his factual claims and legal theories in litigation." *Armour & Co.,* 402 U.S. at 682. Accordingly, "the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it." *Evoqua Water Techs., LLC,* 940 F.3d at 229 (quoting *Armour*, 402 U.S. at 682).

Because the Decree was formed in Tennessee, Tennessee contract law governs its interpretation. *Ohio Cas. Ins. Co. v. Travelers Indem. Co*., 493 S.W.2d 465, 467 (Tenn. 1973). Under Tennessee law, the court's role is to "ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the language used." *Shuttleworth, Williams, Harper, Waring & Derrick, PLLC v. Gary K. Smith, Smith, Sabbatin & McLeary, PLLC*, 2010 Tenn. App. LEXIS 171, at *7 (Tenn. Ct. App. Mar. 5, 2010) (citing *Allstate Insurance Company v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006)). If a contract's language is clear and unambiguous, the plain meaning of the contract governs. *Teter v. Republic Parking Sys*., 181 S.W.3d 330.

### II. PLAINTIFFS' ATTEMPTED ENFORCEMENT OF THE DECREE FOR MATTERS OUTSIDE THE SCOPE OF THE DECREE WAS UNREASONABLE AND WITHOUT FOUNDATION.

The Decree provides that "Plaintiffs may seek enforcement" of the Decree "if Defendants fail to comply with any terms of this Decree[.]"(ECF No. 161-2, ¶ 23). But "[s]hould Plaintiffs elect under such circumstances to seek enforcement of this Decree and the Court deny the relief sought on grounds that Plaintiffs' action is frivolous, unreasonable, or without foundation, Defendants may seek an award of the reasonable attorneys' fees and costs incurred in responding to Plaintiffs' attempt to seek such enforcement." (ECF No. 161-2, ¶ 23).

Based on the plain meaning of the Decree, Defendants may recover their attorney's fees from Plaintiffs if the enforcement grounds at issue are found to be "unreasonable" or "without foundation." Neither term is ambiguous. "Foundation" means "a basis (such as a tenet, principle, or axiom) upon which something stands or is supported[.]" Merriam-Webster's Dictionary. *See also*, Black's Law Dictionary (3d Pocket Ed. 2006) ("The basis on which something is supported[.]"). And according to Black's Law Dictionary, "reasonable" is defined as "Fair, proper, or moderate under the circumstances" or "According to reason." Black's Law Dictionary (3d Pocket Ed. 2006).

Throughout the two and a half years after the Court approved the Decree, Plaintiffs attempted to utilize the Decree as a mechanism to manage the Shelby County Jail—whether or not the specific demands concerned the COVID-19 pandemic. And remarkably, they did so after *having not even complied with the dispute resolution terms of the Decree* and then continued to do so *even after this Court explained* that such demands were outside the scope of the Decree. (ECF Nos. 309, 313, 328). Such efforts were unquestionably "unreasonable" and/or "without foundation" – and most importantly, required Defendants to incur significant fees in responding to Plaintiffs' efforts.

> i. *Plaintiffs' attempted enforcement of the Decree was unreasonable and without foundation because they did not comply with the Decree's dispute resolution process prior to seeking enforcement of the Decree.*

Plaintiffs brazenly sought enforcement of the Decree *without even complying with the dispute resolution terms of the Decree*—terms which the parties agreed to and this Court approved. Per Paragraph 22, prior to bringing a dispute "relating to the performance or interpretation of the Decree" before the Court, a party must have "notif[ied] opposing counsel in writing, describing the dispute and clearly identifying that they are invoking the dispute resolution practice." (ECF No. 161-2, PageID 3209, ¶ 22.) The other party was then granted seven business days to provide a response, and the parties were then obligated to meet and confer in an attempt to resolve the issue. (*Id.*) Only then, if the issue remained unresolved, could a party bring a dispute concerning the "performance or interpretation" of the Decree before the Court. (*Id.*)

Yet, despite the plain language of Paragraph 22, Plaintiffs failed to comply with Paragraph 22 before making their laundry list of demands to the Court. And importantly, even after this Court found in its Order on Plaintiffs' Motion for Discovery on an Expedited Basis that Plaintiffs had failed to do so, Plaintiffs nonetheless continued their efforts seeking enforcement. (ECF No. 309, PageID 5411 (finding that there was no evidence that the dispute resolution process had been implemented on the topics at issue). Notably, the Court reiterated Plaintiffs' failures to comply with the Decree prior to seeking enforcement in its Order Denying Plaintiffs' Motion for Revision of Order. (ECF No. 328, PageID 6032 ([I]t appears to the Court that the dispute resolution process agreed to by the Parties has not been followed, or, to the extent it has, such compliance has not been demonstrated to the Court. . . . The Parties must adhere to their own agreement and complete the dispute resolution process as outlined in the Consent Decree before seeking the Court's intervention as this is the most effective, and agreed upon, method to effectuate its purpose.")).

By repeatedly finding that Plaintiffs engaged in efforts to enforce the Decree *without* first following the dispute resolution practice, this Court, in essence, found that Plaintiffs' actions were unreasonable and/or without foundation. The Decree's terms were clear. Plaintiffs could seek enforcement *but only after* initiating and completing the dispute resolution practice. By seeking such enforcement prior to initiating and completing the dispute resolution practice, Plaintiffs had absolutely no grounds to seek enforcement because the dispute resolution practice acted as a prerequisite to doing so. Plaintiffs' actions actually *violated* the terms of the Decree and bypassed the mechanism set in place and agreed to by the parties to avoid incurring unnecessary fees and the Court's involvement. As a result, Defendants are entitled to all related reasonable attorney's fees in responding to such efforts.

> ii. *Plaintiffs' attempted enforcement of the Decree was unreasonable and lacked foundation because the sought enforcement grounds were not contemplated under the plain language of the Decree.*

As noted above, in their efforts to manage the Jail, Plaintiffs sought enforcement on numerous issues that were not even contemplated by the Decree. For example, at various times, Plaintiffs demanded that this Court require Defendants to reinstitute a toll-free hotline—even though reference the such a hotline is completely absent from the Decree. (ECF Nos. 216, 274-1, 291). They sought this Court to require Defendants to implement mandatory overtime for its staff to ensure sufficient detainee recreation time—even though recreation time had absolutely nothing to do with the COVID-19 pandemic. (ECF No. 291). They sought this Court to require Defendants to increase detainee out-of-cell time—even though said issue likewise had no relation to the COVID-19 pandemic. (ECF No. 291, 313, 319-1). And they even attempted to force Defendants to hire an onsite clinical psychologist to address mental health concerns. (ECF Nos. 274-1, 291). While Plaintiffs may have had concerns about detainees' access to mental health in the Jail, such

a demand certainly went well beyond the scope of the Decree. (ECF Nos. 216-1, 274-1, 291, 306, 313.)

The Decree is quite clear—enforcement may only be sought *under the terms* of the Decree. (ECF No. 161-2 ("Plaintiffs may seek enforcement of the decree if Defendants fail to comply with any terms of this Decree[.]")). Nowhere in the Decree does it provide an enforcement procedure for any of the aforementioned issues. And importantly, this Court expressly held that it lacked jurisdiction to enforce any of the aforementioned requested relief, as the relief sought was plainly beyond the scope of the Decree. (ECF No 297, PageID 5274-75; ECF No. 316). Such a finding by the Court equates to a finding that Plaintiffs' requests were unreasonable and/or lacked foundation. Considering that the requested relief was plainly *not* enforceable under the Decree—something that Defendants repeatedly stressed to Plaintiffs and the Court unambiguously found—Plaintiffs' sought enforcement of (1) the reimplementation of a temporary toll-free hotline; (2) the implementation mandatory overtime to ensure sufficient detainee recreation time; (3) increasing detainee out-of-cell time; and (4) forcing Defendants to hire an onsite clinical psychologist was unreasonable and without foundation under the plain meaning of the Decree.

### III. DEFENDANTS' SOUGHT ATTORNEYS' FEES ARE REASONABLE.

Having shown that Plaintiffs' attempted enforcement of the Decree for matters outside the scope of the Decree was unreasonable and without foundation, Defendants are entitled to their reasonable attorney's fees. Defendants seek compensation for 314.2 hours of work and total fee of $77,134.00. (Tilly Dec. ¶¶ 12-13.)

"[P]arties who have prevailed in litigation to enforce contract rights are entitled to recover their reasonable attorney's fees once they demonstrate that the contract upon which their claims are based contains a provision entitling the prevailing party to its attorney's fees." *Touchmark Nat'l*

*Bank v. Moore*, 2021 U.S. Dist. LEXIS 121789, at *3 (W.D. Tenn. June 10, 2021). Tennessee law further stipulates that "[w]hen the parties' contract provides that the prevailing party is entitled to reasonable attorney's fees in litigation to enforce the contract, the party who prevails is contractually entitled to recover its reasonable attorney's fees, and the court has no discretion regarding whether to award fees." *Maks, Inc. v. Sterling Operations, Inc.*, 2014 U.S. Dist. LEXIS 48100, at *12 (E.D. Tenn. Feb. 11, 2014) (emphasis added). *See also Albright v. Mercer*, 945 S.W.2d 749, 751 (Tenn. Ct. App. 1996); *Notredan, Ltd. Liab. Co. v. Old Republic Exch. Facilitator Co.*, 2012 U.S. Dist. LEXIS 103211, at *6 (W.D. Tenn. July 25, 2012) ("Once a party has demonstrated the right to fees under a contractual provision, the Court has no discretion regarding whether to award reasonable attorney fees."). The Tennessee Supreme Court has held that "the award [of attorney fees] must be based upon the guidelines by which a reasonable fee is determined" under Rule 1.5 of the Tennessee Rules of Professional Conduct. *Notredan, Ltd. Liab. Co.*, 2012 U.S. Dist. LEXIS 103211, at *7 (quoting *Nutritional Support Servs., Ltd. v. Taylor*, 803 S.W.2d 213, 216 (Tenn. 1991)). Rule 1.5 provides the following:

> A lawyer's fee and charges for expenses shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) The likelihood, if apparent to the client, that the acceptance of a particular employment will preclude other employment by the lawyer;
>
> (3) The fee customarily charged in the locality for similar legal services;
>
> (4) The amount involved and the results obtained;
>
> (5) The time limitations imposed by the client or by the circumstances;
>
> (6) The nature and the length of the professional relationship with the client;
>
> (7) The experience, reputation, and ability of the lawyer or lawyer performing the services;

   (8) Whether the fee is fixed or contingent;

   (9) Prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and

   (10) Whether the fee arrangement is in writing.

*Id.*; *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011) (citing Tenn. R. Prof. Resp. 1.5); *see also Connors v. Connors*, 594 S.W.2d 672, 676 (Tenn. 1980).

  In this instance, all relevant factors weigh in favor of approving Defendants' attorney fee request. First, Factors (1) and (7) weigh heavily in Defendants' favor. Defense counsel devotes the majority of his practice to civil rights litigation, a nuanced area of the law. (Tilly Dec. ¶ 8; Hutton Dec. ¶ 19.) And according to Mr. Hutton, Defense counsel and his firm "have a reputation of being high quality, highly skilled, diligent, ethical attorney who achieve excellent results for their clients." (Hutton Dec. ¶ 19). Furthermore, it goes without saying that due to the extensive number of filings at issue, the time and labor required was necessary and appropriate. (Hutton Dec. ¶ 20).

  Moving to Factor (3), Defense counsel's requested rate is more than reasonable. As explained by Mr. Hutton, "[t]he rate requested by Defendants of $250 per hour is what they typically charge for their services in this market and is actually on the low side for fees." (Hutton Dec. ¶ 21).

  Factor (4) weighs in Defendants' favor. Plaintiffs did not receive any requested relief for the aforementioned topics. And more generally, Plaintiffs received minimal relief from their Motion to Enforce at all, as the Court only ordered Defendants to provide documents that they were already providing. (ECF No. 316.)

  Importantly, Defendants were diligent in only seeking fees related to efforts taken in response to Plaintiffs' efforts that were unreasonable and/or without foundation. Defendants have

not sought fees for numerous other efforts they took in the case. For example, Defendants have not sought fees incurred for, among other things, reviewing and responding to the Independent Inspector's recommendations, preparing monthly reports for the Shelby County Jail as required by the Consent Decree, preparing Class and Subclass lists as required by the Consent Decree, litigating Defendants' Motion to Terminate, engaging in meetings with Plaintiffs' counsel concerning items unrelated to issues Defendants believe were raised unreasonably and/or brought before the Court without foundation, or responding to Plaintiffs' motions unrelated to issues that Defendants believe were raised unreasonably and/or brought before the Court without foundation. (Tilly Dec. ¶ 11).

## CONCLUSION

Based on the above and Paragraph 23 of the Decree, Defendants respectfully request this Court approve Defendants' attorneys' fee request against the named Plaintiffs.

Respectfully submitted,

PENTECOST, GLENN & TILLY, PLLC

By:   s/Nathan D. Tilly
      Nathan D. Tilly (#31318)
      162 Murray Guard Drive, Suite B
      Jackson, Tennessee 38305
      (731) 668-5995

      AND

      Marlinee C. Iverson (#18591)
      R.H. "Chip" Chockley (#20680)
      Shelby County Attorney's Office
      160 North Main Street, Suite 950
      Memphis, TN 38103
      (901) 222-2100

      *Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that a true and correct copy of the foregoing document was filed electronically via the ECF filing system. Accordingly, notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.

    DATE:  This the 31st day of October, 2023.

                                                 By:    s/Nathan D. Tilly
                                                         Nathan D. Tilly