UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| Favian Busby, Russell Leaks, and Joseph Nelson *on their own behalf and on behalf of those similarly situated*,<br><br>Petitioners-Plaintiffs,<br><br>v.<br><br>Floyd Bonner, Jr., *in his official capacity*, Shelby County Sheriff, and the Shelby County Sheriff's Office,<br><br>Respondents-Defendants. | Civil Action No. 2:20-cv-2359-SHL-atc |

**DECLARATION OF DAVID C. FATHI
IN SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEY'S FEES**

Pursuant to 28 U.S.C. § 1746, I, David C. Fathi, declare the following to be true and correct, under penalty of perjury:

**Qualifications of Counsel**

1. I am an attorney licensed to practice in the state of Washington. I am the Director of the ACLU National Prison Project (NPP). I supervise all attorneys within NPP including the attorneys who litigated this case. I work closely with the Criminal Law Reform Project at the ACLU and with the personnel from that Project for whose work attorney's fees are sought in this motion. If called as a witness, I could and would testify competently to the facts stated herein, all of which are within my personal knowledge. I offer this declaration in support of the Plaintiffs' Motion for Attorney's Fees and Costs, filed herewith.

2. I worked as a staff attorney with the National Prison Project for more than 10 years before becoming director in 2010. From 2012 to 2015 I represented the ACLU in negotiations leading to the adoption of the United Nations Revised Standard Minimum Rules for the Treatment

1

of Prisoners, known as the "Nelson Mandela Rules." I have litigated numerous federal lawsuits addressing conditions of confinement in prisons and jails throughout the nation. My *curriculum vitae*, incorporated by reference herein, is appended here as Ex. A.

3.	The NPP, founded in 1972, is located in Washington, D.C. It has decades of experience in complex prisoner rights class actions and has represented prisoners in five cases before the U.S. Supreme Court. Since its founding, the NPP has litigated challenges to conditions of confinement in almost every U.S. state, as well as the District of Columbia and the U.S. Virgin Islands.

4.	The NPP is one of a handful of offices in the nation that focus on litigating prisoners' rights cases such as this action. Litigating prisoners' rights cases requires specialized knowledge and skills as well as considerable resources. As a result, NPP's assistance as co-counsel is frequently sought by other attorneys throughout the nation. Federal courts have long recognized the special expertise of NPP staff. *See, e.g.*, *Plyler v. Evatt*, 902 F.2d 273, 278 (4th Cir. 1990); *Palmigiano v. Garrahy*, 707 F.2d 636, 637 (1st Cir. 1983); *Duvall v. O'Malley*, No. CV ELH-94-2541, 2016 WL 3523682, at *9 (D. Md. June 28, 2016); *Dockery v. Fischer*, 253 F. Supp. 3d 832, 856 (S.D. Miss. 2015); *Riker v. Gibbons*, No. 3:08-CV-00115-LRH, 2010 WL 4366012, at *4 (D. Nev. Oct. 28, 2010); *Diaz v. Romer*, 801 F. Supp. 405, 410 (D. Colo. 1992), *aff'd*, 9 F.3d 116 (10th Cir. 1993).

5.	Appended to this declaration are invoices and records that include all incurred and claimed fees and expenses for the American Civil Liberties Union (ACLU) from April 13, 2021 to March 30, 2022. *See* Ex. B. All of the time entries were kept contemporaneously by each person for whom the ACLU seeks compensation. The appended time records provide a detailed

description of the work performed, the hours expended, and the staff person responsible for the work and making the time entry.

**Summary of Work**

6. To initiate the case, the ACLU investigated COVID-19 conditions at the Shelby County Jail, filed a class action complaint for injunctive relief on behalf of more than 2,000 clients, and filed a motion for class certification and for a temporary restraining order. After engaging in discovery and extensive negotiations with the Defendants, the ACLU and co-counsel reached a comprehensive settlement agreement and secured court approval of that agreement, all the while communicating with our clients regularly to obtain real-time information regarding conditions in the Jail. Enforcement work was crucial. Through the termination date of the Consent Decree, the Jail reported – despite their insufficient testing program – that at least 460 people detained at the Shelby County Jail tested positive for COVID-19. *See* Ex. C.

7. The Consent Decree itself provides for fees and expenses through the date of its approval (April 12, 2021). The Decree also allows Plaintiffs to seek "reasonable attorneys' fees and costs incurred in seeking enforcement" for successful enforcement work done following that date. ECF No. 161-2 at ¶ 23. Enforcement work for which Plaintiffs seek compensation included communication with clients and ongoing coordination with the Court-appointed Independent Inspectors to learn of present conditions at the Jail and the Jail Defendants' compliance with the decree, assessment of the need for enforcement measures, and the pursuit of informal and formal litigation efforts – including work with experts – to ensure the Decree remained in place and to enforce Plaintiffs' rights under it. Exhibit D to this Declaration is email correspondence between counsel for Plaintiffs and Defendants as they attempted to settle the enforcement fees issue without the need to bring motions.

**The Decision to Join This Case Precluded Other Work**

8. Before deciding to join this case, the ACLU spoke with staff from the ACLU of Tennessee, Just City and other Tennessee-based lawyers including Mr. Timmons, now of the Donati Firm. Tennessee-based counsel asked the ACLU and Paul Weiss to join as counsel in an investigation of COVID-19 conditions at the Shelby County Jail. Counsel in Tennessee did not have the resources to conduct this investigation or litigate a class action lawsuit challenging COVID-19 conditions without our assistance. The ACLU in agreeing to represent the class in a civil rights case reasonably expected to receive fees if we prevailed via a court-enforceable decree.

9. The decision to represent the class in this matter limited the ability of the ACLU to take on other matters. When the COVID-19 pandemic began, the ACLU committed to investigating COVID-19 conditions in correctional facilities nationwide. This was an organizational effort that involved experienced civil rights attorneys from across the organization joining litigation teams that were each staffed by an NPP attorney, given our office's specialized expertise in class action correctional reform litigation. The ACLU began with more than thirty-five prisons and jails around the country as potential candidates for the novel litigation we brought here. Our decision to represent the *Busby* class prevented us from bringing suit on behalf of other incarcerated persons who faced COVID-19 risks as dire as those faced by our clients here.

10. The ACLU had to devote a significant amount of time in a very compressed period to initiate this lawsuit, prepare and file emergency motions, engage in intensive negotiations to resolve this case, and then monitor compliance and litigate extensively to enforce the rights of the plaintiff class. The ACLU could not devote this time to other matters or potential new cases.

**The Exercise of Billing Judgment and Efficient Staffing of this Case**

4

11. I have reviewed the appended time and expense records and corrected clerical errors, such as misplaced decimal points and duplicate time entries. I then exercised billing judgment to "no charge" any entries that were arguably redundant, unnecessary, inefficient, inadequately documented, or otherwise unreasonable for an attorney to bill a client. All of the time for which the ACLU is billing in the appended summary was reasonable and necessary to adequately represent the plaintiff class in this matter.

12. Further, I have reviewed the time entries of ACLU lawyers and paralegals to distinguish between legal work and work that could be accomplished by a non-lawyer, and to identify clerical work. I have no-charged all work that was arguably clerical work and have no-charged the time spent by lawyers and law students that was arguably non-legal work that could have been performed by a non-lawyer.

13. In the interest of presenting the most reasonable motion, Plaintiffs are not seeking compensation for any of the hours worked by co-counsel the ACLU of Tennessee, Just City and the Donati Firm, and have decided not to seek fees for ongoing monitoring work and preparation of a second enforcement and modification motion that was settled in exchange for an extension of the length of the Consent Decree including the Inspector's involvement.

14. I carefully considered the necessary staffing of this case and selected to the best of my ability the most efficient possible litigation team. All of the attorneys and law clerks for whom fees are sought here are highly competent and qualified and their services were vital to the successful preparation and conduct of Plaintiffs' case.

15. There was great staffing efficiency in having Andrea Woods, CLRP Senior Staff Attorney, serve as co-lead counsel for the Plaintiffs (including in settlement negotiations) until Senior Litigation Advisor Nancy Rosenbloom was assigned to take over that role in 2021. Ms.

Woods spent seven years with the ACLU working exclusively on civil rights litigation involving jails and the criminal legal system. Ms. Rosenbloom, with decades of complex litigation experience in the rights of incarcerated people and related subject areas, was able to take over the co-lead counsel role with minimal time expended getting up to speed and to litigate the enforcement phase of the case efficiently.

16. Given the size and complexity of this case (the Jail incarcerates more than 2,000 people on a given day and the population is largely pre-trial and thus constantly shifting), there were regularly scheduled weekly team meetings for which counsel also seek fees. These regular meetings involving the litigation team were essential to the efficient management of the case. The pace of counsel's work required close coordination. Class counsel compressed to two months what is typically a year-long investigation before a jail conditions lawsuit is filed. This was necessary given the life-threatening risks the class faced daily from COVID-19 while jailed. This risk is also why Plaintiffs sought emergency relief and then began intensive negotiations that resulted in a comprehensive settlement soon after filing suit. Once the decree was approved by the Court, counsel met as necessary to ensure our clients' rights under the Consent Decree. All multi-person meetings involving Plaintiffs' counsel were necessary for the timely sharing of critical information, revising strategy as required by developments in the case, and updating of tasks and assignments, which required frequent modification to accommodate the urgency required by the claims in this case.

17. I establish the current market rates for all NPP attorneys and staff who billed time in this matter. For Washington, D.C. based attorneys, to ensure that they are reasonable within the Washington, D.C. market, I refer to the rates determined to be reasonable by the Civil Division of the United States Attorney's Office for the District of Columbia, as set forth in the Fitzpatrick

Matrix.[1] In this case, although New York City market rates are higher than those in D.C., in order to seek a reasonable amount, Plaintiffs are seeking rates in accordance with the Fitzpatrick Matrix for all non-Tennessee counsel, although most are based in New York City.

18.  The Laffey Matrix – the predecessor of the Fitzpatrick Matrix -- was created by the U.S. Attorney's Office as evidence of Washington, D.C. market rates in cases in which a fee-shifting statute permits the prevailing party to recover "reasonable" attorney's fees. The Matrix was originally based on the hourly rates allowed by the district court in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds,* 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985). The U.S. Attorney's Office periodically updates the Matrix. The Court of Appeals for the District of Columbia Circuit has stated that parties may rely on the updated Matrix prepared by the United States Attorney's Office as evidence of prevailing market rates for litigation counsel in the Washington, D.C. area, and the lower federal courts in the District of Columbia have used the updated Laffey Matrix when determining whether fee awards under fee-shifting statutes are reasonable. The U.S. Attorney's Office currently uses what is commonly known as the Fitzpatrick Matrix for the same purpose.

19.  The Laffey and Fitzpatrick Matrix rates are considered extremely conservative by bench and bar alike in Washington, D.C. In the actual legal market, D.C. lawyers are charging and being paid at rates well above those reflected in the Fitzpatrick Matrix.

20.  The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(d), provides for a maximum hourly billing rate for attorneys in cases brought by prisoners under certain legal

---

[1] *See* Fitzpatrick Matrix, U.S. Attorney's Office for the District of Columbia, Civil Division, *available at* https://www.justice.gov/usao-dc/page/file/1504361/download.

theories. The maximum hourly rate in 2022 was $237.00.[2] Because this case includes claims under federal disability rights statutes, for which the PLRA rate cap does not apply, intertwined with causes of action that would fall under the PLRA rate cap, Plaintiffs seek an adjusted market rate for compensation – consistent with the Fitzpatrick Matrix – for all attorneys. In the alternative, if the Court determines the capped and uncapped claims are not so intertwined, Plaintiffs seek an adjusted market rate for 50% of the hours for which compensation is sought and the PLRA-capped rate for the other 50%.

Attached to this Declaration as Exhibit E are two ECF filings in the reported case *Graves v. Arpaio*, cited in Plaintiffs' Memorandum of Law and related to fee awards in similar cases.

**The Undesirability of this Case**

21.    Class action cases on behalf of detained persons are very time-consuming and expensive to litigate. Development of the facts is particularly difficult because access to clients and witnesses in detention is so limited, usually requiring—as in this case—many phone and video calls to jail facilities to conduct interviews in challenging and stressful conditions. Even the most meritorious cases are challenging because of the limitations imposed by the Prison Litigation Reform Act and the built-in disadvantage of pitting the credibility of detained persons against that of prison officials and staff.

22.    This case had particular characteristics that made it especially undesirable even within the prison litigation context. The Shelby County Jail is very large and has a shifting, largely pre-trial population. The lawsuit alleged dangerous conditions and substandard practices in multiple aspects of the Jail's operations that contributed to an unreasonable risk of COVID-19

---

[2] CJA Compensation Rates, U.S. Dist. Ct., N.D. Cal., *available at* https://www.cand.uscourts.gov/about/court-programs/criminal-justice-act-cja/cja-compensation-rates/ (visited January 23, 2024).  The 2024 PLRA rate is $258.00.  *Id*.  However, in an exercise of billing judgment, Plaintiffs seek compensation at 2022 rates.

infection of detained people, many of whom are older and/or medically vulnerable. The conditions spanned the booking process for newly admitted detained persons, the housing of detained persons to reduce their risk of either transmitting or being infected with COVID-19, staff practices that could increase the risk of transmission, provision of medical services, all movement of detained persons, and the procedures in the event of a known or suspected case of COVID-19 infection. Counsel had to initiate an investigation at a time their own offices had closed, and they had no on-site access to either the prisoners or facilities, exceptional circumstances brought on by the COVID-19 pandemic that made investigating and litigating this case exceptionally difficult.

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 23rd day of January, 2024.

_____
David C. Fathi