# EXHIBIT E

Larry A. Hammond, 004049
Debra A. Hill, 012186
Sharad H. Desai, 025255
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2100
Phoenix, Arizona 85012-2793
(602) 640-9000
lhammond@omlaw.com
dhill@omlaw.com
sdesai@omlaw.com

Margaret Winter (admitted *pro hac vice*)
Hanh Nguyen (admitted *pro hac vice*)
ACLU National Prison Project
915 15th Street, N.W., 7th Floor
Washington, D.C. 20005
(202) 548-6605
mwinter@npp-aclu.org
hnguyen@npp-aclu.org

Daniel J. Pochoda, 021979
American Civil Liberties Union of Arizona
P.O. Box 17148
Phoenix, Arizona 85011-0148
(602) 650-1854
dpochoda@acluaz.org

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Fred Graves, et al., | ) | No. CV 77-479-PHX-NVW |
| | ) | |
| Plaintiffs, | ) | **PLAINTIFFS' MEMORANDUM** |
| | ) | **OF POINTS AND AUTHORITIES** |
| v. | ) | **IN SUPPORT OF APPLICATION** |
| | ) | **FOR ATTORNEYS' FEES AND** |
| Joseph Arpaio, et al., | ) | **RELATED NON-TAXABLE** |
| | ) | **EXPENSES** |
| Defendants. | ) | |

1       Following this Court's opinion and order on Defendants' Renewed Motion to

2 Terminate the Amended Judgment in this case, Plaintiffs applied to the Court for an

3 award of their attorneys' fees and related non-taxable costs under the Civil Rights

4 Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. (Dkt. 392 and 395). Plaintiffs

5 submit this memorandum, together with supporting affidavits and the itemized statements

6 of the time expended and related litigation expenses incurred by Plaintiffs' counsel,[1] in

7 support of their fees motion. Plaintiffs request recovery of their attorneys' fees in the

8 amount of $1,261,728.76, and of their non-taxable litigation costs in the amount of

9 $157,241.31.[2]

10                       **INTRODUCTION**

11       This is a § 1983 class action filed in 1977 on behalf of all pretrial detainees housed

12 in the Maricopa County Jails, alleging that the conditions of their confinement violated

13 their rights under the Fourteenth Amendment to the United States Constitution. The

14 procedural history of the case is summarized in this Court's October 22, 2008, Findings

15 of Fact and Conclusions of Law. (Dkt. 1634 at 1-3).

16       An evidentiary hearing on Defendants' Renewed Motion to Terminate the

17 Amended Judgment under 18 U.S.C.A. § 3626(b) was held on August 12 - September 5,

18 2008. The claims that Plaintiffs pursued at the hearing fell into two broad categories:

19 (1) Defendants were deliberately indifferent to Plaintiffs' serious medical and mental

20 health needs; and (2) conditions of confinement at the Jails relating to overcrowding,

21 sanitation, safety, exercise and food did not meet constitutional minimums.

22       On October 22, 2008, this Court entered its Findings of Fact and Conclusions of

23 Law (Dkt. 1634), granting in part and denying in part Defendants' Renewed Motion to

24 Terminate. The Court found current and ongoing violations of Plaintiffs' rights under the

25

26           [1] *See* Declaration of Margaret Winter, attached as Ex. A; Declaration of Debra Hill, attached as Ex. B; and Declaration of Daniel Pochoda, attached as Ex. C.

27           [2] Plaintiffs also have submitted a Bill of Costs in the amount of $25,161.23.

28 (Dkt. 1641). To the extent the Clerk denies any of our taxable costs, we will supplement this Memorandum to seek an award for these costs deemed non-taxable.

1   Fourteenth Amendment to necessary care to meet their serious medical and mental health

2   needs, and to a nutritionally adequate diet, adequate sanitation and exercise, and freedom

3   from excessive overcrowding.  *Id*.  The Court held that Defendants were in breach of the

4   Amended Judgment in all of these areas, as set forth in the Court's Findings and

5   Conclusions (Dkt. 1634 at 79), and entered an injunction (Second Amended Judgment,

6   Dkt. 1635), which granted relief on every core issue pursued by Plaintiffs at hearing.  The

7   Court noted that, "As in any case closed by entry of a permanent injunction, enforcement

8   for noncompliance with the permanent injunction may be sought by an aggrieved

9   Plaintiff."  (Dkt. 1634 at 79).  On October 28, 2008, Plaintiffs filed their motion for

10  attorneys' fees and non-taxable expenses under 42 U.S.C. § 1988.  (Dkt. 1640).

## I.    PLAINTIFFS ARE ELIGIBLE AS PREVAILING PARTIES TO RECOVER REASONABLE ATTORNEYS' FEES UNDER THE CIVIL RIGHTS ATTORNEY'S FEE AWARDS ACT

13          The Civil Rights Attorney's Fee Awards Act of 1976 provides that "[i]n any action

14  or proceeding to enforce a provision of [42 U.S.C. § 1983], the court, in its discretion,

15  may allow the prevailing party . . . a reasonable attorneys' fee as part of the costs."  42

16  U.S.C. § 1988 (b).  A plaintiff prevails "when actual relief on the merits of his claim

17  materially alters the legal relationship between the parties by modifying the defendant's

18  behavior in a way that directly benefits the plaintiff."  *Farrar v. Hobby*, 506 U.S. 103,

19  109 (1992).  A material alteration of the legal relationship occurs when the plaintiff

20  "becomes entitled to enforce a judgment, consent decree, or settlement against the

21  defendant."  *Id.* at 113.

22          The purpose of § 1988 is to ensure "that the victims of civil rights abuse will be

23  able to attract competent counsel to represent them."  *Hensley v. Eckerhart*, 461 U.S.

24  424, 429 (1983).  The Supreme Court has construed § 1988 expansively, so as not to

25  "deter otherwise willing attorneys from accepting complex civil rights cases that might

26  offer great benefit to society at large; this result would work to defeat Congress' purpose

27  in enacting § 1988 of encouraging the enforcement of federal law through lawsuits filed

28  by private persons."  *Missouri v. Jenkins*, 491 U.S. 274, 283 n.6 (1989).  Thus, the statute

- 2 -

1  assures that a prevailing plaintiff "should ordinarily recover an attorney's fee unless

2  special circumstances would render such an award unjust." *Id.* (internal quotation marks

3  and citation omitted). This Court has already ruled that "Plaintiffs are prevailing parties

4  on Defendants' Renewed Motion to Terminate the Amended Judgment" and as such "are

5  entitled to an award of attorney fees incurred in defending against the motion." (Dkt.

6  1634 at 79).

7      Plaintiffs are also entitled to recover fees for their counsel's time litigating their

8  claim to fees, both in the trial court and on appeal. *See Davis v. City of San Francisco*,

9  976 F.2d 1536, 1544 (9th Cir. 1992) ("time spent by counsel in establishing the right to a

10  fee award is compensable."); *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896

11  F.2d 403, 407 (9th Cir. 1990) (noting that fees incurred on appeals of a fee application are

12  recoverable under §1988).

13      In this motion, Plaintiffs seek an award of their fees incurred through December 5,

14  2008; Plaintiffs will supplement this request and include with their reply brief the

15  additional fees incurred by Plaintiffs after December 5, 2008.

16  **II.    PLAINTIFFS ARE ENTITLED TO RECOVER REASONABLE
17         ATTORNEYS' FEES UNDER THE PRISON LITIGATION REFORM
           ACT**

18      The Prison Litigation Reform Act ("PLRA") contains restrictions on the

19  availability of attorneys' fees for lawsuits on conditions of confinement. 42 U.S.C.

20  § 1997e(d)(1) provides:

21      In any action brought by a prisoner who is confined to any jail, prison, or other
22      correctional facility, in which attorney's fees are authorized under section 1988 of
        this title, such fees shall not be awarded, except to the extent that-

23      (A) the fee was directly and reasonably incurred in proving an actual violation of
24      the plaintiff's rights protected by a statute pursuant to which a fee may be awarded
        under section 1988 of this title; and

25      (B) (i) the amount of the fee is proportionately related to the court ordered relief
26      for the violation; or (ii) the fee was directly and reasonably incurred in enforcing
        the relief ordered for the violation.

27  Both prongs of the statutory requirement are met here.

28      The fees Plaintiffs seek "[were] directly and reasonably incurred" in proving actual

- 3 -

1   violations of Plaintiffs' rights under the Fourteenth Amendment, meeting the requirement

2   of § 1997e(d)(1)(A).  This Court found multiple violations of Plaintiffs' constitutional

3   rights in the areas of medical care, mental health care, nutrition, sanitation, exercise, and

4   crowding.  Further, the fees were incurred in successfully defending against the

5   termination of the Amended Judgment and having its essential provisions incorporated in

6   the Second Amended Judgment, thereby meeting the requirement of § 1997e(d)(1)(B).[3]

7
8   **III.   PLAINTIFFS ARE ENTITLED TO RECOVER THE FULL AMOUNT
        OF THEIR ATTORNEYS' FEES AND NON-TAXABLE COSTS**

9        The "most critical factor" in determining the reasonableness of a fee award in a

10  civil rights suit "is the degree of success obtained." *Farrar*, 506 U.S. at 114.  The court's

11  duty in a complex case is not to determine fees on a claim-by-claim basis, since "[m]uch

12  of counsel's time will be devoted generally to the litigation as a whole, making it difficult

13  to divide the hours expended on a claim-by-claim basis.  Instead the district court should

14  focus on the significance of the overall relief obtained by the plaintiff in relation to the

15  hours reasonably expended on the litigation." *Hensley,* 461 U.S. at 435.

16       In *Hensley*, Supreme Court considered whether the district court could grant

17  attorney's fees for time expended on claims on which plaintiffs did not prevail.  *Id.* at

18  432.  The Court held that even though a plaintiff was not entitled to an award of fees for

19  time spent on unsuccessful claims that were unrelated to successful claims, *id.* at 434-35,

20  "[w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief

21  should not have his attorney's fee reduced simply because the district court did not adopt

22  each contention raised."  *Id.* at 440.  Consistent with *Hensley*, the Ninth Circuit has held

23

24            [3] *See Webb v. Ada County*, 285 F.3d 829, 835 (9th Cir. 2002) (holding that the
    district court correctly awarded attorney fees for post-judgment work in enforcing and
25  monitoring the court's prior judgment); *Cody v. Hillard*, 304 F.3d 767, 777 (8th
    Cir.2002) (holding that "the inmate class's effort to prolong the efficacy of the remedial
26  decree was time spent 'enforcing' that decree," and is fully compensable); *Balla v.
    Idaho Bd. of Corrections*, 2005 WL 3412806, *4 (D. Idaho 2005) (holding that where
27  inmates successfully defended against the termination of an injunction under the PLRA,
    attorney fees were "directly and reasonably incurred in enforcing the relief ordered" in
28  the prior permanent injunction under 42 U.S.C. § 1997e(d)(1)(B)(ii)).

- 4 -

that "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee," and "a plaintiff may obtain excellent results without receiving all the relief requested." *Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2000) (awarding fees on all claims relating to "improving Oregon's disability determination system" even though the party prevailed on only one claim).

A reasonable fee award in this case is one that will fully compensate Plaintiffs for their counsel's efforts. Plaintiffs achieved excellent results, winning far-reaching injunctive relief for the class on virtually every claim they pursued at the hearing, including medical and mental health care, nutrition, sanitation, exercise, and overcrowding. Although Plaintiffs did not obtain relief on their contention that Estrella, Durango D8 and D9, and the general population housing units at Towers were overcrowded, that claim was closely related to the claim of overcrowding in other parts of the Jail on which Plaintiffs did prevail, and thus their fees are compensable under *Hensley*. The award "should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley,* 461 U.S. at 440.[4]

## IV.    PLAINTIFFS' FEE REQUEST IS REASONABLE

Once a court determines that the plaintiff is the prevailing party under § 1988(b) and is entitled to fees, the court must then calculate a reasonable fee award. First, the court must calculate the "lodestar" figure" by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888 (1984); *see also Gates v. Deukmajian*, 987 F.2d 1392, 1397 (9th Cir. 1992). The Court may adjust that figure upward or downward after considering the twelve factors set forth in *Hensley*, 461 U.S. at 430, n.3, known in the Ninth Circuit as the *Kerr* factors. *See generally Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir.

---

[4] "Rare, indeed, is the litigant who doesn't lose some skirmishes on the way to winning the war. Lawsuits usually involve many reasonably disputed issues and a lawyer who takes on only those battles he is certain of winning is probably not serving his client vigorously enough; losing is part of winning." *Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1053 (1991).

2000), citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975); *Van Gerwen v. Guarantee Mutual Life Co.*, 214 F.3d 1041, 1045-47 (9th Cir. 2000); *see also* Local Rule 54.2(c)(3).  The lodestar figure, however, is the "presumptively accurate measure of reasonable attorneys fees."  *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006); *see also Gates v. Ginexm*, 60 F.3d 520, 535 (9th Cir. 1995) (district court should make downward or upward adjustments to the lodestar only in *rare* cases).

### A.   The Lodestar Amount

Plaintiffs seek $1,261,728.76 in attorneys' fees.  This total represents the labor over a period of six years of three litigation teams--from Osborn Maledon, the ACLU National Prison Project, and the Arizona ACLU--in successfully resisting Defendants' efforts to terminate the Amended Judgment in this case.

### 1.   Plaintiffs expended a reasonable number of hours

Attached to the affidavits of Ms. Winter, Ms. Hill and Mr. Pochoda are task-based itemized statements of time expended by each of the lawyers and staff for whose time Plaintiffs seek compensation, showing the date on which the services were performed; the time devoted to the task; a description of the services provided; and the identity of the attorney, paralegal or other person performing such services.  (*See* Ex. A, Ex. 1; Ex. B, Ex. 1; Ex. C, Ex. 1).[5]  Each of these attorneys has reviewed the time-entries and invoices for the ACLU Prison Project, Osborn Maledon and Arizona ACLU, respectively, and has determined that fees and costs incurred were both necessary and reasonable.  *See* Winter, Hill and Pochoda Declarations, Ex. A-C.  These attorneys also reviewed their time records for entry errors, such as misplaced decimal points and duplicate time entries, and

---

[5] Under Local R. 54.2-e(2)(D), ordinarily air travel time should not be charged. The ordinary rule, however, should not be applied to out-of-town counsel whose expertise was essential to the success of the case.  *See* Jarvi and Hill Declarations, Ex. B and E; *see also Ilick v. Miller*, 68 F.Supp.2d 1169, 1178 (D.Nev. 1999) (holding where lead attorney was from Washington D.C. and had to travel to Nevada, "an attorney is entitled to bill for 'lost productivity' time while traveling, irrespective of whether work is actually completed during travel time"); *Curtis v. Bill Hanna Ford, Inc.*, 822 F.2d 549, 552-53 (5th Cir. 1987) (awarding fees for necessary travel time at counsel's full rate); *Palmigiano v. Garrahy*, 707 F.2d 636, 637 (1st Cir. 1983) (travel expenses are reimbursable where an out-of-state attorney brings to a cases resources that are not available locally).

- 6 -

1   corrected any such errors that they found.  *Id.*

2        Plaintiffs have not sought reimbursement for the considerable time their counsel

3   spent in talking to the media in this case of great public importance, in which the local

4   and even national press was keenly interested, and in which Defendants devoted

5   considerable energy to presenting their own view of the merits to the public through the

6   media.  *See* Winter and Hill Declarations, Ex. A, ¶ 26, and Ex. B, ¶ 25.

7

8
### 2. Plaintiffs' counsel have billed at an hourly rate far below the applicable market rate

9        Plaintiffs seek fees in this application at an hourly rate of $169.50, consistent with

10   the requirements of the PLRA, which provides that "[n]o award of attorneys' fees . . .

11   shall be based upon an hourly rate greater than 150 percent of the hourly rate established

12   under section 3006A of Title 18, for payment of court-appointed counsel [under the

13   Criminal Justice Act (CJA)]."  42 U.S.C. § 1997e(d)(3).  As explained below, application

14   of this formula results in an hourly rate of $169.50.[6]

15        Section 3006A of the CJA authorizes the Judicial Conference of the United States

16   to establish the hourly rate for fees.  Beginning in 1990, the Judicial Conference was

17   "authorized to raise the maximum hourly rates specified in this paragraph . . . at intervals

18   of not less than 1 year each" to reflect cost-of-living adjustments.  *See* Criminal Justice

19   Act Revision of 1986, Pub.L.No. 99-651, § 102(a)(3)(A), 100 Stat. 3642 (1986), codified

20   at 18 U.S.C. § 3006A(d)(1).  For fiscal year 2002, the Judicial Conference raised the

21   authorized maximum payment to $113 per hour for in- and out-of-court work for all

22   districts.  *See* Excerpts from the Report of the Proceedings of the Judicial Conference of

23   the United States (Sept. 19, 2000).

24        Because the current authorized rate in all districts is $113 for all work, the

25

26        [6] Plaintiffs also seek reimbursement for fees incurred by paralegals, summer clerks, investigators and other various professionals whose fees are typically billed to clients.  As set forth in the affidavits of Ms. Hill and Ms. Winter, the work done by these professionals and staff member was reasonable and necessary, and the rates charged for their work is reasonable based on prevailing market rates in Phoenix.  (*See* Ex. A, ¶ 7 and 26; Ex. B, ¶ 20).

- 7 -

maximum PLRA rate is $169.50 per hour (150% of $113.00).  *See Webb v. Ada County*, 285 F.3d 829, 839 (9th Cir. 2002) ((holding that the maximum PLRA rate should be calculated using the hourly CJA rate approved by the Judicial Conference rather than the lower locally-implemented rate); *Hadix v. Johnson*, 398 F.3d 863, 867 (6th Cir. 2005) (same);  *Norwood v. Vance*, 2008 WL 686901 (E.D. Cal. Mar. 12, 2008) (applying $169.50 hourly rate); *Batchelder v. Geary*, 2007 WL 2427989 (N.D. Cal., Aug. 22, 2007) (same).

The $169.50 hourly rate is manifestly reasonable compared to the customary hourly rate in Phoenix, which ranges from $360 to $595 for lawyers of Hill's and Winter's experience.[7]  *See* Hill Declaration, Ex. 3-5 to Ex. B.  "[R]easonable fees' under § 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel."  *Blum,* 465 U.S. at 895 (footnote omitted).  This rule serves the underlying purpose of § 1988, which is to encourage private attorneys to take on meritorious civil rights cases.

### B.    The *Kerr* Factors

After the Court determines the lodestar amount, it is obliged to consider the *Kerr* factors, which have been incorporated in Local Rule 54.2(c)(3), as follows: (A) the time and labor required; (B) the novelty and difficulty of the questions; (C) the skill requisite to perform the legal services properly; (D) the preclusion of employment of the attorney due to acceptance of the case; (E) the customary fee charged in matters of the type involved; (F) whether the fee contracted between the attorney and client is fixed or contingent; (G) any time limitations imposed by the client or the circumstances; (H) the amount of money, or the value of the rights, involved, and the results obtained; (I) the experience, reputation, and ability of counsel; (J) the "undesirability" of the case; (K) the

---

[7] Ms. Winter's and Ms. Hill's experience includes major federal constitutional and civil rights litigation, extensive prisoners' rights litigation and advocacy, and federal appellate and U.S. Supreme Court experience.

- 8 -

1   nature and length of the professional relationship with the client; and (L) awards in

2   similar cases.  "[A]ny other matters deemed appropriate under the circumstances" should

3   also be considered.  Local Rule 54.2(c)(3)(M).

4        Although this is a case in which enhancement of the lodestar might be merited

5   under the *Kerr* factors, Plaintiffs seek no enhancement.  They do, however, submit that it

6   would be unwarranted to award less than the lodestar by fixing counsel's rate at less than

7   the maximum allowable under the PLRA, or by disallowing any of the attorney time for

8   which Plaintiffs seek compensation.

9                        **1.    The Time and Labor Required**

10       The involvement of the National Prison Project ("NPP") and ACLU of Arizona

11  began in 2003, when Defendants filed a pre-hearing memorandum in support of their

12  renewed motion to terminate the Amended Judgment (Dkt. 906).  The NPP and Alice

13  Bendheim, who made an appearance in the case on behalf of ACLU Arizona, assisted

14  Plaintiffs' then-counsel, Ted Jarvi, in the evidentiary hearing on the motion on

15  November 25, 2003, and January 22, 2004, in which Defendants presented their case.

16  Plaintiffs requested a continuance and filed for further discovery.  For the next two years

17  Defendants resisted any further discovery by Plaintiffs and denied access by their experts

18  and counsel to the Jails.  In early 2006, at the request of Mr. Jarvi and NPP, Osborn

19  Maledon joined Plaintiffs' litigation team.  Plaintiffs' counsel continued to seek discovery

20  and hearing.[8]

21       On May 30, 2006, Plaintiffs filed an omnibus motion summarizing all ongoing

22  constitutional violations at Maricopa County Jails, and urging then-presiding Judge Earl

23  Carroll to act on Plaintiff's outstanding discovery motions and grant Plaintiffs their day in

24  court.  No ruling, however, was forthcoming, despite Plaintiffs' repeated efforts to move

25

26           [8] At this point, Ms. Bendheim was retiring and Mr. Jarvi had begun to focus his
     practice on veteran's cases and social security disability claims.  Ms. Bendheim was
27   permitted to withdraw as Plaintiffs' counsel on September 28, 2006 (Dkt. 1143);
     Osborn Maledon and NPP were appointed as class counsel and replaced Mr. Jarvi in
28   that role on March 31, 2008.  (Dkt. 1221).

- 9 -

1  the case to hearing.

2      On April 25, 2008, very shortly after replacing Judge Carroll as the presiding judge

3  in the case, this Court issued an order scheduling discovery and an evidentiary hearing to

4  commence August 12, 2008.  The Court explained that this extraordinarily expedited

5  schedule was unavoidable, given the provisions of the PLRA requiring an automatic stay

6  of relief thirty days from the date of a motion for termination; moreover, the lapse of

7  years without discovery and a hearing on the motion had resulted in Plaintiffs being

8  deprived for more than seven years of any remedy for alleged constitutional violations.

9      Defendants repeatedly placed obstacles in the way of discovery, significantly

10  increasing the amount of time required to prepare for hearing.  Plaintiffs had no choice

11  but to move on a number of occasions for resolutions of discovery disputes, almost all of

12  which the Court ultimately resolved in Plaintiffs' favor.

13      For example, CHS staff, which cannot distinguish between sentenced and non-

14  sentenced detainees in providing treatment because their records do not show sentencing

15  status, allowed Defendants' experts to randomly select medical records for review,

16  regardless of the patients' sentencing status--while barring Plaintiffs' experts' access to

17  records other than those of non-sentenced detainees.  This arbitrary limitation forced

18  Plaintiffs' counsel and experts to go through extraordinarily time-consuming exercises to

19  identify medical records of non-sentenced prisoners for review.  Similarly, CHS, which

20  reported to the NCCHC that they kept chronic care and mental health care lists, insisted

21  to Plaintiffs in discovery that it did not keep chronic care lists or mental health rosters,

22  and that it would be too burdensome to produce such lists.  Defendants required Plaintiffs

23  to spend many hours poring over CHS lists of patients on medications in an effort to

24  deduce from the medications prescribed that the patient might be suffering from a

25  particular medical illness or mental disorder that Plaintiffs' experts needed to investigate.

26      Likewise, although the Court had earlier ruled that Plaintiffs' psychiatric expert

27  could conduct brief private interviews of a number of inmates during his tour of the Jail,

28  on the eve of the tour counsel announced that the Sheriff would not permit any interviews

- 10 -

1    in a confidential setting.  Plaintiffs were required to interrupt the tour to obtain a second

2    ruling from the Court requiring Defendants to permit the interviews.  Defendants even

3    required Plaintiffs to obtain a Court order to permit Plaintiffs' medical expert to take his

4    lunch break in the Jail, rather than having to exit the Jail premises for lunch and re-enter

5    through security (an exceedingly time-consuming process given the very limited time

6    available for the tour).

7            The Court acknowledged on a number of occasions that the expedited scheduling

8    order in this case imposed great hardships on all counsel.  Maricopa County Jails

9    constitute the third largest jail in the nation, with an average daily population in excess of

10   8,000, housed in a sprawling complex encompassing more than five geographically

11   separate facilities.  The issues implicated in the hearing included medical and mental

12   health care, overcrowding, sanitation, safety, exercise, and nutrition.  Discovery involved

13   four multiple-day tours of the five jails by Plaintiffs' medical, psychiatric, correctional

14   and environmental experts; the review of hundreds of thousands of pages of documents;

15   and dozens of depositions.  The hearing itself occupied 13 days over a several-week

16   period, and included the testimony of five experts and dozens of other witnesses.  There

17   was extensive post-hearing briefing.  The time pressures imposed by the necessarily

18   compressed scheduling order made for additional work in some instances, since counsel

19   sometimes literally did not have enough time to determine which of various options

20   would be the most efficient way of carrying out the essential discovery.

21                    **2.        The Novelty and Difficulty of Questions Presented**

22           For purposes of determining fees under § 1988, civil rights cases are presumptively

23   deemed to be as complex as antitrust cases.  *See Blum*, 465 U.S. at 893; *Hensley*, 461

24   U.S. at 430 n.4.  Section 1983 litigation on behalf of prisoners, moreover, is fraught with

25   special difficulties.  Counsel must not only be familiar with the intricacies of §1983 and

26   have a broad understanding of constitutional law, but they must also thoroughly grasp the

27   severe limitations and procedural hurdles imposed on prisoner litigants by Eighth

28   Amendment jurisprudence and by the PLRA.  In this case, the Court recognized the

- 11 -

1  novelty and complexity of the legal issues regarding burden of proof and scope of

2  remedies in the context of a motion to terminate a consent decree under the PLRA.

3              **3.     The Legal Skill Required**

4         Considerable skill was needed to perform the legal services which resulted, in a

5  period of only four months from this Court's April 25, 2008, order setting a discovery

6  schedule and hearing date, in a marshaling of the evidence on a wide range of complex

7  issues in the context of the third-largest jail in the nation, and the presentation of that

8  evidence in a lucid and compelling manner.  Attorney Ted Jarvi, who earlier served as

9  class counsel for Plaintiffs, declares that if the National Prison Project and Osborn

10  Maledon had not agree to take on the case, Plaintiffs could not have prevailed on

11  Defendants' termination motion.  *See* Jarvi Declaration, Ex. E.

12             **4.     The Preclusion of Other Employment**

13        The ACLU's services are sought by prisoners, free citizens, and advocacy groups

14  throughout the nation, but its resources are so limited that it can accept only a tiny

15  fraction of the meritorious cases it is asked to accept.  The ACLU National Prison Project

16  receives much of its funding through § 1988 fee awards and whenever it accepts a case it

17  must forego the opportunity to take some other potentially fee-generating case.  The case

18  required virtually full-time work by NPP's Associate Director Margaret Winter, and

19  NPP's litigation fellow Hanh Nguyen, for four months.  Furthermore, in this particular

20  case the expert fees--totaling more than $112,000, all of which has been paid exclusively

21  by the ACLU, and for which the ACLU can receive no reimbursement--have been so

22  heavy as to seriously impact NPP's ability to take on new cases for some time to come.

23  *See* Winter Declaration, Ex. A, ¶ 4, 27 and 28.

24        Similarly, Osborn Maledon's *pro bono* program was severely strained as a result

25  of incurring such a large amount of *pro bono* fees in one fiscal year.  This case required

26  virtually full-time work by Osborn Maledon partner Debra Hill and associate Sharad

27  Desai over a period of four months, and paralegal Tricia Sherrill for more than two

28  months.  As a result of the very significant outlay of *pro bono* hours during Osborn

- 12 -

1   Maledon's 2008 fiscal year (which ended October 31, 2008), the firm's *pro bono* budget
2   for 2009 has been significantly curtailed.  *See* Hill Declaration, Ex. B, ¶ 29.

3   **5.   The Customary Fee**

4   Plaintiffs' counsel request an hourly rate that is far lower than the hourly rate
5   customarily charged for similar civil rights work by lawyers of comparable skill and
6   experience in Phoenix.  *See* Hill Declaration, Ex. 3-5 to Ex. B; Elizabeth Alexander
7   Declaration, Ex. D.  In addition, the hourly rates charged by Osborn Maledon, NPP and
8   ACLU Arizona for paralegals, law clerks and other professional staff is also reasonable
9   and is within the range of hourly rates charged for these services by staff of comparable
10  skill and experience in Phoenix.  Hill Declaration, Ex. B at ¶ 20, and attached Ex. 3-5.

11  **6.   Whether the Fee Is Fixed or Contingent**

12  Neither the ACLU National Prison Project nor Osborn Maledon will receive any
13  compensation whatsoever for their work in this case except as awarded by this Court or
14  settled by Defendants on account of Plaintiffs' success in the litigation.  Furthermore,
15  because the Plaintiffs are prisoners and generally indigent, the National Prison Project
16  and Osborn Maledon have advanced all expenses of this litigation, and will be reimbursed
17  for litigation expenses, if at all, only if the Defendants are ordered to pay for them.  In
18  addition, no reimbursement from any source is available for experts' fees, by far the
19  heaviest item of expenses in the litigation, which the ACLU has carried in its entirety.
20  *See* Winter Declaration, Ex. A, ¶ 5 and 27.

21  **7.   Time Limitations Imposed by the Client or the Circumstances**

22  This case imposed significant time limitations on Plaintiffs' counsel.  The Court is
23  aware that all counsel worked unusually long hours over an unusually compressed period
24  of time in order to meet the scheduling order dictated by the requirements of the PLRA.

25  **8**.   **The Results Obtained**

26  The results obtained were exceptional.  The Court denied Defendants' motion to
27  terminate and ordered significant relief in every major area in which Plaintiffs sought
28  relief.  Plaintiffs could not have achieved this result without dedicating significant time

- 13 -

1    and effort to the case.

2    **9.    The Experience, Reputation and Ability of the Attorneys**

3    Plaintiffs' lawyers are well known as able and experienced litigators.  This Court

4    has had the opportunity to observe through discovery, motion practice, evidentiary

5    hearing and oral argument the general ability, work product and degree of preparation of

6    Plaintiffs' counsel.

7    The ACLU National Prison Project is the only national organization devoted to

8    representing prisoners in institutional reform litigation.  Attorney Winter, the NPP's

9    Associate Director, has more than thirty years experience in civil rights and constitutional

10   litigation.  For the past fifteen years, she has worked exclusively on prisoners' rights

11   litigation in federal courts throughout the country, at both the trial and appellate level,

12   and has argued a prisoner's rights case before the United States Supreme Court.  *See*

13   Winter Declaration, Ex. A, ¶ 6.

14   Osborn Maledon is a well-known firm in the Phoenix legal community.  The firm,

15   and Mr. Hammond and Ms. Hill, have an excellent reputation.  Ms. Hill, a partner at the

16   firm, has focused her practice on civil rights, criminal defense and commercial litigation

17   matters since 1988.  *See* Hill Declaration, Ex. B, ¶ 3 and Ex. 3-5.

18   **10.    The Undesirability of the Case**

19   A general negative stigma is commonly associated with corrections litigation.  *See*

20   *Alberti v. Klevenhagen*, 903 F.2d 352 (5th Cir. 1990) (affirming lodestar enhancement of

21   hourly rate for plaintiffs' lawyers, since an enhancement was necessary "to attract

22   competent counsel to take on this undesirable prison conditions litigation"); *Ilick*, 68

23   F.Supp.2d at 1177 (finding that the tenth *Kerr* factor was satisfied in a §1988 prison

24   litigation case, due to the "undesirable" nature of the case).

25   For a number of reasons, Plaintiffs' case was considered particularly undesirable

26   by the civil rights bar.  First, §1983 class actions on behalf of prisoners involving the

27   conditions of confinement are exceedingly fact-intensive, time-consuming, and expensive

28   to litigate.  Second, the PLRA, through its draconian provisions on exhaustion of

- 14 -

administrative remedies and its stringent limitations on prospective relief, makes it far more difficult to litigate §1983 cases on behalf of prisoners than for any other class of civil rights litigants.  The PLRA's unique limitations on statutory attorneys' fees, which restrict prisoners' lawyers to an hourly rate that is grossly below market-rate for experienced counsel in all other federal civil rights cases, also makes prisoners' rights cases particularly undesirable even for the civil rights bar.

Plaintiffs' case was particularly undesirable to the private bar because it challenged a wide range of conditions in the third-largest jail in the nation, making the case especially resource-intensive; the cost of retaining competent medical, psychiatric, and correctional experts was enormous, and not recoverable as litigation expenses; and Defendants were able to rely heavily on the Jails' NCCHC accreditation in publicly touting the Jail's compliance with constitutional requirements.  *See* Winter Declaration, Ex. A, ¶ 29.

### 11. The Nature and Length of the Professional Relationship With the Client

Counsel's professional relationship with Plaintiffs dates back to 2003 when Plaintiffs, unable to find any attorneys, locally or anywhere else, who were willing and able to provide the resources necessary to litigate this case, sought the help of the Arizona ACLU.  *See* Jarvi Declaration, Ex. E.

### 12. Awards in Similar Cases

The amount sought here is reasonable in light of awards in similar cases.  *See Lopez v. San Francisco Unified Sch. Dist.,* 385 F. Supp. 2d 981, 1004 (N.D. Cal 2005) (awarding more than $5 million in fees and $900,000 in costs for four-year civil rights litigation that ended with a settlement before trial, where counsel expended more than 20,000 hours).

### 13. Settlement Efforts

Plaintiffs attempted to settle this case prior to trial, but those efforts were unsuccessful.  On July 17, 2008, three weeks prior to the commencement of the hearing,

1   Plaintiffs proposed to Defendants to settle the case through an agreement to appoint a

2   medical/mental healthcare and a corrections monitor, for a period of two years, with

3   quarterly reports to counsel and the Court.  Plaintiffs received absolutely no response to

4   the settlement offer from Defendant Arpaio; apparently counsel for the Board Defendants

5   met with the Board in early August and the Board rejected the settlement offer.  Hill

6   Declaration, Ex. B, ¶ 29.  If Defendants had been willing to settle prior to trial, Plaintiffs

7   would have been spared the substantial fees and costs associated with the 13-day trial

8   occurring over a four-week period, including the expert fees that are not reimbursable

9   under § 1983.[9]

10
11  **IV.    PLAINTIFFS ARE ENTITLED TO AN AWARD OF THEIR
         LITIGATION EXPENSES**

12          A reasonable attorneys' fee includes reimbursement for expenses incurred in the

13  litigation.  *Missouri v. Jenkins*, 491 U.S. at 285 (reasonable attorneys' fee "must also take

14  account of other expenses and profits").  "Under § 1988, the prevailing party 'may

15  recover as part of the award of attorney's fees those out-of-pocket expenses that would

16  normally be charged to a fee paying client.'"  *Dang v. Cross*, 422 F.3d 800, 814 (9th Cir.

17  2005), quoting *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) and *Chalmers v. City

18  of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *as amended*, 808 F.2d 1373 (9th Cir.

19  1987).  Such out-of-pocket expenses are recoverable when reasonably incurred in the

20  litigation.  *See Dang*, 422 F.3d at 814; *United Steelworkers*, 896 F.2d at 407.

21          Itemized lists of the litigation expenses for which Plaintiffs seek reimbursement

22  are attached to the Declarations of Ms. Winter (NPP) and Ms. Hill (Osborn Maledon).

23  *See* Ex. A-B.  Plaintiffs seek reimbursement for postage and mailing, photocopying, CD

24  and DVD copies, express delivery, faxes, long distance telephone and collect calls from

25  class members in jail, airfare, car rental, hotel, meals, payment of expenses associated

26
27          [9] Pursuant to Local Rule 54.2(d)(1), Ms. Hill's Statement of Consultation is
28  attached as Ex. F.  The parties met and conferred, but Defendants' counsel made no
    settlement offer with respect to Plaintiffs' fees and costs.

- 16 -

with deposing Defendants' expert witnesses and ground transportation.  These are expenses that would ordinarily be billed to the clients, *see* Hill Declaration, Ex. B, and thus are included in the calculation of a reasonable attorneys' fees.[10]

Plaintiffs seek reimbursement for non-taxable litigation costs in the following amounts:

|  | **Cost** |
|---|---|
| The ACLU National Prison Project | $  81,583.46 |
| Osborn Maledon | $  75,657.85 |
| ***Total Non-Taxable Costs*** | **$157,241.31** |

## V.    PLAINTIFFS ARE ENTITLED TO INTEREST FROM THE DATE OF JUDGMENT

Once it is determined that a plaintiff is entitled to a fee award under § 1988, interest pursuant to 28 U.S.C. § 1961(a) accrues until the award is paid.  *See Friend v. Kolodzieczak*, 72 F.3d 1386, 1391-92 (9th Cir. 1995) ("Interest runs from the date that entitlement to fees is secured, rather than from the date that the exact quantity of fees is set"); *see also Spain v. Mountanos*, 690 F.2d 742, 747-48 (9th Cir. 1982); *Chalmers v. City of Los Angeles*, 676 F. Supp. 1515, 1520 (C.D. Cal. 1987).  Plaintiffs filed their motion for an award of attorneys' fees in the District Court on October 28, 2008.  Therefore, Plaintiffs should earn interest on their fees from the date of the October 28 Order until the award is paid.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court award them $1,261,728.76 in attorneys' fees and $157,241.31 in litigation expenses, with an award of interest from the date of the order establishing their entitlement to the award.

---

[10] *See Jenkins*, 491 U.S at 285-87 (paralegal time is reasonable expense properly included in a fee award); *Dang*, 422 F.3d at 814 (awarding costs normally charged to fee-paying client); *Harris*, 24 F.3d at 19 (awarding costs including those for expert depositions, postage, investigator, photocopying, hotel bills, meals, messenger service); *Burt v. Hennessey*, 929 F.2d 457 (9th Cir. 1991) (awarding costs including those for paralegal and secretarial assistance); *Chalmers*, 796 F.2d at 1216 (awarding transportation expenses for appearing for argument).

- 17 -

1    DATED this 19th day of December, 2008.

2                                           OSBORN MALEDON, P.A.

3

4                                           By   s/Debra A. Hill
                                                 Larry A. Hammond
5                                                Debra A. Hill
                                                 Sharad H. Desai
6                                                2929 North Central Avenue
                                                 Suite 2100
7                                                Phoenix, Arizona 85012-2793

8                                                Margaret Winter (admitted *pro hac vice*)
                                                 Hanh Nguyen (admitted *pro hac vice*)
                                                 ACLU National Prison Project
9                                                915 15th Street, N.W., 7th Floor
                                                 Washington, D.C. 20005
10

11                                               Daniel J. Pochoda
                                                 American Civil Liberties Union of Arizona
                                                 P.O. Box 17148
12                                               Phoenix, Arizona 85011-0148

13                                               Attorneys for Plaintiffs

14

15                          **CERTIFICATE OF SERVICE**

16        I hereby certify that on December 19, 2008, I electronically transmitted the

17   attached document to the Clerk's Office using the CM/ECF System for filing and

18   transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

19        •   Michele M. Iafrate

20        •   Courtney R. Cloman

21        •   Thomas E. Lordan

22        •   Hanh Nguyen

23        •   Daniel J. Pochoda

24        •   Adam S. Polson

25        •   Dennis I. Wilenchik

26        •   Margaret Winter

27

28

                                    - 18 -

1         I hereby certify that on December 19, 2008, I served the attached document by

2    first-class mail on the Honorable Neil V. Wake, United States District Court, Sandra

3    Day O'Connor U.S. Courthouse, Suite 524, 401 West Washington Street, SPC 52,

4    Phoenix, AZ 85003.

5

6

7                                  s/Karen L. McClain

8    2387041

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 19 -

Case 2:20-cv-02359-SRB-nato   Document 3763-7   Filed 01/24/24   Page 22 of 24
Case 2:77-cv-00479-NVW   Document 1826   Filed 07/01/09   Page 22 of 23
PageID 7460

Larry A. Hammond, 004049
Debra A. Hill, 012186
Sharad H. Desai, 025255
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2100
Phoenix, Arizona 85012-2793
(602) 640-9000
lhammond@omlaw.com
dhill@omlaw.com
sdesai@omlaw.com

Margaret Winter (admitted *pro hac vice*)
Hanh Nguyen (admitted *pro hac vice*)
ACLU National Prison Project
915 15th Street, N.W., 7th Floor
Washington, D.C. 20005
(202) 548-6605
mwinter@npp-aclu.org
hnguyen@npp-aclu.org

Daniel J. Pochoda, 021979
American Civil Liberties Union of Arizona
P.O. Box 17148
Phoenix, Arizona 85011-0148
(602) 650-1854
dpochoda@acluaz.org

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Fred Graves, et al., | ) | No. CV 77-479-PHX-NVW |
| | ) | |
| Plaintiffs, | ) | **PLAINTIFFS' AMENDED** |
| | ) | **APPLICATION FOR** |
| v. | ) | **ATTORNEYS' FEES AND** |
| | ) | **RELATED NON-TAXABLE** |
| Joseph Arpaio, et al., | ) | **EXPENSES FOR WORK** |
| | ) | **PERFORMED DECEMBER 6, 2008** |
| Defendants. | ) | **THROUGH APRIL 30, 2009** |
| | ) | |

Pursuant to the Court's Order on June 29, 2009 (Dkt. # 1823), Plaintiffs submit

their amended application for attorneys' fees and related non-taxable expenses for

work performed from December 6, 2008 through April 30, 2009.  Plaintiffs have

revised their attorneys' fees request to reflect an hourly rate of $169.50 from

Case 2:20-cv-02359-SHL-atw   Document 362-7   Filed 01/24/24   Page 23 of 24
Case 2:??-cv-?0??? NVW   Document 362-?   Filed 07/01/09   Page 2 of 3
PageID 7461

December 6, 2008 through December 31, 2008, and an hourly rate of $177 from January 1, 2009 through April 30, 2009.   *See* Exhibit 1 (Declaration of Hanh Nguyen regarding the National Prison Project's fees) and Exhibit 2 (Declaration of Debbie Hill regarding Osborn Maledon's fees).  Plaintiffs' non-taxable expenses remain as modified in their Reply on June 25, 2009 (Dkt. # 1822).

Taking into account the foregoing changes, Plaintiffs request that the Court award them $97,029.55 in attorneys' fees, and $4970.52 in litigation expenses, for work performed from December 6, 2008 through April 30, 2009, with statutory interest from the date the Court's order is entered until the award is paid.

DATED this 1st day of July 2009.

By  s/Hanh Nguyen
Margaret Winter (admitted *pro hac vice*)
Hanh Nguyen (admitted *pro hac vice*)
ACLU National Prison Project
915 15th Street, N.W., 7th Floor
Washington, D.C. 20005

Larry A. Hammond
Debra A. Hill
Sharad H. Desai
2929 North Central Avenue
Suite 2100
Phoenix, Arizona 85012-2793

Daniel J. Pochoda
American Civil Liberties Union of Arizona
P.O. Box 17148
Phoenix, Arizona 85011-0148

Attorneys for Plaintiffs

Case 2:20-cv-02359-SRL-nvw   Document 373-7   Filed 01/24/24   Page 24 of 24
Case 2:77-cv-00479-NVW   Document 1626   Filed 07/01/09   Page 3 of 3
PageID 7462

**CERTIFICATE OF SERVICE**

I hereby certify that on July 1, 2009, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

- Michele M. Iafrate
- Courtney R. Cloman
- Thomas E. Lordan
- Hanh Nguyen
- Daniel J. Pochoda
- Adam S. Polson
- Dennis I. Wilenchik
- Margaret Winter

I hereby certify that on July, 2009, I served the attached document by first-class mail on the Honorable Neil V. Wake, United States District Court, Sandra Day O'Connor U.S. Courthouse, Suite 524, 401 West Washington Street, SPC 52, Phoenix, AZ 85003.

s/Alicia Gathers