# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BONGO PRODUCTIONS, LLC, and ROBERT BERNSTEIN, ) ) ) Plaintiffs, ) ) ) v. ) ) ) CARTER LAWRENCE, Tennessee State Fire Marshal, in his official capacity, et al., ) ) ) Defendants. ) | Civ. Action Case No. 3:21-cv-00490 Judge Trauger |

**MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION
FOR ATTORNEYS' FEES, COSTS, AND EXPENSES**

As the representatives of the prevailing party in this litigation, the ACLU and the ACLU of Tennessee ("ACLU-TN") respectfully submit this memorandum in support of their Motion for Attorneys' Fees, Costs, and Expenses.

**FACTUAL AND PROCEDURAL BACKGROUND**

In April 2021, the state of Tennessee enacted a law to compel businesses to adopt the state's ideological message by posting signs that are controversial, confusing, and designed to incite fear and anti-transgender animosity. Tennessee Code Annotated § 68-120-120 (2021) ("the Act" or "H.B. 1182"). Specifically, the Act requires any business with a formal or informal policy of allowing transgender people to use the restroom that accords with their identity to post a warning sign with large red and yellow "NOTICE" text at the top, and boldface black block letters on a white background stating that "THIS FACILITY MAINTAINS A POLICY OF ALLOWING THE USE OF RESTROOMS BY EITHER BIOLOGICAL SEX, REGARDLESS OF THE DESIGNATION ON THE RESTROOM." The Act compels Plaintiffs to engage in this unwanted controversial speech or risk six months' imprisonment and/or a fine of up to $500, as

well as other enforcement actions or civil penalties under Title 68, Chapter 120 of the Tennessee Code.

Plaintiffs Bongo Productions, LLC, and Robert Bernstein are a Tennessee business and the founder and owner of that business. Bernstein Decl. ¶¶ 1–2, ECF No. 7-1. Plaintiffs operate a facility, a restaurant named Fido, with an informal policy allowing transgender people to use the restrooms that accord with their identity. *Id.* at ¶ 11. Plaintiffs pride themselves in being strong supporters of transgender people, and greatly value the patronage and support of transgender people who have been among Plaintiffs' customers, friends, family, and employees. *Id.* at ¶¶ 6-8, 14. As such, the Act compels Plaintiffs to speak a message to the public that is offensive to them, and with which they strongly disagree.

Plaintiffs filed this lawsuit and moved for preliminary injunction on June 25, 2021, alleging that the Act violated their First Amendment rights. (ECF Nos. 1, 6). This Court granted the preliminary injunction on July 9, 2021, writing that the Act represented a "brazen violation," of the principles at the core of the First Amendment's prohibition against government compelled speech. Mem. Op. at 31, ECF No. 22. The Court found that "the Act unambiguously mandates that the plaintiffs and other regulated parties speak a particular message, in public, that they have shown, with evidence, that they earnestly consider to be anathema to their beliefs and values." *Id.* at 18.

After conducting written and oral discovery, Plaintiffs moved for summary judgment on January 31, 2022 (ECF. No. 35). The Court granted Plaintiffs' motion on May 17, 2022, permanently enjoining remaining Defendants from enforcing the Act and declaring that enforcement of the Act would violate the First Amendment to the United States Constitution. (ECF. No. 43). This Court's Order represents full and complete relief. No appeal was taken.

2

**LEGAL STANDARD**

Prevailing parties in civil rights actions brought under 42 U.S.C. § 1983 are entitled to the award of reasonable attorneys' fees and expenses. 42 U.S.C. § 1988(b). The purpose of Section 1988 is to ensure "'effective access to the judicial process' for persons with civil rights grievances." *Henslev v. Eckerhart*, 461 U.S. 424, 429 (1983); *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 559 (2010) ("Section 1988 serves an important public purpose by making it possible for persons without means to bring suit to vindicate their rights.") The presumption is that absent "special circumstances" that would render an award "unjust," a prevailing party "must" be awarded attorneys' fees and expenses. *Indep. Fed. of Flight Attendants v. Zipes,* 491 U.S. 754, 759, 761 (1989).

This Court has discretion in determining what constitutes a reasonable fee under the circumstances of the case. *Blanchard v. Bergeron*, 489 U.S. 87, 96 (1989). Given the Court's familiarity with the litigation and that a district court's determination of a reasonable fee is given significant deference, no evidentiary hearing is necessary. *Wilson-Simmons v. Lake County Sheriff's Department*, 207 F.3d 818, 823 (6th Cir. 2000).

**ARGUMENT**

This litigation successfully prevented the enforcement of an unconstitutional law and affirmed the First Amendment rights of businesses and business owners who opposed the offensive message contained in the Act. This outcome was the result of hundreds of hours of labor from a legal team of ACLU and ACLU-TN staff working remotely across the country.

In 2021 and 2022, the attorneys at these organizations crafted the legal theories that provided the foundation for this litigation, drafted motions and obtained a preliminary injunction, engaged in substantive written discovery and document production, and successfully filed a motion

for summary judgment. The legal services rendered involved substantial research regarding complex and relatively novel legal arguments. This litigation required considerable time and resources on behalf of the representative organizations.

The representative organizations have expended a cumulative total of 280.9 hours during the course of their representation. This amount is reasonable and is supported by the declarations of several prominent Nashville attorneys. Detailed descriptions of the time entries for each attorney working on this matter bear out the reasonableness of the time spent on representation. As the declarations demonstrate, the rates used are reasonable given the reputation and experience of each of the attorneys, the results obtained in this matter, and the nature of this case.

The representative organizations move this Court for an award of reasonable attorneys' fees under 42 U.S.C. § 1988 in the following amounts:

| ACLU | $ | 76, 917.50 |
| ACLU – Tennessee | $ | 21, 649.00 |
| **Total** | **$** | **98, 566.50** |

In addition, the amount of costs and expenses to be reimbursed is $6,982.25. The representative organizations are contemporaneously submitting a Bill of Costs ($2, 044.75), *attached as* Ex. 2, and an invoice for the services of Dr. Taylor ($4,937.50), *attached as* Ex. 3, which list all reimbursable costs. As demonstrated below, all of these values are reasonable and justified by established law.

I.      **Plaintiffs Prevailed On Their Claim Resulting in Full and Complete Relief.**

The "most critical factor" in determining the reasonableness of a fee award is the "degree of success obtained." *Hensley*, 461 U.S. at 436. Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. *Id.* at 435. "[A] plaintiff qualifies as a prevailing party when the plaintiff wins relief on the merits in the form of a court order, consent

decree, or judicially-enforced settlement that materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Jones v. Haynes*, 350 F. Supp. 3d 691, 695 (M.D. Tenn. 2018)(citing *Sole v. Wyner*, 551 U.S. 74, 82 (2007); *see also Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992).

Plaintiffs have undoubtedly obtained excellent results in this matter and prevailed on their claim. Plaintiffs first prevailed at the preliminary injunction stage wherein the Court found Plaintiffs' claim had a strong likelihood of success on the merits because the Act was a "brazen violation" of the First Amendment. (Mem. Op., ECF. No. 22, PAGE ID #231). Plaintiffs then prevailed on the merits at the summary judgment stage. This Court granted each of Plaintiffs' requests for relief by (1) ordering Defendants to take no action to enforce the Act and (2) declaring the enforcement of the Act would violate the First Amendment. (Order, ECF. No. 43, PAGE ID #1171). Plaintiffs are the clear prevailing party in this action.

The Court's Order Granting Summary Judgment (ECF. No. 43) represents full and complete relief to Plaintiffs. Before the lawsuit, Plaintiff business and its owner would have been forced under criminal penalty to display a sign with which they vehemently disagreed. At the end of this litigation, no business in Tennessee, including Plaintiffs, can be forced by Defendants to display this message. This is a "material alteration" of the legal relationship of the parties that directly benefits Plaintiff and is enforced through an enduring court order. *See Farrar v. Hobby*, 506 U.S. at 111-12.

**II.     The Amount of Attorneys' Fees Sought Are Reasonable.**

The primary method for determining a reasonable fee is the so-called "lodestar" method, which multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Hensley*, 461 U.S. at 433. A "strong presumption" favors the prevailing counsel's entitlement

5

to the lodestar fee. *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). And because civil rights litigation often has significant benefits far beyond immediate monetary relief, as in this matter, the availability of attorneys' fees does not depend on the amount or existence of any monetary recovery. *See City of Riverside v. Rivera*, 477 U.S. 561, 575-76 (1986) ("Congress recognized that reasonable attorney's fees under § 1988 are not conditioned upon and need not be proportionate to an award of money damages."). In addition to counsel's time, reasonable attorneys' fees should encompass the work of paralegals and law clerks who provide critical assistance to the litigation of these matters. *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285-86 (1989). Attached as Exhibit A is a chart reflecting the number of hours worked by Counsel, their respective hourly rates, and the resulting "lodestar" fee of $98, 566.50. Details regarding these hours and the respective experience of Counsel are reflected in the attached declarations. *See* Decl. of Emerson Sykes; Decl. of Rose Saxe; Decl. of Malita Picasso; Decl. of Stella Yarbrough.

    **A. The Hours Expended Are Reasonable.**

In determining the lodestar under Section 1988, the first question is whether the hours spent are reasonable. *See Hensley*, 461 U.S. at 433. Plaintiffs bear the burden of establishing the reasonableness of the hours claimed by submitting adequate documentation of the hours worked. *Id.* at 437. Plaintiff has submitted the billing records for each attorney, which accounts for the time spent on this matter, adequately documenting the need for, and reasonableness of, the hours actually charged. *See* Decl. of Emerson Sykes; Decl. of Rose Saxe; Decl. of Malita Picasso; Decl. of Stella Yarbrough.

As the Court is aware, this matter involved complex and novel constitutional questions. Investigating and litigating this matter required a high level of expertise on behalf of the attorneys involved—ranging from complex First Amendment jurisprudence, complex scientific and

6

linguistic understanding of terms used in the Act, various immunities and defenses, and federal civil rights litigation more broadly. As reflected in their declarations, Counsel and staff at each of the organizations providing legal services to Plaintiffs in this matter all bring a depth and breadth of experience that was required to address all facets of this litigation. The strategic nature of this case required frequent interaction among Counsel. *See, e.g.*, *Glover v. Johnson*, 138 F.3d 229, 252–53 (6th Cir. 1998) (holding that reasonable consultation among counsel is properly compensable). The attorneys involved in this matter divided work over time, as reflected in the attached hours, to ensure that work was not duplicative. For example, staff at ACLU crafted the majority of the pleadings and conducted legal research and developed expert testimony, while ACLU-TN investigated the application of the Act and took the lead on developing client relationships and communicating with clients.

In addition, the hours sought to be compensated by undersigned Counsel represent a reduction in the total number of hours actually spent on this matter. As indicated in the attached declarations, Counsel for Plaintiffs have decided not to seek an award for several categories of fees. For example, Counsel for Plaintiffs have not sought reimbursement for the hours of labor performed by paralegal or other support staff. Counsel has also not sought hourly fees for more than one attorney from each organization where multiple attorneys staffed a joint-counsel teleconference. Counsel have made reductions in their time in accordance with the same review of billing records that they would perform before sending a bill to any fee-paying clients. Each of the undersigned attorneys have submitted a declaration setting out their actual hours expended on this matter and a determination that the amount of time spent on this litigation is reasonable. *See* Decl. of Emerson Sykes; Decl. of Rose Saxe; Decl. of Malita Picasso; Decl. of Stella Yarbrough.

B. **The Hourly Rates Identified Are Reasonable**

As to the second prong of the lodestar determination, the requested hourly rates are reasonable. The Court determines reasonableness of hourly rates by reference to the "prevailing market rates in the relevant community." *Blum v. Stenson*, 465, U.S. 886, 895 (1984). The prevailing market rate determination takes into account the "training, background, experience and skill of the individual attorney." *Northcross v. Board of Ed. of Memphis City Schools*, 611 F. 2d 624, 638 (6th Cir. 1979). Where attorneys are in private practice, a court can look to the attorney's actual hourly rate at which the attorney bills and collects fees from paying clients for guidance. *Id.*; *see also Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995) (finding that "normal billing rates usually 'provide an efficient and fair short cut for determining the market rate.'").

During the course of this litigation, there were primarily five attorneys who worked on this matter. The hourly rates for each of these attorneys as well as the number of hours actually expended on the case are attached in Exhibit A.

These rates are also consistent with the hourly rates awarded in other similar cases to attorneys with similar experience. *See, e.g., Hanson v. McBride*, 3:18-CV-00524, 2020 WL 5893825, at *8 (M.D. Tenn. Oct. 2, 2020) ("$475 is within the realm of what is ordinary and reasonable for experienced litigation counsel in this district."); *Rodriguez et al. v. Providence Comm. Corr., et al.*, 3:15-cv-01048, Amended Order Granting Final Approval of Class Settlement (July 18, 2018) (approving rates for counsel between $450 and $700); *Howard v. Tennessee*, 3:16-CV-2829, 2018 WL 10151080, at *5 (M.D. Tenn. Dec. 14, 2018) (awarding rate of $400 to law firm associate, and rates between $450–$600 an hour to law firm partners); *Siddle v. Crants*, No. 3:09-CV-00175, 2013 WL 1245678, at *19–25 (M.D. Tenn. Mar. 26, 2013) (finding rates of $400, $490, $550, and $575 per hour to be reasonable for partners).

**III.   The Court Should Grant Reimbursement of Minimal Costs and Expenses.**

"Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(a). "Section 1988 permits district courts to award those 'incidental and necessary expenses incurred in furnishing effective and competent representation' as part of the award of attorney fees." *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 827 (6th Cir. 2013) (quoting *Sigley v. Kuhn*, 205 F.3d 1341, 2000 WL 145187, at *8 (6th Cir. 2000)). Recoverable expenses include those out-of-pocket costs incurred by the attorney, which are normally charged to fee-paying clients in the normal course of providing legal services. *Id.*

Here, Counsel for Plaintiffs seeks only minimal expenses, including filing fees and minimal costs related to discovery. All of these costs have been paid, and all were reasonable and necessary for adequate representation of the Plaintiffs in this matter. Counsel has not sought reimbursement for other expenses typically awardable in these circumstances, such as phone charges, copying, legal research platforms, or postage.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court authorize the compensation of Counsel in the amount of $ 98, 566.50, and to grant approval of the payment of expenses in the amount of $2,044.75. As the representatives of the party who obtained full and complete relief on every count, Counsel are entitled to their reasonable fee as described above.

Dated September 14, 2022.

                                        Respectfully submitted,
                                        */s/ Stella Yarbrough*

                                        Stella Yarbrough (BPR # 33637)
                                        Thomas H. Castelli (BPR # 24849)
                                        ACLU (Nashville Office)

PO Box 120160
Nashville, TN 37212
(615) 320-7142 Ext. 303
syarbrough@aclu-tn.org

Rose Saxe*
Emerson Sykes*
Malita Picasso*
American Civil Liberties
Union Foundation
125 Broad Street, 17th Floor
New York, NY 10004
Tel: (212) 549-2500
rsaxe@aclu.org
esykes@aclu.org
mpicasso@aclu.org

*Attorneys for Plaintiff*

*Admitted *pro hac vice*

10

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2022, a true and correct copy of the foregoing report was served on the Tennessee Attorney General's Office, counsel for all Defendants, via the Court's ECF/CM system.

Alexander S. Rieger
Rainey A. Lankford
Office of the Attorney General and Reporter
P.O. Box 20207
Nashville, Tennessee 37202-0207
Alex.rieger@ag.tn.gov
Rainey.lankford@ag.tn.gov

                                                    */s/ Stella Yarbrough*
                                                    Stella Yarbrough

# Exhibit 1

Attorneys' Fees

| Name | Position | Organization | Hours | Rate | Total |
|---|---|---|---|---|---|
| Thomas H. Castelli | Attorney | ACLU-Tennessee | 23.60 | $475.00 | $11, 210 |
| Stella Yarbrough | Attorney | ACLU-Tennessee | 28.60 | $365.00 | $10, 439 |
| Emerson Sykes | Attorney | ACLU | 41.6 | $450 | $18, 720 |
| Rose Saxe | Attorney | ACLU | 64.4 | $475 | $30, 590 |
| Malita Picasso | Attorney | ACLU | 122.7 | $225.00 | $27, 607.50 |
| **Total** | | | | | $98, 566.50 |