## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| **FAVIAN BUSBY, ET AL.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **No.: 2:20-CV-02359-SHL** |
| | ) | |
| **FLOYD BONNER, JR., ET AL.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____

### DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'
### MOTION FOR ATTORNEYS' FEES

_____

Defendants respond in opposition to Plaintiffs' Motion for Attorneys' Fees. (ECF No. 373.)

### BACKGROUND

When the parties resolved this case, they reached an agreement by entering into a Consent Decree. ("the Decree") (ECF No. 161-2, PageID 3204.) In conjunction with the Decree, the parties also executed a Release and Settlement Agreement ("the Agreement"). (ECF No. 161-3, ¶ 15). Per the Agreement, the parties agreed that "no fees, attorney fees, or expenses shall be requested or awarded to either party except as provided for in the Consent Decree." (*Id*.) The parties further agreed that the "Decree shall not in any way be construed as an admission by any party of any wrongful conduct whatsoever against any person or party." (ECF No. 161-2, PageID 3204, 3211, ¶ 31.) Reiterating this point, the Decree provided that no party would be deemed a "prevailing" or "successful party." (*Id*., ¶ 30.)

The Decree provided a means by which the parties could seek attorneys' fees in limited situations for certain, specific efforts taken related to enforcing the Decree after the entry of the Decree. (ECF No. 161-2, ¶ 23.) But importantly, before Plaintiffs were permitted to seek any

enforcement that could result in an attorneys' fee award, the Decree required Plaintiffs to attempt

to resolve the issue(s) with Defendants *prior to* bringing a motion before the Court. (ECF No. 161-

2, PageID 3209, ¶ 22.) The Decree provided that subsequent to completing the dispute resolution

process, Plaintiffs were entitled to seek enforcement of the Decree "if Defendants fail to comply

with any terms" of the Decree. (ECF No. 161-2, ¶ 23.) And if they obtained relief from the Court

as a result of seeking enforcement of the Decree under Paragraph 23, they could seek an award of

reasonable attorneys' fees and costs incurred in seeking such enforcement. (*Id.*)

On May 19, 2021, Plaintiffs initiated their first attempt at enforcing the Decree with this

Court. They did so by filing their Motion to Enforce and Modify the Consent Decree. (ECF No.

216-1.) But prior to doing so, they failed to follow the Decree's requirement that they engage in

the dispute resolution practice. (ECF No. 220, PageID 3794-96.) And in the motion, Plaintiffs

sought enforcement of the Decree for many issues that *were not* mandated or even considered by

the Decree. (*Id.*) Defendants responded to this motion by arguing, among other things, that the

issues were not properly before the Court because Plaintiffs had not initiated or completed the

dispute resolution practice and that the many of the raised concerns were not even mandated or

considered by the Decree. (ECF No. 219.)

On June 2, 2021, prior to the Court ruling on Plaintiff's Motion, Defendants moved to

terminate the Decree. (ECF No. 218.) Ultimately, this Court denied Defendants' Motion to

Terminate (ECF No. 258), and Defendants appealed. (ECF No. 259.) While the Motion to

Terminate was on appeal, Plaintiffs asked the Court to retain jurisdiction over the provisions of the

Decree not concerning termination. (ECF No. 264.) Defendants filed a response, wherein they

again reiterated that some of the issues Plaintiffs raised in their Motion to Enforce were not

contemplated by the Decree. (ECF No. 266.)

Later, on November 2, 2021, Plaintiffs filed their Motion to Bifurcate Motion to Enforce and to Modify the Consent Decree. (ECF No 274.) Plaintiffs went well-beyond requesting the enforcement of the Decree be bifurcated—which Defendants did not procedurally oppose—and instead rehashed their allegations that Defendants failed to comply with the Decree, necessitating Court intervention. (ECF No. 274-1.) In so doing, Plaintiffs repeated prior requests that the Court order that Defendants offer adequate education materials and non-punitive incentives and order that Defendants reinstate a temporary toll-free number. (*Id*. at PageID 5196-97). But additionally, Plaintiffs raised *new* issues that were never part of the original Motion to Enforce. For example, they criticized the Jail's staffing levels and Defendants' alleged refusal to hire an onsite clinical psychologist—topics wholly unaddressed by the Decree and topics of which they had never raised via the dispute resolution practice. (*Id*. at PageID 5191-92, 98.) And for the first time, Plaintiffs mentioned a concern about peer education. (*Id*. at PageID 5196.)

The Court granted Plaintiffs' request for bifurcation and provided Defendants until November 15, 2021, to respond. (*Id*.) Defendants responded, explaining, among other things, that Plaintiffs' request for enforcement of a toll-free number and adequate education materials lacked foundation in the Decree. (ECF No. 281.). Once again, Defendants also noted that Plaintiffs had failed to comply with the dispute resolution practice prior to seeking enforcement. (*Id*.)

After Defendants' response, this Court held a status conference on November 23, 2021. (ECF No. 285.) At the status conference, the Court directed the parties "to confer and submit an agreed upon list of issues that plaintiff believes are not being enforced in the decree" by December 3, 2021. (*Id*.). Additionally, the Court set a separate status conference for December 13, 2021, to discuss whether a hearing was needed on the Motion to Enforce and what the "focus" of such a hearing should be. (ECF Nos. 285, 286.)

Per the Court's instructions, on December 3, 2021, the parties filed a Joint Notice of Outstanding Issues for Enforcement. (ECF No. 291.) In the Joint Notice, Plaintiffs informed the Court that they intended to seek enforcement through the Decree of, among other items, (1) vaccine incentives and education; (2) mandatory overtime to ensure sufficient detainee recreation time; (3) increased out-of-cell time; (4) reinstatement of the toll-free hotline; and (5) hiring of a clinical psychologist. (*Id.*)

On January 3, 2022, the Court denied in part Plaintiff's Motion to Enforce. (ECF No. 297.) Specifically, the Court found that the Decree did not contemplate the implementation of a toll-free hotline because "the Settlement Agreement and the Consent Decree represent the full extent of Defendants' obligations," and "neither discuss the hotline[.]" (ECF No. 297, PageID 5274-75.)

On January 10, 2022, Plaintiffs filed a Motion for Discovery on an Expedited Basis. (ECF No. 299.) The Court then directed the parties to meet and confer the week of January 31, 2022, "to discuss any remaining issues." (ECF No. 302.) After the meet and confer, the parties were instructed to submit a report containing the remaining issues. (*Id.*). On February 7, 2022, Defendants submitted their Report on Remaining Issues Related to Plaintiffs' Pending Motion to Enforce the Consent Decree. (*Id.*) In the report, Defendants outlined the remaining issues between the parties related to the Motion to Enforce and noted that many of the issues were not properly before the Court because they fell beyond the bounds of the Decree. (*Id.* at PageID 5308-15.) Plaintiffs also filed a status report reiterating their demands. (ECF No. 306.)

On February 11, 2022, the Court granted in part and denied in part Plaintiffs' January 10, 2022, Motion for Discovery on an Expedited Basis. (ECF No. 309.) The Court granted Plaintiffs' request for expedited discovery on production of documents related to vaccine education generated after November 1, 2022. (*Id.* at PageID 5407-08.) However, the Court denied Plaintiffs' motion

concerning alleged staffing issues, detainee's out-of-cell time, detainee recreation time, and the hiring of a clinical psychologist. (*Id*. at PageID 5411-14.) The Court reasoned that the there was no evidence that the parties had engaged in the Decree's dispute resolution process on any of the above topics as required prior to Plaintiffs seeking enforcement. (*Id*. at 5411.) As such, the Court found that the alleged staffing issues, detainee's out-of-cell time, and detainee recreation time were not "properly before the Court as [] enforcement issue[s]." (*Id*. at PageID 5413.) After doing so, the Court ordered the parties to "file a joint position paper as to any remaining contested issues."

On February 25, 2022, the parties submitted their Joint Position Paper on Remaining Issues. (ECF No. 313.) Despite the fact that the Court previously noted that Plaintiffs' sought enforcement concerning education materials, nonpunitive incentives, out-of-cell time, staffing issues, recreation time, and the hiring of a clinical psychologist were likely not ripe for judicial review because the dispute resolution process had not been followed, Plaintiffs continued to seek enforcement of each issue and requested a hearing to argue the enforcement of each issue. (*Id*.)

On March 30, 2022, this Court almost wholly denied Plaintiffs' Motion to Enforce. (ECF No. 316.) In fact, the Court denied *every request* in Plaintiffs' motion, choosing only to order Defendants to provide the documentation requested in Inspector Wells' Report related to the Jail's small group meetings and plans for the development of its peer education program.[1] (*Id*. at PageID 5833.) The only other "relief" granted in the entire Order was allowing Plaintiffs to conduct "limited deposition testimony" to determine the Expeditor's efforts on behalf of Class and Subclass Members in response to their separate request for expedited discovery.[2] (*Id*. at PageID 5836.) Concerning vaccination incentives, the Court denied enforcement, as the Court declined to

---

[1] Notably, Defendants were already providing Wells the documentation the Court ordered Defendants to provide. And importantly, this related to a request Plaintiffs made for the first time on November 2, 2021. (ECF No. 274-1.)
[2] Ultimately, although the Expeditor's deposition was taken, no relief was awarded by this Court concerning the Expeditor or her testimony.

"assume future noncompliance" when the Inspector provided "no reason to raise immediate concerns." (*Id*. at PageID 5833-34.) And on the remaining issues, the Court noted that the Decree did not contemplate their enforcement. (*Id*. at PageID 5837.) Regardless, the Court held that enforcement was not necessary even if somehow allowed under the Decree, as the record revealed that Defendants had taken actions to address staffing levels, detainee recreation time, and out-of-cell time. (*Id*. at PageID 5839-40.) As a result, the Court ultimately held that "the Court's jurisdiction is restricted to these matters and declines to expand the scope of the Consent Decree. Even if the Court ultimately agrees that certain conditions should be improved . . . , this action is not the appropriate avenue to advocate for that improvement." (*Id*. at PageID 5840.) Concerning the clinical psychologist, the Court likewise found that enforcement of the issue "exceed[ed] the bounds of the Parties' agreement." (*Id*. at PageID 5842.)

## ARGUMENT

### I.    PLAINTIFFS' MOTION IS GOVERNED BY THE PARTIES' AGREEMENT AND THE DECREE AND BY FILING THEIR PRESENT MOTION PLAINTIFFS BREACHED THE AGREEMENT.

"Because settlement agreements are contracts, the formation and enforceability of a settlement agreement is controlled by state law." *McCormack v. City of Westland*, 2019 U.S. App. LEXIS 11125, at *6 (6th Cir. Apr. 15, 2019). In Tennessee, courts look to "plain meaning of the words of the document to ascertain the parties' intent." *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006). "If the language is clear and unambiguous, the literal meaning controls the outcome of the dispute," and no further inquiry into the meaning of the contract is needed. *Id*.

Meanwhile, "a consent decree is essentially a settlement agreement subject to continued judicial policing." *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983). A consent decree can be characterized as "both a contract and … a judicial act." *Id*. As noted by the Sixth Circuit in this case, the Court must "confine [itself] to the four corners of the consent decree" and should "not

focus on 'what might satisfy the purposes of one of the parties to it.'" *Busby v. Bonner*, 2022 U.S. App. LEXIS 34673, at *13 (6th Cir. Dec. 14, 2022). And as already held by this Court, the Decree's terms must be "strictly construed." (ECF No. 316 (citing *Armour & Co.*, 402 U.S. at 682).) Like the parties' Agreement, because the Decree was formed in Tennessee, Tennessee law governs its interpretation. *Id*.

### A. Plaintiffs are not entitled to fees outside the Decree because they are not the "prevailing party."

Here, the parties entered into an Agreement resolving attorneys' fees. (ECF No. 161-3.) In doing so, the parties agreed, among other things, (1) that the parties would abide by the Decree (*Id.*, ¶ 10) and (2) that no party would request or be awarded attorneys' fees except as provided for in the Decree. (*Id*., ¶ 15). In other words, Plaintiffs unambiguously promised in the Agreement to only seek attorneys' fees as allowed for in the Decree. (ECF No. 161-3, ¶ 15.) To that end, the Decree explicitly states, in a provision aptly titled "No Prevailing Party," that "No party shall be considered to be the 'prevailing' or 'successful' party within the meaning of any statute or law as a result of this Decree." (ECF No. 161-2, ¶ 30.) Similarly, at the beginning and end of the Decree, the Decree provides that it should not be interpreted as a finding of wrongdoing by any party or a finding of liability. (*Id*. at PageID 3204, 3211.)

Despite the clear language of the Agreement and the Decree, Plaintiffs now claim to be the "prevailing party," and, as such, they assert they are entitled to attorneys' fees under 42 U.S.C. § 1988(b), 42 U.S.C. § 1997e(d), 42 U.S.C. § 12205, and 29 U.S.C. § 794a(b). (ECF No. 373-1, PageID 7365.) But because of the promises Plaintiffs made and the binding nature of both the Agreement and the Decree, Plaintiffs are precluded from now arguing that they were the "prevailing party" and are thus, precluded from being awarded fees under the aforementioned statutes. Indeed, by filing their motion and requesting fees as "prevailing parties," Plaintiffs

breached Paragraph 15 of the Agreement.

**B. Plaintiffs' potential attorneys' fee recovery is expressly limited by the Decree.**

The Decree sets forth only one scenario where attorneys' fees are recoverable. In Paragraph

23, the Decree provides:

> **Court Resolution.** Subsequent to the parties engaging in and completing the
> dispute resolution process as set forth in Paragraph 22, *Plaintiffs may seek
> enforcement of this decree if Defendants fail to comply with any terms of this
> Decree*, including if Plaintiffs have a good faith basis to believe that Defendants
> have not engaged best efforts to adopt the recommendations of the Independent
> Inspector or the Ventilation Expert (if applicable pursuant to Paragraph 13). *If
> Plaintiffs seek enforcement of this Decree and obtain relief from the Court as a
> result of seeking such enforcement, Plaintiffs may seek an award of the reasonable
> attorneys' fees and costs incurred in seeking enforcement of this Decree*.

Based upon the plain language of Paragraph 23, Plaintiffs cannot recover attorneys' fees

here. In order to successfully recover attorneys' fees, Plaintiffs were required to institute Paragraph

22's dispute resolution process. (ECF No. 161-2, ¶ 22.) Only after completing said process could

a party bring a dispute concerning the "performance or interpretation" of the Decree before the

Court. (*Id*.) But as already held repeatedly by this Court, Plaintiffs failed to comply with Paragraph

22 before making their demands to the Court. (ECF No. 220, PageID 3794-96; ECF No. 309,

PageID 5411; ECF No. 328, PageID 6032.) By seeking enforcement prior to initiating and

completing the dispute resolution practice, Plaintiffs could not seek enforcement because the

dispute resolution practice acted as a prerequisite to doing so. Plaintiffs' actions actually *violated*

the terms of the Decree and bypassed the mechanism set in place and agreed to by the parties to

avoid incurring unnecessary attorneys' fees and the Court's involvement. As a result, Plaintiffs

cannot recover those fees now.

Plaintiffs cannot obtain an award of attorneys' fees under Paragraph 23 for another

fundamental reason. According to Paragraph 23, Plaintiffs could only seek enforcement where

"Defendants fail[ed] to comply with any terms of this Decree[.]" (ECF No. 161-2, ¶ 23.) Then, "[i]f Plaintiffs seek enforcement of this Decree and *obtain relief from the Court as a result of seeking such enforcement*, Plaintiffs may seek an award of the reasonable attorneys' fees and costs incurred in seeking enforcement of this Decree." (*Id*.) Here, Plaintiffs cannot be awarded attorneys' fees because they obtained *no* "relief" through their attempted enforcement of the Decree. Plaintiffs sought enforcement on a number of topics. Plaintiffs first filed their motion to enforce the Decree on May 19, 2021, seeking an order (1) requiring Defendants to offer "adequate education materials and non-punitive incentives"; (2) requiring that "Defendants [] make best efforts to adopt [various] recommendation of the Independent Inspector"; (3) requiring "Defendants [] make best efforts to adopt the recommendations of the Ventilation Expert"; and (4) reinstating a temporary toll-free number, among other requests. (ECF No. 216-2 PageID 3518-19.) Later on November 2, 2021, Plaintiffs expanded the scope of the requested enforcement to include a Court order requiring a wholesale adoption of the Inspector's recommendations, including for matters plainly outside the scope of the Decree. (ECF No. 274-1, PageID 5190-91.) In so requesting, Plaintiffs reiterated their demands for a Court order requiring Defendants offer adequate education materials and non-punitive incentives and an order that Defendants reinstate the temporary toll-free number. (*Id*. at PageID 5196-97.) They also requested the Court order Defendants to (1) address staffing shortages, (2) address a lack of inmate recreation time, (3) take further steps to facilitate social distancing, (4) arrange in-house vaccination storage, (5) adopt serial COVID-19 testing, (6) identify sufficient medical isolation units, (7) hire a clinical psychologist, (8) and provide three surgical masks weekly or, alternatively supply two cloth masks to be laundered weekly. (*Id*. at PageID 5191-99.) Unsurprisingly, the Court, in large part, ultimately held that the above demands exceeded the scope of the Decree. (ECF No. 297, PageID

5274-75; ECF No. 316.) In the Court's estimation, the Decree said nothing about an ongoing toll-free hotline, hiring a clinical psychologist, out of cell time, or Jail staffing. (*Id*.) And for those few topics that were actually contemplated by the Decree, the Court found that there was no evidence Defendants were noncompliant. (*Id*. at PageID 5828-37.)

In the end, the Court only ordered limited discovery. (ECF Nos. 216, 274-1.) Specifically, related to the topics in the motion to enforce, the Court ordered that Defendants provide documentation evidencing the Jail's small group meetings and plans for development of its peer education. (ECF No. 316, PageID 5833.) But importantly, Plaintiffs *never* requested documents concerning peer education or small group meetings. They only requested the Court award relief *requiring* peer education and small group meetings – relief they never obtained. (*Compare* ECF No. 316, PageID 5833 *with* ECF No. 274-1, PageID 5196.) Further, an order requiring discovery does not constitute "relief" as contemplated by Paragraph 23, and it certainly does not indicate a finding that Defendants had violated the Decree.[3] Because Plaintiffs obtained no relief as a result of "seeking such enforcement" of the Decree, Plaintiffs are not entitled to any fees whatsoever.

## II.    PLAINTIFFS' REQUESTED ATTORNEYS' FEES ARE PATENTLY UNREASONABLE.

### A.    PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE THE REQUESTED FEES ARE "CLEARLY EXCESSIVE" AND ARE NOT COMPENSABLE UNDER THE DECREE.

Plaintiffs' motion should be denied because the requested fees are "clearly excessive" and because they are not compensable under the Decree. In Tennessee, where an attorney seeks "clearly excessive" fees, their request should be wholly denied. *White v. McBride*, 937 S.W.2d 796, 803 (Tenn. 1996) (declining to award any fee when fee sought was "clearly excessive") *see also Cohn v. Bd. of Prof'l Responsibility*, 151 S.W.3d 473, 487-88 (Tenn. 2004) (seeking $450 an

---

[3] Per Black's Law Dictionary, "relief" constitutes "The redress or benefit, esp. equitable in nature (such as an injunction or specific performance), that a party asks of a court."

hour "over and over for what appeared to be simple and very routine matters" resulted in disgorgement of fees). For instance, attorneys' fees are clearly excessive "where the fee was grossly out of proportion with the fees charged for similar services by other lawyers in the same locale[.]" *McDonnell Dyer P.L.C. v. Select-O-Hits, Inc*., 2001 Tenn. App. LEXIS 272, at *18 (Tenn. Ct. App. Apr. 20, 2001). Here, Plaintiffs' attorneys' fee request is "clearly excessive" because it seeks compensation for work outside the scope of the Decree, seeks excessively high hourly rates, seeks payment for duplicative entries, seeks compensation for non-legal, administrative work, and seeks compensation for unspecified work.

First, the Decree expressly limits the recovery of attorneys' fees to successful enforcement of the Decree. (ECF No. 161-2, ¶ 23). As noted above, Plaintiffs obtained no relief in seeking enforcement of the Decree. Thus, they are not entitled to any fee award. Notwithstanding, to the extent this Court determines that the limited ordered discovery is "relief," Plaintiffs failed to delineate what portions of their work was or was not related to the "enforcement" work that led to the Court ordering Defendants to produce documents. Instead, Plaintiffs seeks to be compensated for 1,318.80 hours from April 13, 2021, to March 30, 2022, for *all* work performed by the fourteen listed attorneys and two paralegals – whether said work related to seeking "such" enforcement or not. (ECF No. 373-1, PageID 7368.) Thus, it is impossible to determine what work could even possibly be compensable.

Further, to the extent this Court determines that the limited ordered discovery is "relief" – said relief related only to Plaintiffs' request for a court order mandating small group meetings and peer education. Such demands were unmentioned until months after Plaintiffs first sought enforcement. Plaintiffs' first motion to enforce filed on May 19, 2021, *did not mention peer education*. (ECF No 216, 216-1.) In fact, Plaintiffs did not reference any concerns about peer

education until filing their November 2, 2021, Motion to Bifurcate Motion to Enforce and to Modify the Consent Decree – approximately six months later.[4] (ECF No 274.) As a result, Plaintiffs certainly are not entitled to any fees prior to November 2, 2021, based on the order requiring discovery *even if* this Court finds that the limited ordered discovery constitutes "relief" and their request for fees incurred prior to that date are clearly excessive.

Furthermore, *prior to* and *after* Plaintiffs' first complaint about peer education, Plaintiffs' exorbitant billing entries contain time from multiple matters absolutely unrelated to any enforcement proceedings. For instance, they include time for responding to Defendants' motion to terminate and litigating the resulting appeal. (ECF No. 373-9, PageID 7482, 7486-87; ECF No. 373-4, PageID 7416-22; ECF No. 373-16, PageID 7568.) Yet, according to the Decree's plain language – and the Sixth Circuit – termination proceedings are completely separate from enforcement proceedings. *Waste Mgmt. of Ohio, Inc. v. City of Dayton*, 132 F.3d 1142, 1146 (6th Cir. 1997). By opposing the motion to terminate, Plaintiffs were not seeking to "enforce" the Decree due to "Defendants' failure to comply with any terms of this Decree." Nor had Plaintiffs "sought" enforcement as contemplated under Paragraph 23 by doing so. Instead, they were simply opposing the Decree's termination – an entirely separate and unrelated topic to "enforcement."

As another example, Plaintiffs also seek fees incurred for their motion *to modify* the Decree as well as for their motion for sanctions. (*See* as examples ECF No. 373-9, PageID 7476, 7483-83, 7485; ECF No. 373-4, PageID 7416, 7428). Like the termination proceedings, these motions are entirely unrelated to the enforcement of the Decree. And regardless, both motions were wholly denied. It is remarkable – and frankly unbelievable – for Plaintiffs to brazenly take the position,

---

[4] But even there, peer education was only a small part of the requested relief. As discussed below, their lack of success in enforcing the Decree greatly limits any potential attorneys' fees that are recoverable, assuming the Court finds that the ordered discovery is "relief" under the Decree.

without explanation, that they are entitled to attorneys' fees for litigating those motions.

The problems do not end there. Plaintiffs also seek fees for other tasks unrelated to the motion to enforce. For instance, they seek compensation for reviewing inspection reports, reviewing monthly reports from the Jail, reviewing documents related to the ventilation expert, filing motions for pro hac admission, and unrelated administrative work (i.e. "organizing … filing, saving documents to files, circulating a 'calendar invite'" and even "calendaring deadlines") all of which is not recoverable under the Decree. (As examples, ECF No. 373-9, PageID 7479, 7482, 7488, 7496-97, 7499-7500, 7502; ECF No. 373-4, PageID 7416, 7427, 7500.)

To top it off, there are dozens of hours of duplicative entries throughout Plaintiffs' submitted bills and examples when multiple attorneys billed for the same non-compensable tasks. (Hutton Aff. ¶ 17.) In fact, there are numerous instances where *the exact same entry is billed twice by the same attorney on the same day.* (*Id*.; As examples, ECF No. 374-4, PageID 7425-26; ECF No. 373-9, PageID 7488.) And other billing entries reflect overly redundant billing for hearings or depositions where only one (maybe two) attorney(s) was/were needed. For instance, on August 3, 2021, Meredith Borner billed *11.3* hours drafting an "outline for 30(b)(6) deposition." (ECF No. 373-9, PageID 7481). On the same date at Paul Weiss, David Kimball-Stanley billed 4.0 hours for "preparing for deposition[,]" and Eric Abrams tacked on another 0.3 for "planning for 30(b)(6) deposition." (*Id*.) Meanwhile, Nancy Rosenblum at the ACLU also billed another hour in preparation for the same deposition. (ECF No. 373-4, PageID 7421.) Then, the next day, Borner billed for conducting the deposition while *four other attorneys* - Kimball-Stanley, Abrams, Rosenblum, and Maria Morris all billed for simply attending the same deposition. (ECF No. 373-9, PageID 7481; ECF No. 374-4, PageID 7421.) As another example, Abrams, Colleen Anderson, Adriane Rockoff, Andrea Woods, Rosenblum, David Fathi, Aditi Shah, and Stella Yarbrough all

apparently prepared for the Sixth Circuit oral argument. (ECF No. 373-9, PageID 7493-95; ECF

No. 373-4, PageID 7426; ECF No. 373-16, PageID 7569.) And while Woods actually argued at the

Sixth Circuit, at least four other attorneys billed time to passively watch the same argument. (ECF

No. 373-9, PageID 7496; ECF No. 373-4, PageID 7427; ECF No. 373-16, PageID 7569.).

The Court cannot possibly award fees for the aforementioned – and numerous other like –

charges sought by Plaintiffs considering they (1) are too vague to determine whether the charges

were reasonable or even related to enforcement (2) are grossly excessive; (3) seek unreasonably

high rates, and (4) include numerous examples duplicated work. Such billing is "clearly excessive"

under Tennessee law. And more importantly, such work is not compensable under the Decree.

### B. Plaintiffs' request for attorneys' fees is unreasonable under Tennessee law.

Plaintiffs request an astronomical $769,377.80 in attorneys' fees with hourly rates ranging

from $457.00 for new associates to $760.00 for more-experienced attorneys. The over three-

quarters of a million dollars in fees, according to Plaintiffs, represents Plaintiffs' counsel's work

between April 13, 2021, to March 30, 2022. (ECF NO. 373-1, PageID 7368.) Because Plaintiffs'

request for attorneys' fees is contractual, their request is governed by Tennessee law. Rule 1.5 of

the Tennessee Rules of Professional Conduct governs the reasonableness of attorneys' fees under

Tennessee law. Tenn. R. Prof. Cond. 1.5. According to Rule 1.5:

> A lawyer shall not . . . collect an unreasonable fee or an unreasonable amount for
> expenses. The factors to be considered in determining the reasonableness of a fee
> include the following:
>
> (1) The time and labor required, the novelty and difficulty of the questions
>     involved, and the skill requisite to perform the legal service properly;
> (2) The likelihood, if apparent to the client, that the acceptance of a particular
>     employment will preclude other employment by the lawyer;
> (3) The fee customarily charged in the locality for similar legal services;
> (4) The amount involved and the results obtained;
> (5) The time limitations imposed by the client or by the circumstances;
> (6) The nature and the length of the professional relationship with the client;

(7) The experience, reputation, and ability of the lawyer or lawyer performing the services;

(8) Whether the fee is fixed or contingent;

(9) Prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and

(10) Whether the fee arrangement is in writing.

*Id.*; *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011) (citing Tenn. R. Prof. Resp. 1.5). In relying on the above factors, the Tennessee Supreme Court expressly rejected the use of the *Lodestar* factors. *Wright*, 337 S.W.3d at 180.

Starting with the first factor, enforcing an already-entered consent decree is not complex. (Hutton Aff. ¶ 20.) It is undoubtedly not complex enough to warrant work from fourteen attorneys and two paralegals to ensure its enforcement during a less-than-a-year period. (*Id*. at ¶ 20.) The Supreme Court has cautioned that where a party has "overstaffed" a case, their fees are not "reasonably expended." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). For instance, in *Ky. Rest. Concepts Inc. v. City of Louisville*, 117 Fed. App'x. 415 (6th Cir. 2004), the Sixth Circuit upheld a district courts reduction, in part, because of the number of attorneys on the case. *Ky. Rest. Concepts Inc.*, 117 Fed. App'x. at 419. As noted by the Sixth Circuit, "Plaintiffs are not entitled to have any number of well-qualified attorneys reimbursed for their efforts, when fewer attorneys could have accomplished the job." *Id*. Here, fewer than fourteen (14) attorneys could have accomplished the job. As detailed by Mr. Hutton, the work could have easily been accomplished with a fraction of the staff in a fraction of the hours requested.[5] (*Id*.)

Next, the second factor weighs against Plaintiffs, as there is no danger that this litigation precluded other employment, as the ACLU is a non-profit organization. Furthermore, considering that the requested work was spread across fourteen different attorneys, it is unclear how this case

---

[5] In fact, many of the attorneys that actually litigated this case were excluded from Plaintiffs' requested fees. (ECF No. 373, ¶ 7.) Considering the omitted attorneys likely expended further hours litigating this case, Plaintiffs' requested over 1,300 hours is even more unreasonable.

precluded other employment. Moreover, Plaintiffs provide no evidence supporting that they were meaningfully precluded from seeking other employment outside of their conclusory assertions to the contrary. (*Id*. at ¶ 21.)

Factor three weighs against the requested fees. The customary fee for like services in Memphis is considerably lower than the requested hourly rate of $457.00 to $760.00. As detailed by Mr. Hutton, fees between $275 and $450 are more in line with the Memphis area. (*Id*. at ¶ 25.) Bolstering Mr. Hutton's position, this Court has routinely awarded significantly less per hour in other civil rights and complex litigation cases than Plaintiffs' requested rate.[6] *See i.e. G.S. v. Governor Bill Lee*, 2023 U.S. Dist. LEXIS 199997 (W.D. Tenn. Nov. 7, 2023) (awarding Plaintiffs' co-counsel Brice Timmons and Craig Edgington $400 and $260 an hour respectively in a ADA and Rehabilitation Act case); *Cheairs v. Thomas*, 2023 U.S. Dist. LEXIS 94164 (W.D. Tenn. Apr. 27, 2023) (awarding $350.00 per hour in Copyright Act and Visual Artists Rights Act case with 2.1 million in compensatory damages); *Muhammad v. Shoffner*, 2022 U.S. Dist. LEXIS 152867 (W.D. Tenn. July 28, 2022) (awarding $275 per hour for § 1983 case); *Phifer v. SPM Enters. Inc*., 2021 U.S. Dist. LEXIS 163663, 2021 WL 3878896, (W.D. Tenn. Aug. 30, 2021) (approving $365 per hour rate in FLSA case). Further evidencing the unreasonableness of Plaintiffs' counsels' hourly rate, Defense counsel charged only $250.00 an hour – a mere fraction of Plaintiffs' requested hourly rate. (ECF No. 371-2, PageID 7257.) As a result, this factor weighs heavily against Plaintiffs' requested fees.

Notwithstanding, Plaintiffs claim that the relevant market rates for determining Plaintiffs' counsels' rates are New York City and Washington D.C. because "[t]here are few qualified lawyers

---

[6] Notably, each case cited by Plaintiffs' concerning reasonable hourly rates arose out of the Middle District of Tennessee. (ECF No. 373-1, PageID 7386.) Regardless, each case cited also had a lower hourly rate for partner-level attorneys than requested here. (*Id*.)

in the Western District of Tennessee willing to take a case of this complexity and magnitude on behalf of a class of incarcerated persons." (*Id*. at PageID 7374.) But that is not the correct inquiry. Under Tennessee law – and this Court's local rule – the inquiry considers the rate charged in the community. *See* L.R. 54.1(b)(2). Further, as this court is aware, there are numerous attorneys in the Memphis area capable of monitoring the Jail throughout the life of the Decree. In fact, there were multiple local attorneys with appearances *in this case* that could do so. (Hutton Aff. ¶ 24.)

Additionally, there are a number of attorneys in Memphis, including Mr. Hutton, who litigate civil rights and jail condition cases. (*Id*.) Furthermore, other cases in this Court awarding fees in § 1983 or similar civil rights litigation have never held, to Defendants' knowledge, that West Tennessee attorneys are unable to handle such litigation. Indeed, such a position is illogical. Memphis is one of the fifty largest metropolitan areas in the country with many attorneys. Therefore, Plaintiffs should be unable to recover the requested hourly rates and should be limited to the prevailing market rate in West Tennessee, not New York and Washington D.C.

Similarly, the fourth factor weighs decidedly against Plaintiffs. Again, Plaintiffs essentially obtained no additional relief throughout the life of the Decree, making their astronomical fee petition entirely unreasonable. *See e.g. Smith v. All Nations Church of God*, 2022 Tenn. App. LEXIS 381, at *24-25 (Tenn. Ct. App. Sept. 28, 2022) (finding that the plaintiff could not recover for time expended on unsuccessful claims). And even if this Court found that the limited discovery constituted "relief," such relief was a mere fraction of the relief Plaintiffs sought but were denied.

Finally, one other notable consideration weighs against the reasonableness of Plaintiffs' request. While Plaintiffs' counsel claims to have exercised their "good billing judgment" by deleting "any entries that were arguably redundant, unnecessary, inefficient, inadequately documented, or otherwise unreasonable to bill a client or opposing counsel," a review of their bills

tells otherwise. As an initial matter, there are dozens of hours of duplicative entries. (Hutton Aff. ¶ 17.) In fact, there are numerous instances where the exact same entry is billed twice. (*Id*.; As examples, ECF No. 374-4, PageID 7425-26; ECF No. 373-9, PageID 7488.)

Likewise, as detailed in Mr. Hutton's declaration, many of Plaintiffs' counsel's billing entries are not sufficiently detailed to allow the Court to determine whether they bear any relation to the motion to enforce or, more generally, determine whether their time was reasonably expended. (Hutton Aff. ¶ 17.) For instance, there are multiple meetings throughout the entries where it is entirely unclear the purpose of the meeting. (*Id*.). Entries such as "Planning meeting," "Onboarding meeting with new junior associate," and "Met with internal team to discuss upcoming work streams" do not allow the Court to determine whether Plaintiffs' time was reasonably expended. (ECF No. 373-4, PageID 7418; ECF No. 373-9, PageID 7486, 7498) Further entries like "Editing brief," 2.2 hours for "Reading recent filings," and a completely blank entry for 0.5 hours also leave to the Court's imagination whether the entries were reasonable. (ECF No. 373-9, PageID 7475; ECF No. 373-4, PageID 7417, 7427.)

Additionally, as noted above, other billing entries reflect overly redundant billing for hearings or depositions where only one attorney was needed. And the examples expressed throughout this response are only a small sample of the unreasonable billing entries in Plaintiffs' submitted bills. Defendants could spend the entirety of this response pointing out the countless unreasonable entries in Plaintiffs' billing entries, such as hours spent "saving" pleading to the file, a half-hour spent "processing" an invoice, and attending "weekly planning meetings." (ECF No. 373-4, PageID 7416, 7421-23, 7425-26) But it is not Defendants' (or this Court's) burden to go over their bills with a fine-tooth comb. *Echols v. Express Auto, Inc*., 857 Fed. App'x. 224, 228 (6th Cir. 2021) ("[D]istrict courts need not double as 'green-eyeshade accountants.'") (quoting *Fox v.*

*Vice*, 563 U.S. 826, 838 (2011)). It is, instead, Plaintiffs' burden to establish the reasonableness of

their bills. *Webb v. Bd. of Educ. of Dyer Cnty., Tenn*., 471 U.S. 234, 242, (1985). They have wholly

failed to meet such a burden and Defendants – nor this Court – should be required to dissect their

voluminous time entries when Plaintiffs failed to do so themselves.

### III.    TO THE EXTENT THE COURT DETERMINES PLAINTIFFS ARE "PREVAILING PARTIES," THIS COURT SHOULD DECLINE TO AWARD ATTORNEYS' FEES.

While the ADA and Rehabilitation Act allow a court, in its discretion, to award attorneys'

fees to a prevailing party, an award is not mandatory. *See* 42 USCS § 12205; 29 USCS § 794a; *see

also Southall v. USF Holland, Inc.*, 2023 U.S. Dist. LEXIS 52141, at *4 (M.D. Tenn. Mar. 28,

2023). Because of the complete lack of relief received by Plaintiffs in seeking enforcement, the

Court should decline to award attorneys' fees under either statute.

### IV.    TO THE EXTENT THIS COURT DETERMINES PLAINTIFFS ARE "PREVAILING PARTIES," PLAINTIFFS' ATTORNEYS' FEES ARE CAPPED UNDER THE PLRA.

Should the Court find that Plaintiffs are "prevailing parties," their hourly rates are capped

by the PLRA. The PLRA provides that in actions concerning prison conditions "in which attorney's

fees are authorized under section 1988," such fees may not be "based on an hourly rate greater

than 150% of the hourly rate established under section 3006A of title 18." 42 U.S.C. § 1997e(d)(3).

This case concerns prisoner conditions subject to the PLRA's hourly rate cap. There are "two broad

categories of prisoner petitions: (1) those challenging the fact or duration of confinement itself;

and (2) those challenging the conditions of confinement." *McCarthy v. Bronson*, 500 U.S. 136,

140, (1991). 18 U.S.C. § 3626(g)(2) defines "prison conditions" as "the conditions of confinement

or the effects of actions by government officials on the lives of persons confined in prison[.]" 18

U.S.C. § 3626(g)(2). In the context of COVID-19, federal courts across the country have found

suits seeking protection of inmates from COVID-19 – even when brought under the guise of a

habeas petition – are conditions of confinement cases subject to the PLRA. *See, e.g.*, *Julian v. Whitmer*, 2024 U.S. Dist. LEXIS 73790, at *6 n.5 (E.D. Mich. Mar. 18, 2024); *Mescall v. Hemingway*, 2020 U.S. Dist. LEXIS 141926, 2020 WL 4584028, at *3 (E.D. Mich. Aug. 10, 2020); *Barrett v. Carvajal*, 2020 U.S. Dist. LEXIS 84873 (N.D. Ohio May 14, 2020).

Here, the PLRA rate cap applies based on the Decree and Plaintiffs' petitions. Although this Court previously found that Plaintiff's' habeas claim was proper even though they "could have theoretically pled a §1983 claim," such a possibility is no longer theoretical. (ECF No. 38, PageID 679.) Prior to the Decree's entry, Plaintiffs sought to amend their petition to add a §1983 claim to "rectify [] unsafe conditions in the Shelby County Jail." (ECF No. 136, PageID 3003.) To rectify these "conditions," Plaintiffs' requested relief changed from prior iterations of their petition. While their previous petitions generally sought release, their proposed second amended petition primarily sought to address the conditions of the Jail. (ECF No. 137, PageID 3069) (requesting for the first time injunctive relief requiring Defendants to "implement[] a test-based strategy for detecting and preventing the spread of COVID-19," ensur[e] the availability of cleaning supplies, provid[e] free soap to detainees, and provid[e] face masks, among other relief). Furthermore, in later entering into the Decree, the parties expressly agreed that the Decree was "final and binding . . . as to the issues raised in Plaintiffs' Complaint as well as their First and *Proposed Second Amended Complaints*." (ECF No. 161-2, PageID 3204) (emphasis added.) Therefore, the parties clearly contemplated that the Decree resolved Plaintiffs' proposed § 1983 claims and attempted to "rectify" the "unsafe conditions in the Shelby County Jail." Further emphasizing this point, the Decree itself contemplates the monitoring of the conditions in the Jail through the Inspector and opinions of the Ventilation Expert. Moreover, the Decree required Defendants to take actions to address the Jail's condition in relation to COVID-19. (*Id.* at ¶¶ 8-20.) As a result, this case plainly

concerns "conditions of confinement," making it subject to the PLRA. And under the PLRA, Plaintiffs' counsels' hourly rate is capped at an "hourly rate [no] greater than 150 percent of the hourly rate established under section 3006A of title 18."

## V.    PLAINTIFFS' MOTION SHOULD BE DENIED AS UNTIMELY.

Defendants adopt and incorporate their arguments in Defendants' Response in opposition to Plaintiffs' Motion for Extension of Time. (ECF No. 370.) For the reasons set forth therein, Plaintiffs' request for attorneys' fees is untimely and should be denied.

## CONCLUSION

Based upon the foregoing, Plaintiffs' Motion should be denied in its entirety.

Respectfully submitted,

PENTECOST, GLENN & TILLY, PLLC

By:    s/Nathan D. Tilly
James I. Pentecost (#11640)
Nathan D. Tilly (#31318)
162 Murray Guard Drive, Suite B
Jackson, Tennessee 38305
(731) 668-5995

AND

Marlinee C. Iverson (#18591)
R.H. "Chip" Chockley (#20680)
Shelby County Attorney's Office
160 North Main Street, Suite 950
Memphis, TN 38103
(901) 222-2100

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was filed electronically via the ECF filing system. Accordingly, notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.

DATE:  This the 30th day of July, 2024.

By:    s/Nathan D. Tilly
       Nathan D. Tilly