UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| Favian Busby, Michael Edgington, Russell Leaks, and Joseph Nelson, *on their own behalf and on behalf of those similarly situated*, <br><br> Petitioners-Plaintiffs, <br><br> v. <br><br> Floyd Bonner, Jr., *in his official capacity*, Shelby County Sheriff, and the Shelby County Sheriff's Office, <br><br> Respondents-Defendants. | No. 2:20-cv-2359-SHL-atc |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR ATTORNEYS' FEES**

**INTRODUCTION**

Defendants' entire motion is premised on the contention that the events in this case satisfy the very narrow, negotiated language in the Consent Decree stating, "Should Plaintiffs elect under such circumstances to seek enforcement of this Decree and *the Court deny the relief sought on grounds that Plaintiffs' action is frivolous, unreasonable, or without foundation*," Defendants may seek reasonable fees and costs incurred in responding to those requests. ECF No. 161-2, ¶ 23 (emphasis added). Simply put, Defendants are not entitled to any fees or costs from Plaintiffs unless the Court finds that Plaintiffs' claims were "frivolous, unreasonable, or without foundation." That language is not ambiguous, as Defendants agree. ECF No. 371-1, PageID 7252.

Because there are no findings in the record that Plaintiffs' claims were "frivolous, unreasonable, or without foundation," Defendants rely on an implication that "this Court, *in essence*" made such a finding when this Court denied certain parts of Plaintiffs' motion for

relief. *Id.*, PageID 7254 (emphasis added). An assertion that something is "in essence" frivolous, unreasonable, or without foundation, does not constitute a finding by this Court of the same.

The Inspectors' recommendations were an essential part of the Decree. The parties agreed in Paragraph 10 of the Decree itself that:

> If the Independent Inspector makes any recommendations in his reports, Defendants agree either *to implement them or*, within fourteen (14) days of receiving a[n Inspector report], to provide the Independent Inspector and Plaintiffs' counsel with an explanation in writing for *why, despite their best efforts to do so, Defendants will not or cannot adopt* the [] recommendation(s).

ECF No. 161-2, ¶ 10 (emphasis added). As such, any proceedings brought by Plaintiffs to enforce the Inspectors' recommendations were proceedings aimed at enforcing the Decree.

Defendants seek fees associated with ten specific Court actions in this case. Defendants are entitled to none of these fees. First, Defendants seek fees for certain joint filings, including joint notices and a joint position paper required by the Court. ECF No. 371-1, PageID 7249–50 (Defendants' categories 2, 5, and 9). Joint submissions and court-ordered submissions by their very nature cannot be "Plaintiffs' action" nor can they be filed without foundation or considered "unreasonable" by one party. Second, Defendants seek fees for a response to a procedural motion by Plaintiffs to bifurcate Plaintiffs' Motion to Enforce and Modify the Decree. *Id.* (Defendants' category 4). This motion was necessitated by Defendants' unsuccessful appeal of their own failed Motion to Terminate the Decree. *See* ECF No. 276 (Order bifurcating the motion and holding the modification portion in abeyance pending decision on Defendants' appeal). As is clear from the procedural history, this motion was initiated in response to actions taken by Defendants and therefore cannot be now seen as unreasonable action by Plaintiffs. The remaining categories of work—as well as the related

2

limited discovery approved by the Court for which Defendants also seek fees—relate to enforcement motions by the Plaintiff class that were well-founded and were needed to ensure that the gains won in the decree were actually implemented. The necessity of these filings is explained in Plaintiffs' briefing in support of Plaintiffs' fees motion. *See* ECF No. 373-1, PageID 7359.

## ARGUMENT

I.  **Tennessee Law Cited By Defendants Is Uncontroversial and Supports Plaintiffs' Position.**

Defendants cite cases setting out Tennessee law's principles of contract interpretation. ECF No. 371-1, PageID 7251. The cases Defendants cite support both Plaintiffs' entitlement to attorney fees and costs under the Decree and Plaintiffs' argument that Defendants are not entitled to fees and costs. In *Shuttleworth*, for example, the Tennessee Court of Appeals states that courts look to the intent of the contracting parties to construe a contract, using "ordinary meaning of the language used" to "ascertain the intention of the parties." *Shuttleworth, Williams, Harper, Waring & Derrick, PLLC v. Gary K. Smith, Smith, Sabbatini & McLeary, PLLC*, 2010 WL 744375 *2 (Tenn. Ct. App. Mar. 5, 2010) (citations omitted).[1] Plaintiffs agree. Under the law, therefore, the Decree should be read as it was written—to allow for attorneys' fees if and only if the enforcement activity from which the fees were generated was "frivolous, unreasonable, or without foundation." ECF No. 161-2, ¶ 23. The language of the Decree also makes clear that there are attorneys' fees when Plaintiffs "seek enforcement of this Decree." *Id.* Because the Inspectors' recommendations must be implemented absent a showing of best

---

[1] *See also Teter v. Republic Parking Sys., Inc.*, 181 S.W.3d 330, 342 (Tenn. 2005), cited by Defendants for the proposition that a contract's plain meaning governs if that contract is clear.

3

efforts and inability, one such area of permissible enforcement is the enforcement of the Inspectors' recommendations. *See* ECF No. 161-2, ¶ 10.

## II. The Court Did Not Declare the Unsuccessful Portions of Plaintiffs' Enforcement Motions To Be Frivolous, Unreasonable or Without Foundation, And Plaintiffs' Enforcement Litigation was Designed to Ensure Compliance with the Decree.

After months of working to formulate a Decree that the Court described as a "great[] success,"[2] Defendants almost immediately failed to comply. In fact, just one day after the Court approved the Decree, the Sheriff publicly announced that his office would take no further action under the Consent Decree. ECF No. 216-3. In order to get the benefit of their bargain in settling this litigation, Plaintiffs had to closely monitor Defendants' compliance with the Decree, including through conversations and liaison with the Independent Inspectors appointed by the Court to conduct Jail visits. Unfortunately, compliance in this case was not achieved without litigation. *See, e.g.*, ECF Nos. 216-1, 216-4, 216-5, 216-9, 218, 222, 244, 244-3, 244-4, 254, 257-1, 258, 274, 276, 303, 309.[3] On two separate occasions, Plaintiffs were forced to

---

[2] The Court found that "this relief [achieved by the Decree] addresses most, if not all, of Plaintiffs' alleged deficiencies in their confinement in the Jail, given the pandemic, and the Court is not aware of any greater successes in similar litigation." ECF No. 162, PageID 3237.

[3] Defendants make several misstatements of fact that illustrate their reluctance to comply with the Decree. For example, Defendants suggest that the Court's Order that they produce documents was unnecessary, stating incorrectly that they had already produced them: Defendants add words to the Court's minute entry of January 14, 2022, which was entered following a status conference on Plaintiffs' motion for expedited discovery regarding enforcement. Defendants aver that the Court ordered them to produce documents "[previously provided to the independent inspector]." ECF No. 371-1, PageID 7246–47. This is inaccurate because the minute entry does not contain those words, saying instead, "Defense counsel ordered to produce a continu[ous] stream of documents to the plaintiff and have all documents produced by Friday, January 28, 2022." ECF No. 302. Further, Defendants state that the Court's March 30, 2022 enforcement order directed Defendants to provide documents requested by Inspector Wells and "denied every other request from Plaintiffs." ECF No. 371-1, PageID 7248. This is untrue, as the Court also granted Plaintiffs' request for limited deposition testimony related to the motion to enforce. ECF No. 316, PageID 5835. Indeed, the Inspector's emails verify that Defendants had *not* provided the documents in question when the Court ordered them to do so. *See, e.g.,* ECF No. 309 (ordering production

4

file motions to enforce the Decree. And despite hours of meeting and conferring, Defendants repeatedly refused to cooperate with informal efforts to achieve compliance. As such, Plaintiffs were frequently left with no choice but to bring the Defendants' serial non-compliance to the Inspectors' and the Court's attention. This included litigating Defendants' premature efforts to terminate the Decree, including on appeal in the Sixth Circuit. *See, e.g.*, ECF Nos. 216-1, 216-4, 218, 222–23, 227-1, 244–45, 254–59, 274, 276, 303, 312-6, 316, 337, 345. These efforts were not made in vain—in fact, without these efforts the Decree would have achieved little.

**A. The Court Did Not Make the Requisite Findings that Plaintiffs' Enforcement Efforts Were Frivolous, Unreasonable Or Unfounded.**

Defendants' motion reads as a tit for tat, but that is not how motions for attorneys' fees work. Plaintiffs are seeking fees and costs for their successful enforcement efforts under the terms of the parties' own Decree, and Defendants' motion is an entirely different matter. Plaintiffs are the "prevailing party" in the underlying action and on their enforcement motions, as detailed in their Memorandum in Support of Plaintiffs' Motion for Attorneys' Fees and Costs, having achieved a "material alteration in their legal relationship" with Defendants, and "succeed[ing] on any significant issue" in the litigation. ECF No. 373-1, PageID 7365–67 (citing *CRST Van Expedited, Inc. v. E.E.O.C.*, 578 U.S. 419, 422 (2016), *Farrar v. Hobby*, 506 U.S. 103, 109 (1992), *Binta B. v. Gordon*, 710 F.3d 608, 620 (6th Cir. 2013), and the Decree's language). Under the factors outlined in *Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974)*, the *prevailing party* (here Plaintiffs) are entitled to fees. *Id.*, PageID 7380–82 (citing Supreme Court and Sixth Circuit case law holding that Plaintiffs who

---

to Plaintiffs' counsel of documents that should have been provided earlier on several issues by February 18, 2022), ECF No. 319-11, PageID 5937, 5946 (Fifth Inspector Report); ECF No. 313, PageID 5795 (Defendants had not yet provided documentation of vaccine policies, procedures and timing requested by Mr. Wells); ECF No. 319-1, PageID 5855 n.2, 5861 n.6.

successfully enforce a settlement, including by defending a Consent Decree, are entitled to compensation).[4] The same cannot be said for Defendants, who seek fees merely for opposing Plaintiffs' legitimate enforcement efforts.

This Court made no finding, in denying portions of Plaintiffs' enforcement efforts, that those efforts were unreasonable, without foundation or frivolous, even in cases where relief was denied.[5] *See* ECF No. 316. The plain language of the Decree makes such a finding a prerequisite to Defendants' seeking fees and costs. ECF No. 161-2, ¶ 23 ("Should Plaintiffs elect under such circumstances to seek enforcement of this Decree and *the Court deny the relief sought on grounds that Plaintiffs' action is frivolous, unreasonable, or without foundation, . . .*") (emphasis added). Here, no such pre-requisite was met. In the two cases where Plaintiffs' motions were brought without success, the Court still found that the issues raised by Plaintiffs were reasonable. For example, with respect to enforcement of the Inspectors' recommendation regarding out-of-cell time, the Court was "sympathetic" and "agree[d] that certain conditions should be improved." ECF No. 316, PageID 5839–40. The mere fact that no relief was granted is not dispositive and a motion where the Court clearly recognized the issues Plaintiffs were raising, albeit did not rule in Plaintiffs' favor, is anything but frivolous. And an explicit finding of frivolity, unreasonableness, or a lack of foundation by the Court is required to legitimize a motion for attorneys' fees. It is irrefutable that no such finding exists here.

---

[4] Attorneys' fees are appropriate, when "any action by a plaintiff to defend or enforce a prior consent decree must be necessary to enforce the prior order and result in a subsequent court order . . . that at the very least secures plaintiffs' initial success in obtaining the consent decree." *Binta B.*, 710 F.3d at 625 (internal quotations and marks omitted). To entitle plaintiffs to fees, such an order must not be a "total loss" but can be a "limited" success. *Id.* at 625–27.

[5] Defendants cite dictionary definitions of "reasonable" and "foundation" but the Court need not engage in that analysis because the words are clear and, in any event, support Plaintiffs' position on this motion.

6

Even setting aside the plain language of the Decree, the case law is instructive in illustrating the high bar Defendants face in gaining attorneys' fees when Plaintiffs are litigating to enforce their rights. The U.S. Supreme Court's standard for assessing frivolous claims has long presented a high bar to Defendants, and cautions against concluding that a party's action is frivolous or unreasonable even where the party did not prevail. *See, Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421–22 (1978) (in Title VII case, where statute's fees language mirrors the Decree here, "it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success"); *see also Eagles, Ltd. v. Am. Eagle Found.*, 356 F.3d 724, 728 (6th Cir. 2004) (holding award of attorneys' fees to Defendant inappropriate even in cases where the court finds "a plaintiff sues under a colorable, yet ultimately losing, argument") (citation omitted); *Smith v. Smythe-Cramer Co.*, 754 F.2d 180, 186 (6th Cir. 1985) (court must determine plaintiff's basis for filing the suit to determine whether a claim is frivolous, unreasonable or groundless; here, Court of Appeals overturned district court finding of frivolous claims, stating that housing discrimination plaintiffs' claims based on advice of professionals familiar with real estate practice "were not without foundation, frivolous or unreasonable [since] [t]hey were supported by some evidence"); *Riddle v. Egensperger*, 266 F.3d 542, 551 (6th Cir. 2001) (citing *Christiansburg* and *Smythe-Cramer*, finding civil rights Plaintiffs' claims were not frivolous, stating "[a] plaintiff who continues to litigate claims after discovery has concluded, proceeds to summary judgment, and a judge thereafter rules that the claims are without merit, does not necessarily support the conclusion that the plaintiff's claims

7

were frivolous, unreasonable, or groundless, especially if there are viable claims intertwined to the meritless claims," and noting the "disincentive to the enforcement of civil rights laws" if civil rights plaintiffs faced a risk of being assessed attorney fees after discovery and a summary judgment motion).

Plaintiffs were entitled to the benefit of their bargain, and the Decree provided the orderly mechanism through which to achieve those vital protections in the event of noncompliance. Each motion was well-documented, supported by ample evidence from Defendants' own documents and personnel, and supported by findings and recommendations of the Independent Inspectors. Plaintiffs themselves are only seeking fees for enforcement work following approval of the Decree, and only for the time period up until the Court's order granting in part Plaintiffs' first motion to enforce. ECF No. 373-1, PageID 7367. Defendants' choice to move almost immediately to terminate the Decree and then fight each subsequent enforcement effort rather than comply with the Decree, is unfortunate but it is their option. It is certainly not evidence of Plaintiffs' actions being frivolous.

**B. Plaintiffs' Enforcement Litigation was Designed to Ensure Compliance with the Decree.**

Defendants seek fees for their work opposing enforcement efforts on matters they contend are "beyond the scope of the Decree" and "had no relation to the COVID-19 pandemic." ECF No. 371-1, PageID 7254–55. Those matters include seeking: reinstatement of the hotline for detainees, overtime pay for staff to allow detainees sufficient recreation and out-of-cell time, and retention of a clinical psychologist to identify detainees with learning and intellectual disabilities in order to ensure those detainees would receive vaccine information. Any assertion that these elements of the Decree were not core to the Decree itself is misplaced. The hotline was previously in effect, and the other items were recommendations of the Inspectors related

8

to the conditions created by the COVID-19 pandemic in the Shelby County Jail that Defendants failed to implement. Evidence in the enforcement motion demonstrates that these items were directly related to the Decree's provisions to enhance the safety for the medically vulnerable Jail population during the COVID-19 pandemic.

As the Court emphasized, "Defendants must implement any recommendation that the Inspector makes in his reports or, within fourteen days of receiving a report, provide him and Plaintiffs' counsel with a written explanation as to why, despite their best efforts, they will not or cannot adopt his recommendation." ECF No. 316, PageID 5838, citing ECF No. 161-2, PageID 3207. The Court went on to say that "its enforcement jurisdiction" includes specific provisions in the Decree "or [which] closely relate to the Parties' agreed upon purpose." ECF No. 316, PageID 5838. The Court's denial of enforcement relief on these provisions is not a finding that they were improper subjects of litigation under the Decree or a finding that, in the words of Paragraph 23, Plaintiffs' action in seeking relief "is frivolous, unreasonable, or without foundation."[6] It is, instead, the result of a normal enforcement process in which Plaintiffs are entitled to the protections of a Consent Decree, they discover noncompliance, attempt to resolve it with Defendants and fail, file a motion, and the Court makes a decision based on the evidence and arguments of both sides. The reason the Decree allows for Defendants' fees in the extreme situation of Plaintiffs pursuing extraordinary, frivolous type motions is *because* the parties contemplated and provided for a normal enforcement process in the usual course.

---

[6] Even when the Court denied relief on extending the hotline beyond the agreed-upon time frame, noting that the Decree does not "discuss the hotline," as Defendants point out at ECF No. 371-1, PageID 7246 (citing ECF No. 297, PageID 5274–75), the Court was evaluating the parties' purpose and the evidence, denying the relief, but not finding that the effort to achieve it was frivolous or lacked validity, foundation, or reason.

Critical to this analysis is the Decree's requirement that Inspector recommendations are part of the relief in the Decree that Plaintiffs bargained for. The Decree required regular data reporting and gave the Independent Inspector access to the Shelby County Jail, staff, including the Jail Expeditor, class members confined at the Jail, and Defendants' documents, so that the Inspector could confirm compliance with the Decree itself. The Decree also required, with limited exceptions, implementation of the Inspectors' recommendations. ECF No. 161-2, ¶¶ 4–10. Defendants' arguments that relief sought by Plaintiffs to enforce the recommendations made by the Inspector—including mandatory staff overtime to allow for required out-of-cell time and recreation, and the addition of a clinical psychologist—are outside the scope of the Decree must fail. These were all recommendations by the Inspectors that Defendants were required to either adopt or demonstrate, through proven best efforts, why adoption of the recommendation was not possible. *Id.,* ¶10. Quite reasonably, Plaintiffs sought to enforce the Inspectors' recommendations when Defendants failed to implement them or make the requisite showing of "best efforts." Plaintiffs' enforcement efforts were reasonable, *founded* by the Inspector reports and thus not at all frivolous.

Plaintiffs made well-founded and reasonable showings that each of the four provisions Defendants name are also within the scope of the Decree because they are part of ensuring the parties' purpose in agreeing to COVID-19 protections, namely, to enhance safety from the COVID-19 virus inside the Jail. The hotline allowing class members easier access to their counsel had been in place for a limited time as agreed upon by the parties. Plaintiffs sought to reinstate it only because of noncompliance with the express protections of the Decree. *See* ECF Nos. 216-2, 274-1, 291. Mandatory overtime for staff to protect against staffing shortages which prevented detainees from receiving out-of-cell and recreation time was recommended

by the Inspector but Plaintiffs found the recommendation was not being implemented properly. *See* ECF No. 291, 313, 319-1. The Court weighed the evidence and found that the Jail had done enough on this topic to avoid an enforcement order, although there remained a "lingering issue" of outdoor recreation access, supported by Inspector Wells's February 2022 Report. ECF No. 316, PageID 5839–40; *see* ECF No. 319-11 (Fifth Inspector's Report). Similarly, the effort to enforce the Inspectors' recommendation for a clinical psychologist to assess detainees for disabilities that would require accommodations in learning about the COVID-19 vaccine was based on evidence. *See* ECF Nos. 274-1, 291. There, the Court assessed the basis of the Inspector findings and the Defendants' showing of partial compliance with identifying people with learning and intellectual disabilities, and "decline[d] to enforce this recommendation," finding that it was outside "the bounds of the Parties' agreement." ECF No. 316, Page ID 5840–42. This language is very far from a finding that Plaintiffs' effort to enforce the recommendation was frivolous.

    **C. Defendants' Allegations of Noncompliance With Dispute Resolution Are Faulty and Are Not Findings of Plaintiffs' Enforcement Being Frivolous, Unreasonable or Without Foundation.**

Defendants describe the Decree's dispute resolution process early in the brief, concluding that each step in the process was required "before Plaintiffs were permitted to seek any enforcement that could result in an attorneys' fee award" and alleging that "[o]nly then, if the issue remained unresolved," could Plaintiffs move the Court for relief. ECF No. 371-1, PageID 7242–43. This absolutist framing is misleading at the outset, as Defendants fail to mention the Decree's provision that also allowed Plaintiffs the right to seek court intervention in a shorter time frame "should an issue they reasonably believe requires prompt resolution to protect the health and safety of Class or Subclass members" arise. ECF 161-2, ¶ 22. Defendants go on to

infer that the Court "in effect" found Plaintiffs' enforcement efforts to be improper, but the Court did not make that finding.

The Court's expressed concerns about the dispute resolution process were not a finding that Plaintiffs acted frivolously, or were unreasonable to attempt to enforce provisions of a Decree that evidence showed Defendants had not complied with. Defendants also mischaracterize the Court's rulings, stating dramatically that the Court "repeatedly f[ound] that Plaintiffs engaged in efforts to enforce the Decree without first following the dispute resolution practice." ECF No. 371-1, PageID 7254. The Court did not make such a finding, let alone repeatedly. The Court reiterated, in the ruling denying Plaintiffs' motion to revise the enforcement order, what it had written in the enforcement order decision itself, namely, that "it appears to the Court that the dispute resolution process agreed to by the Parties has not been followed, *or, to the extent it has, such compliance has not been demonstrated to the Court*." ECF No. 328, PageID 6032 (emphasis added). The Court noted that the dispute resolution had been "initiated to address the Inspector's recommendations regarding out-of-cell time as well as certain other recommendations," but that the Court lacked evidence the process was completed. *Id.* In that same paragraph, the Court instructed the parties to complete the dispute resolution process because it is "the most effective, and agreed upon, method to effectuate its purpose." *Id.* This language is in no way a finding of frivolousness, nor that the substance of Plaintiffs' urgent enforcement efforts lacked foundation, nor that Plaintiffs were unreasonable to attempt enforcement.

Similarly, Defendants point to the Court's ruling granting in substantial part Plaintiffs' motion for limited expedited discovery related to their enforcement motion. ECF No. 309. In that Order, the Court declined to grant discovery into whether Defendants had implemented

12

Inspector recommendations on detainees' minimum out-of-cell and recreation time, as well as a clinical psychologist, making the same points about the dispute resolution process that became part of the Court's later enforcement Order. The Court described this as an issue of timing and ripeness for review: "Until the Parties engage in this process or demonstrate that they already have done so, it does not appear that these issues are properly before the Court." *Id*., PageID 5411–12. After doing so, the Court did not deny the motion summarily based on frivolousness or take any similar action. The Court instead proceeded with setting a schedule for discovery and a tentative date for an evidentiary hearing on the motion, as well as ordering a joint position paper. *Id*., PageID 5415–16.

The distinction—between a finding that the failure of the parties to complete the dispute resolution process makes certain issues unripe for review, and a finding that Plaintiffs' substantive enforcement efforts are frivolous, baseless, or unreasonable—is important. In fact, Defendants' argument for fees depends on it; unable to locate in the Court's rulings any of the findings required to permit Defendants even to seek fees under Paragraph 23, they instead ask the Court to infer that by writing these words about dispute resolution, "this Court, in essence, found that Plaintiffs' action were unreasonable and/or without foundation." An inference "in essence" is far from a finding. Moreover, Defendants' analysis contradicts the governing law of contract interpretation which they highlight as beginning with the plain language of the Decree.

**III. Defendants Have Failed to Demonstrate Their Attorneys' Fees Are Reasonable.**

Notably, in citing Tennessee cases regarding the reasonableness of attorneys' fees requests, Defendants cite no cases in which Defendants were awarded fees for defending against Plaintiffs' claims or enforcement efforts. ECF No. 371-1, PageID 7255–56. Their

13

citations to *Touchmark, Maks, Albright* and *Notredan* all involve claims by the prevailing party and Plaintiffs seeking attorneys' fees for enforcing contract rights. *Id.* Here, Defendants seek attorneys' fees on claims Defendants had to defend against, not claims Defendants brought themselves.

Plaintiffs discussed above the categories of work for which Defendants have no authority to seek fees under any theory. Based on Mr. Tilly's records, those exclusions total 11.9 hours related to preparing Court-ordered joint notices (Defendants' categories 2, 5 and 9), and 22.6 hours related to responding to Plaintiffs' procedural motion to bifurcate enforcement from modification (category 4), which was necessary only because Defendants chose to appeal this Court's denial of their motion to terminate the Decree shortly after it was approved. *See,* ECF No. 371-3:

- billed 1.1 hours to "Revisions to Plaintiffs' proposed joint filing . . .", PageID 7306;
- billed 1.2 hours to "Receipt of draft joint report from Plaintiffs' counsel/begin making revisions to same," PageID 7322;
- billed 2.3 hours to "Supplement Joint Position Paper on Contested Issues . . .", *id.*;
- billed 3.8 hours to "Further revisions to joint notice of parties to Court . . .", *id.*;
- billed 3.2 hours to "Communications with opposing counsel concerning negotiations for Joint filing; supplement Joint Position Paper on Contested Issues . . .", *id.*;
- billed 0.3 hours to "Communication for all clients concerning recent Joint Paper . . .", PageID 7323;
- billed 0.4 hours to "Receipt and analysis of PLtff's motion to bifurcate and memo in support," PageID 7299;
- billed 2.8 hours to "Further analysis of Plaintiff's motion to bifurcate . . .", PageID 7300;
- billed 2.9 hours to "Continued analysis of Motion to Bifurcate and compare with prior recommendations . . .", *id.*;
- billed 0.2 hours to "Court order re: bifurcation and case status . . .", *id.*;
- billed 0.7 hours to ". . . Receipt and analysis of Order on Motion to Bifurcate . . .", *id.*;
- billed 0.9 hours to "Further analysis of Plaintiff's motion to bifurcate . . .", PageID 7301;
- billed 1.6 hours to "Multiple calls w/Debbi and analysis of issues for response to Pltff's motion to bifurcate," *id.*;
- billed 1.6 hours to ". . . outline Response to Motion to Bifurcate", *id.*;
- billed 4.8 hours to "Supplement extensive Response to Motion to Bifurcate . . .", PageID 7302;

14

- billed 2.4 hours to "Supplement Response to Motion to Bifurcate with additional arguments . . .", *id.*;
- billed 2.2 hours to ". . . supplement Defendants' response to Plaintiffs' response to motion to bifurcate," *id.*;
  billed 2.1 hours to "Supplement Response to Motion to Bifurcate," *id*.

Defendants' cursory and conclusory analysis also fails to show they are entitled to attorney's fees for 314.2 hours of work, valued at $77,134.00. They dedicate two short paragraphs of their brief to analyzing the guidelines by which a reasonable fee is determined under Rule 1.5 of the Tennessee Rules of Professional Conduct. ECF No. 371-1, PageID 7257. In response to the Rule 1.5 factor requiring that Defendants demonstrate "[t]he time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly," Defendants state only that it "goes without saying" that "due to the extensive number of filings at issues, the time and labor required was necessary and appropriate." *Id*. The affidavit of Robert L. Hutton states without further detail that Mr. Hutton "believe[s]" that billing 314.2 hours total work over a ten-month period is "reasonable" given the "scope of the issues in responding to the motion to enforce the consent decree." ECF No. 371-2 ¶ 20. This paltry evidence is insufficient proof under Rule 1.5.

Courts in this circuit have found billing descriptions insufficient where billing records "lumped" together time entries under one total so that it was "impossible to determine the amount of time spent on each task." *Cleveland Area Bd. of Realtors v. City of Euclid*, 965 F. Supp. 1017, 1021 (N.D. Ohio 1997). Defendants' billing records that contain block billing are thus insufficient to demonstrate the reasonableness of their attorney's fees. *E.g.,* ECF No. 371-3, PageID 7284 (4.4 hours billed to "Extensive call with M. Brady concerning status and Decree; update to Debbi concerning findings of Brady during recent inspection; strategy for bolstering education materials and incentives and methods to document and report the same in

order to terminate decree; analysis of recent CDC guidelines concerning COVID-19 and vaccine; initial analysis of extensive filings by Plaintiffs; extensive call with Debbi concerning status"); *id*. (4.6 hours billed to "Receipt and analysis of Motion to Enforce and extensive attachments; communication with opposing counsel concerning status; communication with Debbi concerning Brady request; prepare Best reports for production; conference with NDT concerning strategy; outline arguments for Response to Motion); *id*., PageID 7285 (4.8 hours billed to "Communication with J. Haltom concerning status; communication with Debbi concerning status and analysis of Jail documents; supplement Affidavit of Fields, Motion to Terminate, and Response to Motion to Enforce/Modify").

## CONCLUSION

Because Defendants are not entitled to fees or costs absent this Court's "deny[ing] the [enforcement] relief sought on grounds that Plaintiffs' action is frivolous, unreasonable or without foundation," the Court should deny this motion. ECF No. 161-2, ¶ 23. If the Court does consider granting any attorneys' fees to Defendants, Plaintiffs ask the Court to do so only if the Court now makes a finding that any of Plaintiffs' enforcement efforts were "frivolous, unreasonable, or without foundation," and in that event, to award fees only for hours related to such efforts, to exclude altogether the categories of hours specified above, and deny compensation for block billing.

Dated: July 30, 2024

Respectfully submitted,

*/s/ Nancy Rosenbloom*

Nancy Rosenbloom
American Civil Liberties Union

Stella Yarbrough (Bar No. 33637)
ACLU Foundation of Tennessee
P.O. Box 120160
Nashville, TN 37212
Telephone: (615) 320-7142
syarbrough@aclu-tn.org

16

125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2500
nrosenbloom@aclu.org

Brice M. Timmons (Bar No. 29582)
Donati Law Firm
1475 Union Avenue
Memphis, TN 38104
Telephone: (901) 762-0535
Facsimile: (901) 762-0527
btimmons@donatilaw.com

Josh Spickler (Bar No. 021019)
Wesley Dozier (Bar No. 037735)
Just City
P.O. Box 41852
Memphis, TN 38174
Telephone: (901) 206-2226
josh@justcity.org

Maria Morris
American Civil Liberties Union
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6607
mmorris@aclu.org

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Joseph Bial
2001 K Street NW
Washington, D.C. 20006-1047
Telephone: (202) 223-7300
Fascimile: (202) 223-7420
jbial@paulweiss.com

Ariane Rockoff-Kirk
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Fascimile: (212) 757-3990
arockoff-kirk@paulweiss.com

*Attorneys for Plaintiffs and Plaintiff Class*

## CERTIFICATE OF SERVICE

I, Nancy Rosenbloom, certify that on July 30, 2024, I caused a true and correct copy of the foregoing document to be filed electronically via the ECF system.

        Respectfully submitted,

        */s/ Nancy Rosenbloom*

        Nancy Rosenbloom