## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| FAVIAN BUSBY and MICHAEL EDGINGTON, on their own behalf and on behalf of those similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 2:20-cv-2359-SHL-atc |
| FLOYD BONNER, JR., in his official capacity, and SHELBY COUNTY SHERIFF'S OFFICE, | ) ) ) ) | |
| Defendants. | ) | |

## ORDER DENYING MOTIONS FOR ATTORNEYS' FEES

When the Court approved the parties' proposed Consent Decree settling this matter, it retained jurisdiction for purposes of enforcing it. (ECF No. 209.) Both parties now seek attorneys' fees for their respective efforts to either enforce the settlement or oppose its enforcement. (ECF Nos. 371, 373.) Because neither party is entitled to fees under the Decree's narrow fee provisions, both motions are **DENIED**.

## <u>BACKGROUND</u>

### I.     PROCEDURAL HISTORY

The history of this nearly five-year-old case has been well-documented in many of the Court's previous orders—only the relevant procedural history is provided here. The parties resolved this case through a Consent Decree outlining the terms of their settlement. (ECF No. 161-2.) After the Court approved the Decree in early 2021, the parties promptly began litigating about how to interpret it and what exactly it required Defendants to do.

On May 19, 2021, Plaintiffs filed their first motion to enforce and modify the Decree. (ECF No. 216-1.)  Two weeks later, Defendants moved to terminate it.  (ECF No. 218.)  The Court first addressed the termination motion and, after two evidentiary hearings, denied it.  (ECF No. 258.)  Defendants quickly appealed (ECF No. 259), and the Sixth Circuit later affirmed (ECF No. 337).

In the meantime, the Court bifurcated Plaintiffs' motion and held the modification portion in abeyance until the Sixth Circuit addressed the termination question.  (ECF No. 276.)  The Court set a status conference on November 23, 2021, to discuss outstanding compliance issues raised in Plaintiffs' motion to enforce and new compliance issues raised in their motion to bifurcate.  (ECF No. 285.)  The Court directed the parties to confer and submit an agreed notice listing all of their unresolved issues (id.), which they did on December 3, 2021 (ECF No. 291).  The parties reconvened for another status conference on December 14, 2021, to discuss whether a hearing would be necessary.  (ECF No. 294.)

The Court denied a portion of the enforcement motion on January 3, 2022 (ECF No. 297), and the parties engaged in discovery on the remaining issues (ECF Nos. 299, 300, 309).  They attended a third status conference on January 14, 2022, and the Court ordered them to meet and confer afterwards about their lingering disagreements.  (ECF No. 302.)  They each filed their own updated report on the remaining issues on February 4, 2022 (ECF Nos. 305, 306), and then they filed an updated joint notice on February 25, 2022 (ECF No. 313). The Court decided the remainder of Plaintiffs' enforcement motion without a hearing on March 30, 2022.  (ECF No. 316.)  It denied all of Plaintiffs' substantive requests to enforce but granted the motion in part to the extent that Defendants had not produced enough evidence to demonstrate compliance with the Inspector's recommendations about vaccine education.  (Id. at PageID 5833.)  It therefore

ordered Defendants to produce discovery about the Jail's small group meetings and plans for its peer education program so that the Court could "evaluate Defendants' compliance on these issues." (Id.)  The Court did not order Defendants to change any of their practices—it only ordered limited document production. (See ECF No. 316.)  Plaintiffs promptly asked the Court to revise its order (ECF No. 319), and it refused to do so on August 4, 2022 (ECF No. 328).

After the Court denied most of Plaintiffs' first enforcement motion, they filed another one on March 24, 2023. (ECF No. 345.)  The parties resolved this dispute on their own and later filed a joint motion to modify the Decree to provide a termination date of October 1, 2023. (ECF No. 358 at PageID 7143.)  The Court granted the joint motion and denied the second enforcement motion as moot. (ECF No. 359.)  On October 11, 2023, the parties filed a joint notice stating that the Decree had terminated (ECF No. 366), and the Court entered a supplemental judgment a week later (ECF No. 367).  It retained jurisdiction to resolve any disputes about attorneys' fees. (Id. at PageID 7225.)  Those disputes are now pending before the Court.

## II.    TERMS OF THE DECREE

The Decree provides the sole mechanism for receipt of attorneys' fees. (ECF No. 161-3 at ¶ 15 (stating that "no fees, attorney fees, or expenses shall be requested or awarded to either party except as provided for in the Consent Decree" (emphasis added)).)  It also eliminates the possibility of obtaining fees for work done prior to the date the Decree was entered, specifically stating that each party must "bear its own costs, attorneys' fees, and expenses incurred up to the date of the entry of this Decree." (ECF No. 161-2 at ¶ 30.)  It states that neither party "shall be considered to be the 'prevailing' or 'successful' party within the meaning of any statute or law as

a result of this Decree." (Id.) But the Decree does allow for the possibility of obtaining fees resulting from certain enforcement efforts. [1] (Id. at ¶ 23.)

According to the provisions governing disagreements about enforcement, if the parties disputed performance or interpretation of the Decree, the parties were to engage in an enumerated dispute resolution process. (Id. at ¶ 22.) This process required counsel to "notify opposing counsel in writing, describing the dispute and clearly identifying that they are invoking the dispute resolution practice." (Id.) The opposing party was required to respond within seven days of receipt. (Id.) Within a week of sharing their respective positions, the Decree required the parties to "meet and confer and attempt to resolve the issue" on their own. (Id.)

Plaintiffs were only entitled to seek enforcement of the Decree if (1) the dispute still existed after completing the resolution process and (2) Defendants failed "to comply" with the Decree's terms, which included if Plaintiffs had a "good faith basis" to believe that Defendants had not "engaged best efforts to adopt the recommendations of the Independent Inspector or the Ventilation Expert." (Id. at ¶ 23.) And Plaintiffs could only "seek an award of the reasonable

---

[1] Paragraph 23 states:

> Subsequent to the parties engaging in and completing the dispute resolution process as set forth in Paragraph 22, Plaintiffs may seek enforcement of this [D]ecree if Defendants fail to comply with any terms of this Decree, including if Plaintiffs have a good faith basis to believe that Defendants have not engaged best efforts to adopt the recommendations of the Independent Inspector or the Ventilation Expert (if applicable pursuant to Paragraph 13). If Plaintiffs seek enforcement of this Decree and obtain relief from the Court as a result of seeking such enforcement, Plaintiffs may seek an award of the reasonable attorneys' fees and costs incurred in seeking enforcement of this Decree. Should Plaintiffs elect under such circumstances to seek enforcement of this Decree and the Court deny the relief sought on grounds that Plaintiffs' action is frivolous, unreasonable, or without foundation, Defendants may seek an award of the reasonable attorneys' fees and costs incurred in responding to Plaintiffs' attempt to seek such enforcement.

(ECF No. 161-2 at ¶ 23.)

attorneys' fees and costs incurred in seeking enforcement" if they obtained "relief from the Court

as a result of seeking such enforcement." (Id.)  But Plaintiffs' decision to seek enforcement

would come at a cost.  If the Court denied relief because Plaintiffs' enforcement efforts were

"frivolous, unreasonable, or without foundation, Defendants may seek an award of the

reasonable attorneys' fees and costs incurred in responding to Plaintiffs' attempt to seek such

enforcement." (Id.)

        Both parties now invoke their respective fee provisions.  Plaintiffs seek $769,337.80 in

fees for nearly all of their work performed from April 13, 2021 to March 30, 2022.  (ECF No.

373-1 at PageID 7358, 7367.)  The tasks performed include preparing their enforcement motion;

opposing Defendants' termination motion; "communicating with the Independent Inspector,

Defendants, and Class members to obtain real time information regarding conditions in the Jail";

and "undertaking substantial monitoring and interaction with Defendants in order to effectuate

the protections of the Decree." (Id. at PageID 7368.)  Defendants request $77,134.00 in fees for

opposing Plaintiffs' enforcement motion, the related discovery motions, and their motion for

revision, as well as for preparing and filing notices with the Court.  (ECF No. 371-1 at PageID

7249–50.)  Both parties assert that their respective fees are reasonable and the opposing parties'

fees are not.  However, because neither party is entitled to fees in the first place, the Court does

not reach the question of reasonableness.

## APPLICABLE LAW

        A consent decree is a settlement agreement that is backed by "the power and prestige of

the court" and "subject to continued judicial policing." Williams v. Vukovich, 720 F.2d 909,

920 (6th Cir. 1983) (citing Stotts v. Memphis Fire Dept., 679 F.2d 541, 556 (6th Cir. 1982)).  As

a result, it is both a contract and a judicial act.  Stotts, 679 F.2d at 556–57 (citing United States v.

Motor Vehicles Mfg. Ass'n of U.S., Inc., 643 F.2d 644, 648 (9th Cir. 1981)).  Because it is a

contract, it "should be strictly construed to preserve the bargained for position of the parties."

Williams, 720 F.2d at 920 (citing United States v. ITT Cont'l Baking Co., 420 U.S. 223, 238

(1975).  A court "may not depart from its 'four corners' unless its language is ambiguous."

Stotts, 679 F.2d at 557 (citing ITT Cont'l, 420 U.S. at 236).

Few people "are in a better position to understand the meaning of a consent decree than

the district judge who oversaw and approved it."  Busby v. Bonner, No. 21-5853, 2022 WL

17661145, at *3 (6th Cir. Dec. 14, 2022).  The court must "ascertain the intent of the parties at

the time of the settlement," id. (quoting Nat'l Ecological Found. v. Alexander, 496 F.3d 466, 478

(6th Cir. 2007)), applying the law of the state in which the parties entered the decree, id. (citing

John B. v. Emkes, 710 F.3d 394, 407 (6th Cir. 2013)).  Here, that state is Tennessee.

Tennessee law requires that a contract be interpreted based on "the usual, natural, and

ordinary meaning" of its language.  Id. (quoting Roger Miller Music, Inc. v. Sony/ATV Publ'g,

LLC, 477 F.3d 383, 392 (6th Cir. 2007)).  The court is not "a fallback mechanism for parties to

use to 'make a new contract' if their written contract purportedly fails to serve their 'true'

intentions."  Id. (quoting Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of

Tenn., Inc., 556 S.W.3d 671, 694 (Tenn. 2019)).  A party who successfully enforces its contract

rights can only recover attorneys' fees if that party can demonstrate that the contract provides for

attorneys' fees.  Notredan, LLC v. Old Republic Exch. Facilitator Co., No. 11–2987–STA–tmp,

2012 WL 3049941, at * (W.D. Tenn. July 25, 2012) (quoting Hosier v. Crye-Leike Com., Inc.,

No. M2000–01182–COA–R3–CV, 2001 WL 799740, at *3 (Tenn. Ct. App. July 17, 2001)).  If a

party demonstrates the right to fees under a contractual provision, the court must award a

reasonable fee.  Id. (citing Albright v. Mercer, 945 S.W.2d 749, 751 (Tenn. Ct. App. 1996)).

## ANALYSIS

### I.    PREVAILING PARTY

Plaintiffs first argue that they are entitled to attorneys' fees because they are "'the prevailing party' under 42 U.S.C. § 1988(b), 42 U.S.C. § 1997e(d), 42 U.S.C. § 12205, and 29 U.S.C. § 794a(b)."[2]  (ECF No. 373-1 at PageID 7365.)  Defendants assert that this request is both outside of and in contravention of the Decree.  (ECF No. 377 at PageID 7595–96.)  The Court agrees.

The parties entered this Decree "after careful negotiation," and they produced an agreement with "precise terms."  See Evoqua Water Techs., LLC v. M.W. Watermark, LLC, 940 F.3d 222, 229 (6th Cir. 2019) (quoting United States v. Armour & Co., 402 U.S. 673, 681 (1971)).  One precise settlement term to which Plaintiffs agreed was to not request attorneys' fees "except as provided for in the Consent Decree."  (ECF No. 161-3 at ¶ 15.)  And the Decree only allows Plaintiffs to seek fees for specific enforcement actions if they "obtain relief from the Court"—it does not allow them to seek "prevailing party" fees under any statute, including § 1988(b), § 1997e(d), § 12205, or § 794a(b).  (ECF No. 161-2 at ¶ 23.)  If the parties wished to provide for broad prevailing party fees under those statutes, they could have done so, either by recognizing Plaintiffs' right to seek such relief or by specifically stating that Plaintiffs are to be considered as prevailing parties under the relevant statutes.  See Binta B. ex rel. S.A. v. Gordon, 710 F.3d 608, 625 (6th Cir. 2013) (addressing a Decree in which the parties explicitly agreed that

---

[2] Plaintiffs spill a lot of ink discussing their success prior to entry of the Decree and the law permitting fee recovery for that work.  (See ECF No. 373-1 at PageID 7358–59, 7361, 7365–66, 7381.)  But the "focus" of their motion is their "entitlement" to fees for post-settlement enforcement work.  (Id.)  Indeed, Plaintiffs explicitly agreed not to seek fees for any work performed prior to entry of the Decree.  (ECF No. 161-2 at ¶ 30.)  Thus, no relief is appropriate for Plaintiffs' work and success pre-settlement.

"Plaintiffs are prevailing parties for purposes of their entitlement to an award of attorneys' fees under 42 U.S.C. § 1988 for legal services rendered by their counsel in connection with these proceedings").  No such language was included in the Decree.

The parties knew how to provide for broad prevailing party fees, or even the right to pursue them, if they so wished.[3]  Indeed, Section XII explicitly eliminates prevailing party fees under any statute for work performed prior to the Decree's formation.[4]  (ECF No. 161-2 at ¶ 30.) And when discussing Defendants' ability to recover fees should Plaintiffs' enforcement efforts be denied, the parties explicitly memorialized the traditional prevailing party standard that prevents a defendant from recovering fees unless the plaintiffs' action was "frivolous," "unreasonable," or "without foundation."  (Id. at ¶ 23.)  See Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421–22 (1978).  If the parties wanted Plaintiffs to be entitled to the entire range of prevailing party fees available under any statute, they would have said so.  But they chose to limit the realm of fees recoverable by Plaintiffs to a specific type of prevailing party fee—the Decree states that Plaintiffs may only recover "fees and costs incurred in seeking enforcement" if they were able to "obtain relief from the Court as a result of seeking such enforcement."  (ECF No. 161-2 at ¶ 23 (emphasis added).)  While Defendants' fee provision

_____

[3] Plaintiffs' attorneys "possess significant skills and experience in complex civil rights and class action litigation."  (ECF No. 373-1 at PageID 7382–83.)  Indeed, the "ACLU has litigated complex class actions on behalf of incarcerated people for over half a century."  (Id. at PageID 7383.)  There is no question that Plaintiffs' attorneys knew how to explicitly provide for the right to seek prevailing party fees.

[4] Defendants argue that the language in Section XII also prohibits prevailing party fees for work performed after entry of the Decree.  (ECF No. 377 at PageID 7595.)  But that provision merely prevents any party from being considered a prevailing party as a result of the Decree's entry.  (See ECF No. 161-2 at ¶ 30.)  Indeed, it explicitly states that no party "shall be considered to be the 'prevailing' or 'successful' party within the meaning of any statute or law as a result of this Decree."  (Id. (emphasis added).)  It goes on to clarify that, because no party can be considered the prevailing party up to entry of the Decree, each party "shall bear its own costs, attorneys' fees, and expenses incurred up to the date of the entry of this Decree."  (Id. (emphasis added).)

explicitly tracks the prevailing party standard, Plaintiffs' provision does not. Thus, the parties

sought to limit Plaintiffs' fee recovery.

The Court will not rewrite the Decree—it must construe the Decree "as it is written" and

not as Plaintiffs would have written it had they established their claims in litigation. See Armour

& Co., 402 U.S. at 682. Because Plaintiffs agreed that the Decree provides the sole mechanism

for obtaining fees, and it does not provide for broad prevailing party fees under any statute,

Plaintiffs' first request is **DENIED**.

## II.    FEES EXPRESSLY LIMITED

At the same time that Plaintiffs argue that the Decree's fee provision contains "very

narrow, negotiated language" (ECF No. 378 at PageID 7631), they also broadly seek fees for

everything that happened after entry of the Decree up to entry of the second order on their

motion to enforce (ECF No. 373-1 at PageID 7367). This fee request includes miscellaneous

administrative tasks, actions to oppose Defendants' termination motion, efforts to monitor

Defendants' compliance, and attempts to modify the Decree.[5] (ECF No. 373-4 at PageID 7416–

7429; ECF No. 373-9 at PageID 7475–7503.) Defendants argue that the Decree does not permit

recovery for any of this work. While these fees may generally be recoverable for prevailing

parties under the relevant statutes, Plaintiffs here bargained away their ability to recover them

when they limited their fee recovery to successful enforcement actions.

---

[5] Plaintiffs' attempts to modify the Decree fall outside the fee provision's scope—attempting to modify the Decree is different from attempting to enforce it as written. The Decree also treats modification and enforcement as separate and distinct activities. (See ECF No. 161-2 at ¶ 21 ("The Court shall retain jurisdiction over the parties for purposes of modifying or enforcing this Decree." (emphasis added)); id. at ¶ 22, 24, 25 (discussing the terms governing enforcement separately from the terms governing modification).) Thus, Plaintiffs' request to recover fees for preparing and filing their motion to enforce and modify the Decree is **DENIED** as to the modification portion.

A.    <u>Administrative Tasks</u>

Plaintiffs state that their counsel deleted billing entries that were "unreasonable" to bill to

Defendants "in the exercise of good billing judgment."  (ECF No. 373-1 at PageID 7369.)  But

that is not the case here.  Many of their entries represent the kinds of requests that "exemplify the

overcompensation some attorneys are apt to seek in litigation of this type."[6]  See <u>Binta B.</u>, 710

F.3d at 608.

Paul, Weiss seeks fees for unrecoverable tasks like reviewing the press related to the

settlement (ECF No. 373-9 at PageID 7475), circulating calendar invites (<u>id.</u> at PageID 7488),

calendaring "deadlines and upcoming court ordered dates" (<u>id.</u> at PageID 7500), conversations

with local counsel "to ascertain reason for receiving tax form from incarcerated individual at

jail" (<u>id.</u> at PageID 7489), preparing pro hac vice motions (<u>id.</u> at PageID 7476, 7486, 7488,

7502), conversations with the ACLU about "settlement payment status" (<u>id.</u> at PageID 7479),

reviewing and creating updates about "costs" (<u>id.</u> at PageID 7481), researching and writing a

brief for a "sanctions motion" that the Court denied (<u>id.</u> at PageID 7482, 7483, 7484, 7485, 7486,

7487, 7495, 7496, 7497, 7499, 7501, 7502), updating the "signature pages" on the same

sanctions motion (<u>id.</u> at PageID 7495), attending to "payment for ventilation expert" (<u>id.</u> at

PageID 7484), attending to "payment of vendor invoice" (<u>id.</u> at PageID 7485), onboarding new

---

[6] Plaintiffs' billing records leave much to be desired.  Some of their entries are cut off such that
they are unreadable (ECF No. 373-9 at PageID 7476, 7489), and some are redacted (<u>id.</u> at
PageID 7478, 7481, 7483).  There are also at least twenty-four instances of the same attorney
double and triple billing for the same task.  (ECF No. 373-4 at PageID 7416, 7417, 7418, 7419,
7420, 7421, 7423, 7425, 7426, 7427, 7428.)  One task is not described at all.  (<u>Id.</u> at PageID
7427.)  The Paul, Weiss attorneys sometimes billed more than the ACLU attorneys for attending
the same meeting or participating in the same phone call, and vice versa.  (<u>Compare</u> ECF No.
373-9 at PageID 7495 (showing that Rockoff-Kirk billed 0.60 for a call about the sanctions
motion), <u>with</u> ECF No. 373-4 at PageID 7427 (showing that Rosenbloom either double-billed
0.40 or billed 0.80 for the same call with Rockoff-Kirk about the sanctions motion).)

junior associates (id. at PageID 7486, 7488), coordinating with paralegals for purposes of onboarding new team members (id. at PageID 7487), reviewing the entire case during the onboarding process (id. at PageID 7488), compiling hours worked by attorneys "for purposes of offer as to attorney's fees" (id. at PageID 7487), calls with other attorneys about "distribution of projects" (id. at PageID 7493), creating a "binder" (id. at PageID 7499), summarizing filings to circulate to team members (id. at PageID 7500), client meetings (id. at PageID 7502), conducting and summarizing research on local hospitals (id. at PageID 7503), and a call to "discuss possible habeas idea" (id.).

The ACLU seeks fees for similarly unrecoverable tasks like saving pleadings to the case file (ECF No. 373-4 at PageID 7416, 7417, 7418, 7419, 7420, 7421, 7422, 7424, 7427, 7428), drafting a pro hac vice motion (id. at PageID 7416), confirming an attorney's dates of admission to different bars for a pro hac vice motion (id. at PageID 7417), filing a pro hac vice motion (id.), compiling attorney fee records (id. at PageID 7422), editing a press release (id.), processing invoices for payment (id.; id. at PageID 7423), following up on an invoice (id. at PageID 7422), onboarding two new team members (id. at PageID 7424), reviewing the complaint and the entire docket for purposes of onboarding (id.), drafting, editing, and formatting a motion for sanctions that the Court denied (id. at PageID 7423, 7424, 7426, 7427, 7428), and discussing a document review project with an intern (id.).

These fees are not appropriate for recovery under the Decree's fee provision. Most of them do not directly relate to Plaintiffs' enforcement efforts at all and, to the extent some of them do, they are non-legal, administrative actions. Thus, Plaintiffs' request for these fees is **DENIED**. Plaintiffs' other requests for more substantive fees similarly fall outside of the Decree's scope.

B.  <u>Opposing Termination</u>

Prevailing plaintiffs in similar actions are generally allowed to recover fees for opposing termination of a consent decree.  <u>See</u> <u>Binta B.</u>, 710 F.3d at 625 (stating that statutory prevailing plaintiffs are sometimes entitled to compensation for post-judgment work like defending a consent decree).  Plaintiffs rely on the Sixth Circuit's decision in <u>Binta B.</u> to argue they are entitled to fees for opposing Defendants' termination efforts here.  (ECF No. 373-1 at PageID 7367.)  But the consent decree at issue in <u>Binta B.</u> specifically stated that the plaintiffs were "prevailing parties for purposes of their entitlement to an award of attorneys' fees under 42 U.S.C. § 1988 for legal services rendered by their counsel in connection with these proceedings." <u>Binta B.</u>, 710 F.3d at 620.  As a result, those plaintiffs received the benefit of prevailing party status under § 1988.  That is not the case here.

Plaintiffs in this case explicitly bargained away their ability to become a statutory prevailing party when they agreed to only seek fees as provided for in the Decree.  And, as discussed, the Decree only allows recovery for "fees and costs incurred in <u>seeking enforcement</u> of this Decree."  (ECF No. 161-2 at ¶ 23 (emphasis added).)  Indeed, it clarifies that an "enforcement" action within the meaning of the fee provision is limited to an action taken by Plaintiffs when "Defendants fail to comply with any terms of this Decree."  (<u>Id.</u>)  The termination motion was not an action taken by Plaintiffs, and the Court never held that Defendants violated a term of the Decree by moving to terminate it—rather, the termination issue was "a narrow question of contract interpretation" to decide "whether Defendants have met the requirements of the termination provision" in the Decree.  (ECF No. 258 at PageID 5064.)

The Court held that Defendants had not met their burden to show termination as defined by the Decree, not that they had failed to comply with it.[7] (Id. at PageID 5083.)

The Decree also explicitly differentiates between termination and enforcement—the section discussing termination is separate from the section about enforcement. (See ECF No. 161-2 at § VIII & XI.) And the fee recovery provision only appears in the section about enforcement, not termination. (See id.) Even the case cited by Plaintiffs in support of their fee request differentiates between defending a consent decree and enforcing it. See Binta B., 710 F.3d at 625 (stating that prevailing party fees are appropriate when a plaintiff takes certain actions to "defend or enforce a prior consent decree" (emphasis added)); see also Waste Mgmt. of Ohio, Inc. v. City of Dayton, 132 F.3d 1142, 1145 (6th Cir. 1997) (listing separately the Court's "duty to enforce, interpret, modify, and terminate their consent decrees").

The Decree does not permit Plaintiffs to recover fees for defending it against a termination motion. While plaintiffs in similar cases are permitted to recover their fees for these efforts, Plaintiffs here bargained away that right when they negotiated for a settlement on the merits of their claims. Thus, Plaintiffs' request to recover fees for opposing Defendants' termination motion is **DENIED**.

C.    Monitoring Compliance

In addition to other fee recovery, statutory prevailing plaintiffs in similar cases are also able to recover their fees for certain actions taken to monitor a defendant's compliance with a decree. See Gonzalez v. Felker, 964 F. Supp. 251, 254 (N.D. Ohio 1997) ("A reasonable attorneys' fee may include post-judgment monitoring of a consent decree.") (citing Joseph A. v.

---

[7] Defendants continued to comply with the Decree pending the outcome of their termination motion.

N.M. Dept. of Hum. Servs., 28 F.3d 1056, 1059 (10th Cir. 1994)).  Plaintiffs seek fees for their

efforts to monitor for compliance here.  (ECF No. 373-1 at PageID 7362–63.)  But, again,

Plaintiffs bargained away their ability to recover these fees except when they are connected to

successful "enforcement" actions.  (See ECF No. 161-2 at ¶ 23.)  Thus, it stands to reason that

the Decree itself also prevents fees for compliance monitoring when those efforts are not

connected to an enforcement action that obtains relief from the Court.

Because the Decree only permits fee recovery when connected to a successful

enforcement action, fees for compliance monitoring must also be connected to a successful

enforcement action.  Therefore, Plaintiffs' request for those fees depends on whether they can

show they successfully pursued enforcement and obtained relief from the Court.  For the reasons

stated below, they have not done so.  Thus, their request for fees for compliance monitoring is

**DENIED**.

## III.    ENFORCEMENT AND OPPOSITION

Both parties' respective abilities to recover fees for seeking and opposing enforcement

are narrow and limited.  Although it appears to the Court that Plaintiffs' enforcement efforts

helped to ensure Defendants' continued compliance with the Decree, they have not shown that

they obtained "relief" from the Court in the form of ordered enforcement.  And Defendants

cannot establish that any of the important work that Plaintiffs did to enforce the Decree was

unreasonable, frivolous, or without foundation.

### A.    Enforcement

As discussed, Plaintiffs may only recover fees for enforcement work when they "obtain

relief from the Court as a result of seeking such enforcement."  (ECF No. 161-2 at ¶ 23.)  Thus,

the Court first must determine the results of Plaintiffs' enforcement motion.  Then it must

decide whether any of those results constitutes "relief from the Court" for purposes of the attorneys' fees provision.  The Court concludes that none of them do.

        1.     Results

Plaintiffs argue that they "uncovered substantial violations of the Consent Decree and, without the cooperation of Defendants on many of them, were required to pursue enforcement action to bring Defendants in compliance."  (ECF No. 373-1 at PageID 7363.)  They state that their enforcement efforts resulted in improved access to COVID-19 testing, vaccines, education, and protective gear; provided incentives for detained people to take vaccines; improved isolation practices; and improved evaluation and documentation by the Court Expeditor office in its efforts to assess release of detainees.  (ECF No. 373-1 at PageID 7381–82.)  While all of these efforts were important, none of these achievements were the fruits of any order by the Court.[8]  A review of the docket does not reveal any Court-ordered relief correcting "substantial violations" of the Decree.

The Court only entered two orders related to Plaintiffs' enforcement motion during the relevant period.  The first denied any relief at all.  (ECF No. 297.)  The second denied most of Plaintiffs' requests.  (ECF No. 316.)  However, the second order did instruct Defendants to produce documents about small group meetings and their peer education program to fully assess whether they were in compliance because they had not provided enough information.[9]  Id.

---

[8] Plaintiffs also attribute these achievements to their success in opposing termination of the Decree.  But, as discussed above, the Decree does not permit recovery for efforts taken to oppose termination—it treats termination separately.

[9] To the extent that the Court found Defendants had not complied with the Decree, it was only because they had not provided enough information to demonstrate compliance.  (ECF No. 316 at PageID 5832–33.)  The Court specifically stated that it will have enough information to truly "evaluate Defendants' compliance" after production of the ordered discovery.  (Id. at PageID 5833.)

Thus, Plaintiffs are only eligible to receive fees for the portion of their enforcement motion about small group meetings and the peer education program if Court-ordered discovery qualifies as "relief" under the Decree. To the extent Plaintiffs request fees for any other portion of their enforcement action, that request is **DENIED**.

      2.    Relief

Plaintiffs do not describe how Court-ordered discovery entitles them to compensation for their enforcement efforts. Indeed, Plaintiffs' recitation of the relevant procedural history does not even discuss the order granting in part their motion. (ECF No. 373-1 at PageID 7363.) It is true that their diligent efforts to vindicate the rights they secured in the Decree were vital to ensuring Defendants' continued compliance with the Decree. But Plaintiffs never describe how their efforts resulted in "relief" from the Court, much less how that relief is compensable under the Decree, even though that is the standard they are required to address to prove they are entitled to fees. Plaintiffs merely assume that they are entitled to fees because the Court granted their motion in part.[10] Meanwhile, Defendants argue that the Court "only ordered limited discovery," which would not qualify as relief under the Decree because Plaintiffs requested enforcement, not discovery. (ECF No. 377 at PageID 7598.) Defendants assert that "relief" has a narrow definition—it is the "redress or benefit" that "a party asks of a court." (Id.) Both parties miss the mark.

---

[10] Plaintiffs only dedicate three paragraphs of their thirty-one-page brief to arguing that they are entitled to fees under the terms of the Decree. (ECF No. 373-1 at PageID 7365–67.) One of those paragraphs solely discusses their entitlement to fees for work performed prior to the Decree's entry, which they do not request and are not allowed to pursue. (Id. at PageID 7366.) The remainder of their brief is wholly dedicated to why their request for $769,337.80 is reasonable. (Id. at PageID 7368–87.) Plaintiffs never attempt to define "relief," and they do not assert how discovery qualifies as relief.

The type of "relief" required to warrant prevailing party fees is instructive here.[11]   A prevailing party can only recover fees when they have "prevailed on the merits of at least some" of their claims.  Buckhannon Bd. & Care Home, Inc. v. W.V. Dept. of Health & Hum. Res., 532 U.S. 598, 604 (2001) (quoting Hanrahan v. Hampton, 446 U.S. 754, 758 (1980) (per curiam)). Prevailing on any minor issue is not sufficient to warrant fees—the plaintiffs must specifically prevail on the merits.  Farrar v. Hobby, 506 U.S. 103, 572 (1992) ("[L]iability on the merits and responsibility for fees go hand in hand; where a defendant has not been prevailed against . . . on the merits, [plaintiffs cannot obtain a prevailing party] fee award against that defendant." (quoting Kentucky v. Graham, 473 U.S. 159, 165 (1985))).

To prevail on the merits, plaintiffs must "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  Id. at 572 (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).  At the very least, the plaintiffs must obtain a court-ordered "material alteration" in "the legal relationship" between the parties.  Buckhannon, 532 U.S. at 604 (quoting Tx. State Tchrs. Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792–93 (1989)).  The court materially alters the legal relationship between the parties when it decides "some dispute which affects the behavior of the defendant towards the plaintiff." Farrar, 506 U.S. at 110 (quoting Hewitt v. Helms, 482 U.S. 755, 761 (1987)).  The defendant's

---

[11] Even though the parties eliminated the broad range of fees available to a plaintiff under a statutory prevailing party theory, they relied on prevailing party principles when drafting the language of the fee provisions at issue here.  Indeed, Defendants' fee provision verbatim tracks the prevailing party standard as applied to other defendants, Plaintiffs heavily rely on prevailing party law in their own brief, Plaintiffs state that they only seek fees for enforcement actions on which they "prevailed" (ECF No. 380 at PageID 7650), and the parties preserved Plaintiffs' ability to collect a limited type of prevailing party fee.  Thus, those principles are helpful to determine the meaning of "relief" as contemplated by the parties.

change in behavior must "directly benefit" the plaintiffs, not other individuals or even plaintiffs' counsel. Id. at 111 (citing Hewitt, 482 U.S. at 760).

Plaintiffs assert that the Court's order changed the legal relationship between the parties (ECF No. 378 at PageID 7635), but they do not explain how it did so. The order was effectively a pronouncement that Defendants failed to provide proof of compliance with the Decree, but it was not an order on the merits of Plaintiffs' claim of non-compliance. See Farrar, 506 U.S. at 112 (stating that a "judicial pronouncement that the defendant has violated the Constitution, unaccompanied by an enforceable judgment on the merits, does not" qualify as relief on the merits). That is not sufficient to qualify as compensable relief.

While the order required Defendants to act, they were not required to act in a way that "materially" changed their relationship with Plaintiffs. The Court only granted the motion to the extent that Defendants had not produced sufficient information to demonstrate compliance. Because Defendants had not sufficiently demonstrated compliance, the Court ordered Defendants to produce information that would allow it to "evaluate Defendants' compliance on these issues." (ECF No. 316 at PageID 5833.) The Court did not order Defendants to change any of their policies or practices.[12] Thus, it did not change the legal relationship between the parties because it did not force Defendants to act in a way that directly benefited Plaintiffs

---

[12] It is true that the Court opined that it was "not enough for Defendants to show that the Jail has scheduled various Covid-19 events" and that "they must also show that these events are widely advertised, occur on a consistent basis and are made accessible to all detainees" to "demonstrate meaningful compliance with the Inspector's recommendation." (ECF No. 316 at PageID 5832.) However, the Court never ordered Defendants to host meetings more frequently and invite more detainees. Neither the Court nor the Inspector could truly assess whether the meetings were too infrequent to meaningfully comply with the Inspector's recommendation because Defendants had not produced schedules of the meetings or proof of advanced notice to detainees. (Id. at PageID 5832.) At the most, the order offered Defendants guidance about what was required, but it cannot be construed as an order directing them to act in any particular way—had Defendants refused to comply with that guidance, they could not have been found to be in contempt.

themselves.  And it did not secure Plaintiffs' initial success in obtaining the Decree because it

did not force Defendants to comply with it.  See Binta B., 710 F.3d at 626 (stating that

prevailing plaintiffs seeking to recover fees for post-judgment work must show that their

enforcement efforts "at the very least 'secure[d] [plaintiffs'] initial success in obtaining the

consent decree'"[13] by forcing defendants to continue complying with its terms (quoting

Delaware Valley, 478 U.S. at 558–59)).

While the document production ordered was critical here to assess compliance, by itself,

it does not materially change the legal relationship between the parties, and it cannot be said to

directly benefit Plaintiffs.  See Rhodes, 488 U.S. at 203 (holding that a declaratory judgment in

plaintiffs' favor could not qualify as compensable relief because it did not directly benefit the

plaintiffs—one plaintiff had been released from custody prior to the order's entry, and the other

---

[13] Plaintiffs argue that they are entitled to fees under the standard articulated in Binta B., but it is
not clear if that standard should apply here.  As discussed earlier, the consent decree in that case
explicitly enshrined plaintiffs' status as prevailing parties.  Binta B., 710 F.3d at 620.  The court
held that, after the "initial determination" of prevailing party status had been established because
plaintiffs had received relief on the merits of their claims, the plaintiffs were "not again required
to establish prevailing party status in the conventional sense" to recover fees for post-judgment
work.  Id. at 625 (citing Tx. State Tchrs. Ass'n, 489 U.S. at 792).  Instead, the plaintiffs could
receive fees for any enforcement action that (1) was "necessary" to enforce the consent decree
and (2) resulted in "a subsequent court order or agency determination that at the very least
'secure[s] [plaintiffs'] initial success in obtaining the consent decree.'"  Id. (quoting Delaware
Valley, 478 U.S. at 558–59).  Here, however, Plaintiffs do not already have the benefit of
prevailing party status, and the Decree itself articulates that the specific standard at issue is
"relief," which is the same standard required to achieve prevailing party status.  Regardless,
Plaintiffs have not shown that they should receive fees even if the more lenient Binta B. standard
applies.  The Binta B. plaintiffs secured their initial success in obtaining the consent decree by
successfully opposing the modification of its terms.  Id. at 626–27 ("[D]efendants wanted to
discontinue paying for medical services or prescriptions pending an enrollee's appeal for denial
of prior authorization or coverage (something that the 2003 Consent Decree specifically
required).  The court denied this modification as to certain ongoing or unlimited prescriptions,
stating 'the State or its contractor must comply with Paragraph C(8) of the 2003 Consent Decree,
requiring continuation or reinstatement of benefits pending an appeal.'").  Court-ordered
discovery is not the same as an order requiring a defendant to continue complying with the
specific terms of a consent decree.

had passed away).  It is hard to imagine that any of the incarcerated people at the jail even saw the documents that Defendants produced to the Inspector, and the documents themselves did not change the way Defendants interacted with them.  Court-ordered document production is neither success on a "significant issue" nor does it achieve the "benefit" Plaintiffs sought in filing their enforcement motion, even if it is a necessary step to achieving that success and securing the benefit sought.  See Farrar, 506 U.S. at 572.  The Court's order is analogous to an interlocutory ruling denying a motion to dismiss or granting a preliminary injunction, neither of which is sufficient to constitute relief on the merits because they do not conclusively resolve the rights of the parties on the merits.  See Lackie v. Stinnie, 145 S.Ct. 659, 667 (2025) (holding that a party who prevails on a motion for a preliminary injunction does not qualify as a prevailing party because preliminary injunctions "do not conclusively resolve the rights of the parties on the merits"); Hewitt, 482 U.S. at 760 (holding that an order denying a 12(b)(6) motion is "not the stuff of which legal victories are made" because it is not relief on the merits).

It is true that the magnitude of relief obtained does not affect eligibility for a fee award. Farrar, 506 U.S. at 413–14 (holding that a nominal damages award qualifies as compensable relief).  And Plaintiffs do not have to show that they obtained the "primary relief" they sought. See Binta B., 710 F.3d at 620 (quoting McQueary v. Conway, 614 F.3d 591, 603 (6th Cir. 2010)).  But they must show that they obtained the type of relief contemplated by the Decree. Court-ordered discovery is not the kind of relief that materially affects the legal relationship between the parties.

Thus, Plaintiffs' request for fees for that portion of their enforcement motion is **DENIED**.  As a result, Plaintiffs are not entitled to any fees under the Decree for their

enforcement efforts.  But because none of Plaintiffs' enforcement efforts were frivolous, unreasonable, or without foundation, Defendants are not entitled to any fees either.

B.    Opposition to Enforcement

To obtain fees for their opposition to Plaintiffs' enforcement efforts, Defendants must show that Plaintiffs' actions were "frivolous, unreasonable, or without foundation."  (ECF No. 161-2 at ¶ 23.)  Defendants argue that Plaintiffs' enforcement motion was without foundation because they mostly failed to comply with the dispute resolution process and the Court ultimately denied all of Plaintiffs' substantive requests for enforcement as outside the scope of the Decree.  (ECF No. 371-1 at PageID 7252–55.)  Plaintiffs assert that Defendants are not entitled to fees because the Court never specifically found that Plaintiffs acted frivolously, unreasonably, or without foundation in the Decree.  The Court agrees.

Defendants are not entitled to fees just because Plaintiffs did not succeed on their motion. See Christiansburg, 434 U.S. at 421.  A court cannot succumb to the "understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not prevail, his action must have been unreasonable or without foundation."  Id. at 421–22.  "Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit."  Id. at 422.  Thus, the court must look "into the plaintiffs' basis for bringing suit."  Smith v. Smythe-Cramer Co., 754 F.2d 180, 183 (6th Cir. 1985).  It should only award fees where the plaintiff acted in bad faith, proceeded without any evidence to support their position, or continued to proceed even after it became obvious that they had no basis to proceed. Id.  None of these situations exist here.

Defendants assert that Plaintiffs' failure to follow the formal dispute resolution process renders their enforcement action unreasonable or without foundation (ECF No. 371-1 at PageID

7253), but this argument is misplaced.  The Court only looks to Plaintiffs' <u>basis</u> for filing their motion, not whether their dispute was ripe for review.  Even if an issue may not have been properly before the Court because it was unclear whether the parties completed the resolution process, that does not mean it was unreasonable or frivolous to bring it to the Court.  Moreover, Defendants were not prejudiced by Plaintiffs' alleged failure to follow the dispute resolution process because the Court ordered the parties to engage in several rounds of meet-and-confers while the motion was pending.  Both parties attended at least three status conferences in which they discussed the enforcement motion before the Court (ECF Nos. 285, 294, 302), and, after conferring amongst themselves, they filed at least four notices that detailed their outstanding disputes (ECF Nos. 277, 291, 305, 306, 313).  Defendants had adequate notice of the issues, and they had plenty of time to address them outside of Court, as contemplated by the dispute resolution process.

Defendants also argue that they are entitled to fees because the Court held that Plaintiffs' enforcement requests were largely not contemplated by the Decree.  (ECF No. 371-1 at PageID 7254–55.)  But the Court's ultimate decision that the Decree did not require enforcement on certain issues does not necessarily mean that Plaintiffs had no basis to pursue enforcement in the first place.  Plaintiffs grounded all of their requests in the Decree's "provisions to enhance the safety for the medically vulnerable Jail population."  (ECF No. 378 at PageID 7639.)  Plaintiffs' requests either closely related to the purpose of the Decree or were directly recommended by the Inspector.  (ECF No. 378 at PageID 7639–40.)  There is nothing in the record to demonstrate that Plaintiffs' actions were frivolous, unreasonable, or without foundation.  Thus, Defendants have not shown that they are entitled to fees under the Decree, and their motion is **DENIED**.

## <u>CONCLUSION</u>

The fee provisions at issue here are narrow.  They permit limited fee recovery for specific types of work that resulted in specific types of Court orders.  Plaintiffs' work after entry of the Decree was important—it allowed them to closely assess Defendants' commitment to the promises they made.  But the fee provision they bargained for is too limited to authorize recovery for work that did not result in an order on the merits of their enforcement motion.  And Defendants cannot recover fees because the Court never denied any of Plaintiffs' requests as frivolous, without foundation, or unreasonable.  Because neither party has shown that they are entitled to attorneys' fees under the Decree's narrow fee provisions, both motions are **DENIED**.

**IT IS SO ORDERED,** this 27th day of March, 2025.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE